UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Capstar Radio Operating Company, a Delaware    :
Corporation,    :
   :     No. 08 CV 2976 (LAK)
        Plaintiff,    :
   :    **DECLARATION OF**
   v.    :    **JEREMY FEIGELSON**
   :
Anthony Campbell; Louis Carpino; Adam Gross;   :    Filed Electronically
Jose Luis Torres; Citadel Broadcasting Corporation, :
a Nevada Corporation; and John Does 1-10,    :
   :
        Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Jeremy Feigelson declares:

1.      I am a member of the bar of this Court and a member of Debevoise & Plimpton LLP, counsel for defendants in this case.  I submit this declaration upon personal knowledge, in opposition to the motion for a preliminary injunction by plaintiff Capstar Radio Operating Company, a subsidiary of Clear Channel Communications (together "Clear Channel").

2.      Attached as Exhibit 1 is a true and correct copy of an email from Jacquelyn Orr, General Counsel of defendant Citadel Broadcasting Corporation, sent to Clear Channel's litigation counsel in this matter on Friday, March 21, 2008.  As reflected in Exhibit A, Clear Channel initiated this action on the afternoon of March 21 via an ex parte application for a TRO but did not notify Citadel's general counsel.

3.      By calling various offices at the court on Friday afternoon, I learned that Judge Baer, sitting in Part I, would be hearing the TRO application momentarily and that plaintiff's counsel was in his chambers.  Judge Baer agreed to let me participate telephonically on behalf of Citadel.  Neither I nor anyone else on behalf of Citadel had seen the moving papers.  After hearing from counsel for both sides, Judge Baer declined to enter the TRO, directed that the

moving papers be served on our firm, and advised that Judge Kaplan would hear the matter on

Monday, March 24 at 2:30 p.m.  To my knowledge, the proceedings before Judge Baer were not

transcribed.

    4.       Attached as Exhibit 2 is a proposed Scheduling and Confidentiality Order.

    5.       Attached as Exhibit 3 is the proposed Defendants' First Request for Production of

Documents.

    6.       Attached as Exhibit 4 is the proposed Defendants' Notice of 30(b)(6) Deposition.

    7.       Attached as Exhibit 5 is the Declaration of Anthony Campbell, dated March 24,

2008.

    8.       Attached as Exhibit 6 is the Declaration of Louis Carpino, dated March 24, 2008.

    9.       Attached as Exhibit 7 is the Declaration of Adam Gross, dated March 24, 2008.

    10.       Attached as Exhibit 8 is the Declaration of Jose Torres, dated March 24, 2008.

    11.       Attached as Exhibit 9 is the cover page of defendant Citadel Broadcasting

Corporation's Form 10-K for 2007, identifying Delaware as the company's state of

incorporation.


I declare under the penalty of perjury that the foregoing is true and correct.

Executed on March 24, 2008 at New York, New York:


                    /s/ Jeremy Feigelson

                    Jeremy Feigelson

-2-

# Exhibit 1

**From:** Jackie Orr
**Sent:** Friday, March 21, 2008 3:20 PM
**To:** JYu@seyfarth.com; LSarno@seyfarth.com; Ggalant@seyfarth.com
**Cc:** Benton, Susan; Steve Borneman
**Subject:** TRO HEARING

As you and your firm are well aware of, I am the general counsel for Citadel. Despite it being publicly available that I am and your specifically being aware of this through your firms involvement in the Chicago TRO matter--- for some reason your firm still fails to intentionally notify me of any emergency matters involving Citadel.

Our GM just received notice of this hearing. If it has not occurred yet or is in process, please call me at 215-369-5450. We have not received copies of any papers and object to your proceeding ex parte in this matter.

I left you a VM and would appreciate a call as soon as possible.

Thank you.

Jacquelyn J. Orr
General Counsel & Vice President
Citadel Broadcasting Corporation
142 West 57th Street, 11th Floor
New York, New York 10019
Ph:   (212) 887-1666
Fax:  (212) 887-1675

The information contained in this communication is confidential, may be subject to the attorney-client privilege, attorney work-product, may constitute inside information, and is intended only for the use of the addressee. It is the property of Citadel Broadcasting Corporation. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to rthompson@citcomm.com and destroy this communication and all copies thereof, including all attachments.

# Exhibit 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
Capstar Radio Operating Company, a Delaware  :
Corporation,                                  :
                                              :
            Plaintiff,                        :
                                              :
      v.                                      :   No. 08 CV 2976 (LAK)
                                              :
Anthony Campbell; Louis Carpino; Adam Gross;  :
Jose Luis Torres; Citadel Broadcasting Corporation, :
a Nevada Corporation; and John Does 1-10,     :
                                              :
            Defendants.                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### [PROPOSED] SCHEDULING AND CONFIDENTIALITY ORDER

1.      Discovery will take place on an expedited basis, as follows:

| Service of document requests | So as to be received by 10 a.m. on March 25, 2008 |
| --- | --- |
| Production of documents pursuant to document requests | So as to be received by 4 p.m. on March 28, 2008 |
| Service of deposition notices | So as to be received by 10 a.m. on March 31, 2008 |
| Depositions complete | 5 p.m. on April 7, 2008 |

2.      An evidentiary hearing will be held on April 11, 2008 or such other date

thereafter as the Court may designate.

3.      Defendants' proposed document requests and 30(b)(6) deposition notice,

attached as exhibits to the Declaration of Jeremy Feigelson dated March 24, 2008, are

hereby deemed served on plaintiff.

4.      With respect to confidentiality issues, the following rules will govern

discovery:

a.      Any party producing documents, answers to interrogatories, responses to requests for admissions, testimony or other information in this litigation may designate such documents or information, or any part thereof, as "Confidential Material." Confidential Material includes those files, documents, computerized information, testimony or other information furnished by a party in the course of pretrial discovery in this action which the designating party believes in good faith is subject to protection under Rule 26(c) of the Federal Rules of Civil Procedure.

b.      Confidential Material may not be disclosed by the receiving party to any person other than the following ("Authorized Persons"):

i.      outside counsel of record in this litigation, and their partners, counsel, associates or employees

ii.     any party to this litigation (or its officers, directors, in-house counsel and employees)

iii.    independent experts and consultants retained by or associated with any party or its counsel to assist in the conduct of this litigation

iv.     a party or non-party witness and counsel for such witness in the course of his or her examination at deposition in this action

v.      persons who have prepared or assisted in the preparation of the Confidential Material or to whom the Confidential Material or copies thereof were addressed, delivered, or relate

vi.     the Court in this action, and Court personnel, including stenographic reporters and/or certified videotape operators engaged in pretrial discovery;

vii.    third-party vendors retained by or associated with any party or its counsel in order to assist in the conduct of this litigation; and

viii.   any other person to whom the parties agree in writing, or as directed by Order of Court.

2

c.  In all cases, Confidential Material shall only be shared with Authorized Persons if reasonably necessary in connection with this litigation, and then shall be used or retained by such persons only to the extent and for the duration reasonably necessary under the circumstances, and in no event longer than the duration of the litigation.

d.  Before disclosing Confidential Material to any persons identified in Paragraph 2 above (other than the producing party and its officers, directors, in-house counsel, employees, experts, and the Court and Court personnel), counsel contemplating disclosure shall require such persons to read a copy of this Order and sign a copy of the Confidentiality Agreement, in the form attached hereto as Exhibit A, affirming that the recipient:

   i.   has read this Order and understands all of its terms;

   ii.  agrees to abide by and to be bound by the terms of this Order; and

   iii. agrees to submit to the Court's jurisdiction for purposes of enforcement of this Order by proceedings for contempt and/or proceedings for legal and/or equitable relief, including damages, for a breach thereof.

e.  Counsel shall retain each such Confidentiality Agreement until such time as the litigation, including all appeals, is concluded and counsel has retrieved all Confidential Material, or received certification of its destruction, from the recipient pursuant to Paragraph 10 below.

f.  The producing party shall mark any documents and/or information designated in good faith as Confidential Material by means of the legend "CONFIDENTIAL" on each page or section of a page so designated, or shall otherwise so designate sections of deposition transcripts or answers to interrogatories that contain such Confidential Material by means of a statement on the record at the time of deposition testimony or by written notice to the other party within thirty (30) days of receipt of the transcript of the testimony. For information produced in its native file format, the designation of material as "CONFIDENTIAL" shall appear in a database field entitled "TREATMENT" that shall be related to each document. Additionally, each hard drive, disk or other physical item containing native files shall be marked to indicate that it contains Confidential Material.

g.  If any Confidential Material is provided inadvertently to a

3

discovering party without being marked "CONFIDENTIAL" in accordance with the terms of this Order, the failure to so mark the document and/or information shall not be deemed a waiver of the right to assert its confidentiality. A party may designate the documents and/or information as Confidential Material at a later date, at which time the provisions of this Order shall apply to such documents and/or information. If a document is designated Confidential Material and one or more copies of the documents or the original is also produced but not so designated, the copies or original shall also be treated as Confidential Material if the recipient is actually aware of such fact.

h. If any party objects to the designation of any documents and/or information as Confidential Material, and if the parties are unable to resolve such dispute informally, the party objecting to the designation may submit the dispute to the Court for resolution. Pending resolution of such dispute by the Court, the documents and/or information shall retain their designation as Confidential Material. A party shall be obligated to challenge the appropriateness of the designation of documents or materials as "CONFIDENTIAL" within thirty (30) days of the time of said party's receipt of such documents as so designated, or in the case of a deposition, within thirty (30) days of the date that the party receives notification that some portion of the transcript or the exhibits are to remain confidential, and in all cases, not more than sixty (60) days from the date of the deposition during which the documents were first used as exhibits, and failure to do so shall preclude any subsequent challenge to such designations.

i. All documents and information received in pre-trial discovery in this action, including Confidential Material, and all other material, whether or not ultimately made part of the public record, shall be used by the receiving party solely for purposes of the above-captioned litigation, including any appeals, and for no other business, litigation or other purpose whatsoever.

j. The production of Confidential Material pursuant to this Order is not a waiver of any privilege or right to claim the trade secret or confidential status of the documents, materials, or information produced.

k. Any party may introduce relevant and admissible Confidential Material in court filings, at trial or at a hearing before the Court in this action provided that the party that produced the Confidential Material is given reasonable notice and an opportunity to seek relief from the Court. Upon a finding that the parties have commercially sensitive information at issue, or other good cause

4

> for filing under seal any Confidential Material included in any papers filed with the Court or otherwise disclosed to the Court, shall be labeled, "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" and shall be filed in a sealed envelope, together with a copy of the motion requesting that the material be sealed and not disclosed unless ordered by the Court. Where possible, only confidential portions of filings with the Court shall be filed under seal.

> l.   Except as may be otherwise agreed by the parties, not later than sixty (60) days after the conclusion of this litigation, including all appeals, the receiving party shall either destroy the Confidential Material or return the Confidential Material to the producing party, except for Confidential Material that has been incorporated into work product, and shall so certify in writing to the producing party.

5.   This Order shall be without prejudice to the right of any party to object to any discovery request on the grounds that the information requested is not relevant or otherwise discoverable.

6.   In the event that a party inadvertently produces material that is protected by the attorney-client privilege, work product doctrine, or any other privilege, within ten (10) business days after the producing party actually discovers that such production was made, the producing party may make a written request that the other parties return the inadvertently produced privilege document along with any copies made thereof. The parties who received the inadvertently produced document will either return the document to the producing party or destroy the document immediately upon receipt of the written request, as directed by the producing party. By returning or destroying the document, the receiving party is not conceding that the document is privileged and is not waiving its right to later challenge the substantive privilege claim, provided that it may not challenge the privilege claim by arguing that the inadvertent production waived the privilege.

5

7.     The restrictions set forth in the preceding paragraphs shall not apply to

Confidential Material which:

      a.     is or becomes disclosed to the public other than through violation of this Stipulation and Protective Order, provided, however, that Confidential Material shall not lose that status by reason of its use or disclosure in any proceeding in this litigation;

      b.     is acquired by the non-producing party from a third party lawfully possessing such Confidential Material; and

      c.     was lawfully possessed by the non-producing party before discovery in this action.

8.     Any third party producing its own documents pursuant to requests by a

party in this litigation may invoke the protections of this Order in connection with such

production. Further, within fifteen (15) days of any third party production of documents

in connection with this action, each of the parties to this action shall be able to designate

any of those documents as "Confidential Material" pursuant hereto, based on its own (and

not the third party's) interest in preserving the confidentiality of the documents so

designated. During the fifteen (15) day period after any third party production of

documents in connection with this action, all such documents shall be treated as

"Confidential Material" pursuant to this Order, pending the parties' designation of such

documents consistent with this paragraph

9.     Nothing in this order shall:

      a.     prevent or restrict any person from using or disclosing in any way documents it has produced or disclosed in the course of discovery proceedings herein;

      b.     prevent or restrict any person from seeking additional protection with respect to the disclosure of particular documents;

      c.     prevent or restrict any person from seeking relief from this Stipulation and Protective Order for good cause shown;

6

d.    prohibit a party from producing Confidential Material in its possession pursuant to a subpoena issued by any court, administrative or legislative body, or any other person purporting to have authority to subpoena such Confidential Material; provided, however, that if such party receives a subpoena or other compulsory process seeking production or other disclosure of Confidential Material, that party shall give prompt written notice to counsel for the producing party, identifying the Confidential Material at issue, and, unless prohibited by applicable law, enclosing a copy of the subpoena or other compulsory process in order that the producing party may protect its interest in said Confidential Material.  When possible, at least ten (10) days written notice before production or other disclosure shall be given and, in all circumstances, reasonable efforts shall be made to provide written notice prior to production or disclosure.

Dated:    New York, New York
          March 24, 2008

**IT IS SO ORDERED.**

_____

United States District Judge

7

## CONFIDENTIALITY AGREEMENT

I, _____, hereby acknowledge and agree that:

1.    I have read the Scheduling and Confidentiality Order ("Order"), entered in the civil action captioned *Capstar Radio Operating Co. v. Campbell et al.*, No. 08 CV 2976, in the United States District Court for the Southern District of New York.

2.    I understand the terms of the Order.

3.    I hereby agree to be bound by the terms of the Order and understand that a violation thereof may subject me to contempt proceedings and to legal and equitable remedies, including damages.

4.    I understand and agree that money damages would not be a sufficient remedy for breach of this Undertaking and that a party which asserts the confidential interest shall be entitled to specific performance and injunctive or other equitable relief as a remedy for any such breach. I agree to waive any requirement for the securing or posting of any bond in connection with such remedy. Such remedy shall not be deemed to be the exclusive remedy for breach of this Undertaking but shall be in addition to all remedies available at law or equity.

5.    I hereby irrevocably submit to the jurisdiction of the United States District

Court for the Southern District of New York, or any other court of competent jurisdiction,

for purposes of ensuring compliance with the terms and conditions of the Order and for

civil remedies in the form of legal and equitable relief, including damages, for any breach

thereof.

Dated: _____

_____

Print Name

_____

Signature

_____

Title

_____

Company

9

# Exhibit 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
Capstar Radio Operating Company, a Delaware        :
Corporation,                                        :
                                                    :
            Plaintiff,                              :
                                                    :
    v.                                              :   No. 08 CV 2976 (LAK)
                                                    :
Anthony Campbell; Louis Carpino; Adam Gross;        :
Jose Luis Torres; Citadel Broadcasting Corporation, :
a Nevada Corporation; and John Does 1-10,           :
                                                    :
            Defendants.                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' [PROPOSED] FIRST REQUEST FOR
## PRODUCTION OF DOCUMENTS

Defendants Citadel Broadcasting Corporation, Anthony Campbell, Louis Carpino,

Adam Gross and Jose Luis Torres, by their undersigned attorneys, Debevoise & Plimpton

LLP, hereby request that plaintiff, Capstar Radio Operating Company ("Capstar"),

produce the documents and things requested herein for examination, inspection and

copying, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and all

applicable local rules, by delivering such documents to the offices of Debevoise &

Plimpton LLP, 919 Third Avenue, New York, NY 10022, Attention: Jeremy Feigelson,

Esq., on or before March 28, 2008, or at such other time and place as agreed upon by the

parties' counsel.

## **Definitions and Instructions**

For purposes of this First Request for Production of Documents, the Uniform Definitions in Discovery Requests set forth in Rule 26.3 and the instructions on Assertion of Claim of Privilege set forth in Rule 26.2 of the Local Civil Rules of the United States District Court for the Southern District of New York are incorporated herein, and such further instructions and definitions are set forth herein:

1.      "Complaint" means the Complaint filed by the plaintiff in this action on or about March 21, 2008.

2.      "Concerning" means relating to, referring to, describing, evidencing or constituting.

3.      "Capstar" means "Capstar Radio Operating Company" and any of its predecessors, parents, subsidiaries, affiliated companies, offices, officers, directors, partners, employees, representatives, attorneys and agents, including, but not limited to, its parent Clear Channel Communications, Inc. and its radio stations WLTW and WKTU. The terms "Capstar" and "Clear Channel" as used herein should be considered interchangeable and equivalent in meaning.

4.      "Document" is synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including without limitation electronic or computerized data compilations.

5.      If any portion of a document is considered responsive to any request, the request shall be construed as requesting production of the entire document.

2

6.    Except when express reference is made to another paragraph, each paragraph herein should be construed independently and not by reference to any other paragraph herein for purpose of limitation.

7.    Each Discovery Request shall be construed as being inclusive rather than exclusive. Thus, words importing the singular shall include the plural; words importing the plural shall include the singular; words importing one gender shall include both genders; the words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the interrogatory or document request inclusive; the word "all" means "any and all" and the word "any" means "any and all." *See* Local Civil Rule 26.3(d).

8.    Any and all examples or descriptions of documents herein are illustrative only and do not limit the request to those particular documents or types of documents, as if it were explicitly noted that such request was "not limited to" the stated examples.

9.    All attachments and appended or embedded links or files shall be produced if any one of them is responsive to any of these document requests. If with respect to any request there are no responsive documents, so state in writing.

10.    If part of an otherwise responsive document contains information that is subject to a claim of privilege, those parts of the document subject to the claim of privilege shall be deleted or redacted from the document, the deleted or redacted parts shall be clearly marked as such, and the rest of the document shall be produced.

11.    In responding to this document request, plaintiff shall furnish all documents available to defendants, wherever located, including documents in the possession of attorneys, representatives, agents, and all persons acting on plaintiff's

3

behalf. If plaintiff cannot respond to this document request in full after exercising due diligence to secure the documents requested, plaintiff shall so state and respond to the extent possible, specifying the nature of its inability to respond to the remainder.

12.     If any documents or parts of documents called for by this demand have been destroyed, discarded, or otherwise disposed of, a list shall be furnished setting forth as to each document the following information: (a) the nature of the document, e.g., letter, memorandum, telegram, etc.; (b) the name, address, title, and business affiliation, if other than plaintiff of each person who prepared, received, viewed or had possession, custody, or control of the document; (c) the date of the document; (d) the subject matter and a short description of the document; (e) the date of destruction or other disposition; (f) a statement of the reasons for destruction or other disposition; (g) the name, address, title, and business affiliation, if other than plaintiff, of each person who authorized destruction or other disposition; and (h) the name, address, title, and business affiliation, if other than plaintiff, of each person who destroyed or disposed of the document.

13.     If any documents or parts of documents called for by this demand is no longer in plaintiff's possession, custody or control, a list shall be furnished setting forth as to each document the following information: (a) the identity of each author or preparer; (b) the identity of each addressee, and of every other person who received, read or viewed the document, including their name, title and business affiliation; (c) the date of the document; (d) the subject matter and a short description of the document; (e) the last date on which the document was in plaintiff's control; (f) the identity of each person now in control of the document, including their name, title and business affiliation; (f) the

4

reasons for the release of the document; and (g) the identity of each person with any knowledge concerning the document's release, including their name, title and business affiliation, if other than plaintiff.

14.     If plaintiff contends that a particular request, or a definition or an instruction applicable thereto, is ambiguous, such claim shall not provide a basis for refusing to respond. You are instructed to set forth the allegedly ambiguous language and the interpretation of that language that plaintiff has adopted in responding to the request in question.

15.     The document requests that follow are to be continuing, and plaintiff is requested to provide, by way of supplementary responses thereto, such additional documents as it or any persons acting on its behalf may hereafter obtain that will augment, clarify, or otherwise modify the response now given to these document requests. Such supplementary responses are to be served upon counsel for Defendants immediately after the additional documents are discovered.

16.     Unless otherwise stated the relevant time period for these requests is from January 1, 2004 to the present.

5

## Documents to be Produced

1.    All documents concerning the origin, development and use of the "Ask the Expert" sales program, including, but not limited to, the PowerPoint presentation referenced in Complaint ¶ 88 and any documents relied upon for the creation of that PowerPoint presentation or the program generally.

2.    All documents sufficient to identify all employees who have had access to the "Ask the Expert" program, including, but not limited to, those Capstar sales personnel who left Capstar during the relevant time period.

3.    All documents concerning Capstar's use of Radio Fusion, Best Rate and Tapscan, including, but not limited to, subscription agreements, documents showing the source and ownership of the software and user manuals.

4.    All documents supporting the assertion in ¶ 3 of the Declaration of Steven Kritzman that Radio Fusion, Best Rate and Tapscan are "confidential and proprietary information" and "proprietary software systems" of Clear Channel.

5.    All documents concerning sales training programs, materials and methodologies utilized by Capstar, including, but not limited to, Solution Based Selling for Account Executives ("SBSAE") and any other sales training program developed by or for Clear Channel University. This request includes, but is not limited to, any agreements with third parties relating to the training of sales personnel, and any documents reflecting or relating to the sharing of Clear Channel training materials with the public or third parties.

6

6.    All Confidentiality, Trade Secrets and Non-Compete Agreements ("Non-Competes"), identical or similar in form to the Non-Competes signed by defendants Anthony Campbell, Louis Carpino, Adam Gross and Jose Luis Torres, that were signed by other Capstar sales personnel who thereafter left Capstar to join a competitor, and that were not enforced by Capstar through cease and desist letters, court filings or otherwise.

7.    All documents sufficient to identify all sales personnel who, having been hired by Capstar, successfully negotiated the Non-Compete as originally presented by Capstar to restrict, narrow or otherwise change the scope of the document before signing.

8.    All documents sufficient to identify all Capstar advertisers obtained as a result of hiring sales personnel who previously had sold to or solicited those accounts, or otherwise had relationships with contacts at those accounts, while employed at competing radio companies prior to the sales personnel being hired by Capstar.

9.    All documents concerning any Capstar practices or policies (official or otherwise) relating to Capstar sales personnel's solicitation of account contacts obtained while working for previous employers, including any guidelines or restrictions on their doing so as well as any documents reflecting or relating to particular solicitations or potential solicitations.

10.    All documents concerning any Capstar policy (official or otherwise) relating to how Capstar sales personnel identify contacts to solicit for new advertising business, including any use of the Media Monitors service or any other service that allows the user to determine which advertisements are running on a particular radio station.

7

11.     All documents supporting the assertion in Complaint ¶ 97 that "[a]s a

result of Defendants' actions . . . Clear Channel has suffered, and will continue to suffer,

severe and irreparable harm, for which it has no adequate remedy at law."

Dated: New York, New York
        March 24, 2008

DEBEVOISE & PLIMPTON LLP

By: _____
        Jeremy Feigelson (JF-4963)

919 Third Avenue
New York, New York 10022
(212) 909-6000

*Attorneys for Defendants Citadel
Broadcasting Corporation, Anthony
Campbell, Louis Carpino, Adam Gross and
Jose Luis Torres*

8

# Exhibit 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Capstar Radio Operating Company, a Delaware         :
Corporation,                                        :
                                                    :
                Plaintiff,                          :
                                                    :
        v.                                          :   No. 08 CV 2976 (LAK)
                                                    :
Anthony Campbell; Louis Carpino; Adam Gross;        :
Jose Luis Torres; Citadel Broadcasting Corporation, :
a Nevada Corporation; and John Does 1-10,           :
                                                    :
                Defendants.                         :
                                                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' [PROPOSED] RULE 30(b)(6) DEPOSITION NOTICE OF PLAINTIFF CAPSTAR RADIO OPERATING COMPANY

Please take notice that, Defendants Citadel Broadcasting Corporation, Anthony

Campbell, Louis Carpino, Adam Gross and Jose Luis Torres, by their undersigned attorneys,

Debevoise & Plimpton LLP, will take the deposition of Plaintiff Capstar Radio Operating

Company ("Capstar") on the subject matters set forth in Defendants' First Request for

Production of Documents, a copy of which is attached hereto as Schedule A. The

deposition will take place starting at 9:30 a.m. on April 2, 2008 in New York, New York

at the offices of Debevoise & Plimpton LLP, or at a time and place as mutually agreed

upon by the parties, and shall continue from day to day until completed. Pursuant to

Federal Rule of Civil Procedure 30(b)(6), Capstar shall designate a person or persons

who are most knowledge about the topics set forth in Schedule A to testify on its behalf.

The deposition will be conducted under oath, and will be transcribed by stenographic and

videographic means.

Dated: New York, New York
      March 24, 2008

DEBEVOISE & PLIMPTON LLP

By: _____
      Jeremy Feigelson (JF-4963)

919 Third Avenue
New York, New York 10022
(212) 909-6000

*Attorneys for Defendants Citadel
Broadcasting Corporation, Anthony
Campbell, Louis Carpino, Adam Gross and
Jose Luis Torres*

2

# SCHEDULE A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
Capstar Radio Operating Company, a Delaware　　　:
Corporation,　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　Plaintiff,　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　v.　　　　　　　　　　　　　　　　　　　:　　No. 08 CV 2976 (LAK)
　　　　　　　　　　　　　　　　　　　　　　　:
Anthony Campbell; Louis Carpino; Adam Gross;　　:
Jose Luis Torres; Citadel Broadcasting Corporation, :
a Nevada Corporation; and John Does 1-10,　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　Defendants.　　　　　　　　　　　　:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' [PROPOSED] FIRST REQUEST FOR
## PRODUCTION OF DOCUMENTS

Defendants Citadel Broadcasting Corporation, Anthony Campbell, Louis Carpino,

Adam Gross and Jose Luis Torres, by their undersigned attorneys, Debevoise & Plimpton

LLP, hereby request that plaintiff, Capstar Radio Operating Company ("Capstar"),

produce the documents and things requested herein for examination, inspection and

copying, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and all

applicable local rules, by delivering such documents to the offices of Debevoise &

Plimpton LLP, 919 Third Avenue, New York, NY 10022, Attention: Jeremy Feigelson,

Esq., on or before March 28, 2008, or at such other time and place as agreed upon by the

parties' counsel.

## **Definitions and Instructions**

For purposes of this First Request for Production of Documents, the Uniform Definitions in Discovery Requests set forth in Rule 26.3 and the instructions on Assertion of Claim of Privilege set forth in Rule 26.2 of the Local Civil Rules of the United States District Court for the Southern District of New York are incorporated herein, and such further instructions and definitions are set forth herein:

1.     "Complaint" means the Complaint filed by the plaintiff in this action on or about March 21, 2008.

2.     "Concerning" means relating to, referring to, describing, evidencing or constituting.

3.     "Capstar" means "Capstar Radio Operating Company" and any of its predecessors, parents, subsidiaries, affiliated companies, offices, officers, directors, partners, employees, representatives, attorneys and agents, including, but not limited to, its parent Clear Channel Communications, Inc. and its radio stations WLTW and WKTU. The terms "Capstar" and "Clear Channel" as used herein should be considered interchangeable and equivalent in meaning.

4.     "Document" is synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including without limitation electronic or computerized data compilations.

5.     If any portion of a document is considered responsive to any request, the request shall be construed as requesting production of the entire document.

2

6.      Except when express reference is made to another paragraph, each
paragraph herein should be construed independently and not by reference to any other
paragraph herein for purpose of limitation.

7.      Each Discovery Request shall be construed as being inclusive rather than
exclusive.  Thus, words importing the singular shall include the plural; words importing
the plural shall include the singular; words importing one gender shall include both
genders; the words "and" and "or" shall be construed conjunctively or disjunctively as
necessary to make the interrogatory or document request inclusive; the word "all" means
"any and all" and the word "any" means "any and all."  *See* Local Civil Rule 26.3(d).

8.      Any and all examples or descriptions of documents herein are illustrative
only and do not limit the request to those particular documents or types of documents, as
if it were explicitly noted that such request was "not limited to" the stated examples.

9.      All attachments and appended or embedded links or files shall be
produced if any one of them is responsive to any of these document requests.  If with
respect to any request there are no responsive documents, so state in writing.

10.     If part of an otherwise responsive document contains information that is
subject to a claim of privilege, those parts of the document subject to the claim of
privilege shall be deleted or redacted from the document, the deleted or redacted parts
shall be clearly marked as such, and the rest of the document shall be produced.

11.     In responding to this document request, plaintiff shall furnish all
documents available to defendants, wherever located, including documents in the
possession of attorneys, representatives, agents, and all persons acting on plaintiff's

3

behalf. If plaintiff cannot respond to this document request in full after exercising due diligence to secure the documents requested, plaintiff shall so state and respond to the extent possible, specifying the nature of its inability to respond to the remainder.

12.     If any documents or parts of documents called for by this demand have been destroyed, discarded, or otherwise disposed of, a list shall be furnished setting forth as to each document the following information: (a) the nature of the document, e.g., letter, memorandum, telegram, etc.; (b) the name, address, title, and business affiliation, if other than plaintiff of each person who prepared, received, viewed or had possession, custody, or control of the document; (c) the date of the document; (d) the subject matter and a short description of the document; (e) the date of destruction or other disposition; (f) a statement of the reasons for destruction or other disposition; (g) the name, address, title, and business affiliation, if other than plaintiff, of each person who authorized destruction or other disposition; and (h) the name, address, title, and business affiliation, if other than plaintiff, of each person who destroyed or disposed of the document.

13.     If any documents or parts of documents called for by this demand is no longer in plaintiff's possession, custody or control, a list shall be furnished setting forth as to each document the following information: (a) the identity of each author or preparer; (b) the identity of each addressee, and of every other person who received, read or viewed the document, including their name, title and business affiliation; (c) the date of the document; (d) the subject matter and a short description of the document; (e) the last date on which the document was in plaintiff's control; (f) the identity of each person now in control of the document, including their name, title and business affiliation; (f) the

4

reasons for the release of the document; and (g) the identity of each person with any knowledge concerning the document's release, including their name, title and business affiliation, if other than plaintiff.

14.      If plaintiff contends that a particular request, or a definition or an instruction applicable thereto, is ambiguous, such claim shall not provide a basis for refusing to respond.  You are instructed to set forth the allegedly ambiguous language and the interpretation of that language that plaintiff has adopted in responding to the request in question.

15.      The document requests that follow are to be continuing, and plaintiff is requested to provide, by way of supplementary responses thereto, such additional documents as it or any persons acting on its behalf may hereafter obtain that will augment, clarify, or otherwise modify the response now given to these document requests.  Such supplementary responses are to be served upon counsel for Defendants immediately after the additional documents are discovered.

16.      Unless otherwise stated the relevant time period for these requests is from January 1, 2004 to the present.

## Documents to be Produced

1.    All documents concerning the origin, development and use of the "Ask the Expert" sales program, including, but not limited to, the PowerPoint presentation referenced in Complaint ¶ 88 and any documents relied upon for the creation of that PowerPoint presentation or the program generally.

2.    All documents sufficient to identify all employees who have had access to the "Ask the Expert" program, including, but not limited to, those Capstar sales personnel who left Capstar during the relevant time period.

3.    All documents concerning Capstar's use of Radio Fusion, Best Rate and Tapscan, including, but not limited to, subscription agreements, documents showing the source and ownership of the software and user manuals.

4.    All documents supporting the assertion in ¶ 3 of the Declaration of Steven Kritzman that Radio Fusion, Best Rate and Tapscan are "confidential and proprietary information" and "proprietary software systems" of Clear Channel.

5.    All documents concerning sales training programs, materials and methodologies utilized by Capstar, including, but not limited to, Solution Based Selling for Account Executives ("SBSAE") and any other sales training program developed by or for Clear Channel University. This request includes, but is not limited to, any agreements with third parties relating to the training of sales personnel, and any documents reflecting or relating to the sharing of Clear Channel training materials with the public or third parties.

6

6.     All Confidentiality, Trade Secrets and Non-Compete Agreements ("Non-Competes"), identical or similar in form to the Non-Competes signed by defendants Anthony Campbell, Louis Carpino, Adam Gross and Jose Luis Torres, that were signed by other Capstar sales personnel who thereafter left Capstar to join a competitor, and that were not enforced by Capstar through cease and desist letters, court filings or otherwise.

7.     All documents sufficient to identify all sales personnel who, having been hired by Capstar, successfully negotiated the Non-Compete as originally presented by Capstar to restrict, narrow or otherwise change the scope of the document before signing.

8.     All documents sufficient to identify all Capstar advertisers obtained as a result of hiring sales personnel who previously had sold to or solicited those accounts, or otherwise had relationships with contacts at those accounts, while employed at competing radio companies prior to the sales personnel being hired by Capstar.

9.     All documents concerning any Capstar practices or policies (official or otherwise) relating to Capstar sales personnel's solicitation of account contacts obtained while working for previous employers, including any guidelines or restrictions on their doing so as well as any documents reflecting or relating to particular solicitations or potential solicitations.

10.    All documents concerning any Capstar policy (official or otherwise) relating to how Capstar sales personnel identify contacts to solicit for new advertising business, including any use of the Media Monitors service or any other service that allows the user to determine which advertisements are running on a particular radio station.

7

11.    All documents supporting the assertion in Complaint ¶ 97 that "[a]s a result of Defendants' actions . . . Clear Channel has suffered, and will continue to suffer, severe and irreparable harm, for which it has no adequate remedy at law."

Dated: New York, New York
  March 24, 2008

DEBEVOISE & PLIMPTON LLP

By: _____ / s / _____

  Jeremy Feigelson (JF-4963)

919 Third Avenue
New York, New York 10022
(212) 909-6000

*Attorneys for Defendants Citadel Broadcasting Corporation, Anthony Campbell, Louis Carpino, Adam Gross and Jose Luis Torres*

8

# Exhibit 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
Capstar Radio Operating Company, a Delaware      :
Corporation,                                     :
                                                 :
        Plaintiff,                              :
                                                 :
    v.                                          :    No. 08 CV 2976 (LAK)
                                                 :
Anthony Campbell; Louis Carpino; Adam Gross;     :   **DECLARATION OF**
Jose Luis Torres; Citadel Broadcasting Corporation, : **ANTHONY CAMPBELL**
a Nevada Corpoartion; and John Does 1-10,        :
                                                 :
        Defendants.                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Anthony Campbell declares:

    1.    I am a defendant in this case. I submit this declaration upon personal knowledge,

in opposition to the motion for a preliminary injunction by plaintiff Capstar Radio Operating

Company, a subsidiary of Clear Channel Communications (together "Clear Channel"), for an

injunction that would prevent me from working for the next six months.

    2.    I am a New York radio advertising salesman. I am 26 years old. I first worked in

this field for Emmis Communications, a direct competitor of both Clear Channel and my current

employer, Citadel Broadcasting. From approximately August 2005 to April 2007, I sold local

New York advertising for Emmis Communications station WRKS-FM. From April 30, 2007 to

March 5, 2008, I worked at Clear Channel and sold ads for WKTU-FM ("WKTU"), a New York

rhythmic contemporary station. For a time my boss at Clear Channel was Jonathan Mason, until

Clear Channel let him go. To me Jonathan is an important mentor and a good friend.

    3.    On March 5, 2008, I went to work in sales for WABC-AM ("WABC"), a New

York talk radio station owned by NY Radio Assets, LLC a Delaware entity which is an indirect

wholly-owned subsidiary of Citadel Broadcasting. I left for Citadel because I wanted to work

again for Jonathan Mason, who had just started working at Citadel. I understand that between the time that Jonathan left Clear Channel and the time he started at Citadel, Jonathan was in a "non-solicit" period during which he could not ask or encourage me to come to WABC. He did not do so. I voluntarily expressed interest in joining him, and he told me I would have to talk to other people at WABC.

4.      WABC has a totally different format than WKTU. WABC is focused on news and political personalities like Don Imus and Rush Limbaugh. In contrast, WKTU is a music and dance-oriented station. WABC appeals to a different demographic, meaning a different advertising market.

5.      When I started at Clear Channel, I was required to sign a big stack of company forms before I could start work. One of these forms, I now know, was called the Confidentiality, Trade Secrets and Non-Compete Agreement. ("Non-Compete", Exhibit A hereto). Nobody explained the Non-Compete to me. I was not given any real chance to study the Non-Compete. I had no chance to negotiate the terms of the Non-Compete. Clear Channel did not give me a copy of the Non-Compete at the time I signed it.

6.      It is easy to find out who is advertising on any given radio station, including Clear Channel's stations. You can do this by turning on the radio; by listening to the station's live Internet stream; by reviewing the station or parent company website for postings by or about advertisers; or through services such as Media Monitors. Media Monitors is a paid subscription service that both Clear Channel and Citadel subscribe to. You just log on to mediamonitors.com using a password that your employer supplies. Once you are logged on, in a few seconds you can call up detailed lists on a station-by-station basis. The lists show exactly which advertisers

have run ads on which stations and at what times of day. Using Media Monitors you can also listen to the actual spots.

7.      Attached as Exhibit B is a Media Monitors report of advertising on WKTU. I ran this report from Media Monitors on Saturday, March 21, 2008, using a Media Monitors log-in ID provided to me by WABC.

8.      Sales executives also commonly use X-Ray, which is a program allowing searching by advertisers to find out dollars spent in a particular time in the New York market. Both Clear Channel and Citadel use this database. Attached as Exhibit C is a media advertiser history report from X-Ray for an automobile dealership. I ran this report from the X-Ray database on Monday, March 24, 2008.

9.      In local sales it is also easy to find out the name of the right contact person at any given advertiser or potential advertiser. For example, I will look up a restaurant or a car dealership in the phone book or online. Then I call and ask to talk with the person in charge of placing advertising. Even if it is a cold call, usually I can get in touch with the right person, or at least get their name, within a few minutes of starting my research.

10.      I am not aware of any computer software that Clear Channel uses in the area of ad sales that is proprietary to Clear Channel. I understand that in its court papers, Clear Channel mentions software packages called Radio Fusion, Best Rate and Tapscan. As I understand it, these are all third-party software packages that are available to any radio station company. For example, Citadel uses Tapscan too. Radio Fusion and Best Rate are sold by a company called Lan International. Tapscan is sold by a company called Arbitron. Attached as Exhibit D are printouts about these programs from the Lan International website and the Arbitron website.

11.     I did not receive any training while I was at Clear Channel that I would consider unique or confidential or proprietary. Mostly I was trained in basic ad sales techniques that are common sense. Training in ad sales is always about how to locate prospective advertisers and persuade them that a particular station's format is right for them. This is true across the industry.

12.     Since I started at WABC, I have not closed any ad sales, whether from businesses that also advertise with Clear Channel or any other businesses.

13.     I am familiar with four people, Carrie Kuntz, Brian Rooney, Seamus Heaney and Andrea Duggan, who used to sell ads for Clear Channel and who left within the last year to go work at competing companies. Each of these people had jobs similar to mine. I do not know for sure that they were asked to sign the same Non-Compete that I was, but I believe they were since the form appears to have been a standard requirement. These four people also would have received similar training to mine, and been exposed to similar information about Clear Channel's business. So far as I know, Clear Channel has taken no legal action against any of these individuals.

14.     I understand from Clear Channel's court papers that they are raising questions about an advertising sales program called "Ask the Expert." This is a program where advertisers like doctors and hospitals buy a combination of airtime and other advertising opportunities, like space on the radio station website. On the website the advertiser is portrayed as the station's "expert" in a particular subject area. The concept is not unique to Clear Channel. Attached as Exhibit E are print outs from the web site of WNIS-AM (a Sinclair Broadcasting Group station in Norfolk, Virginia) and the web site of KMBZ-AM (an Entercom station in Kansas City, Kansas) showing that those companies also have similar programs by the same name. I did not bring any materials about "Ask the Expert" with me to WABC. I have not used any Clear

-4-

Channel materials about "Ask the Expert" while at WABC, and I have no personal knowledge of anybody at WABC doing so.

15.    When I started my current job, WABC told me not to bring any Clear Channel materials with me. I understood this instruction to refer to rate-related and training documents, and I did not bring any such materials with me. I did bring my contacts list and a couple of presentations that I was personally responsible for creating. I now understand that I was not supposed to bring the presentations. Other than my contacts list, I am turning over to counsel all copies of any materials I brought from Clear Channel. Even though I have had these presentation materials, I have not accessed or used them in connection with my employment at WABC.

16.    I had about nine clients who had active accounts with WKTU at the time that I left WKTU. So far I have made contact with three of these on behalf of WABC: DiBlasi Ford, Jaguar of Great Neck and City Lights Cruises. City Lights Cruises is a contact of mine from my previous job at Emmis Communications. When I joined Clear Channel, I brought with me my contacts list from my previous sales job at Emmis Communications. On behalf of Clear Channel, and with my bosses' knowledge and approval, I regularly solicited business for Clear Channel from my former client contacts from Emmis.

17.    I understand that Clear Channel is seeking an order that would stop me from working altogether in the radio or television industry in the New York area for 180 days. This would be devastating to me. It would be virtually impossible for me to find any other meaningful employment in that time period because my strengths and experience are in the area of radio advertising. I left Clear Channel without any severance pay to carry me through any period of unemployment. I believe that the proposed 180-day ban is unreasonable, especially

because there is no competition for listeners between WKTU's format and WABC's format;
because to the extent I am now competing with Clear Channel, I am doing the same thing I did
when I joined Clear Channel and competed on its behalf with my former employer Emmis; and
because I will not be using any information, techniques, software or materials that in my view
are unique or proprietary to Clear Channel.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on March 24, 2008 at New York, New York:

_____
Anthony Campbell

# Exhibit A



# CONFIDENTIALITY, TRADE SECRETS AND NON-COMPETE AGREEMENT

*The Parties to this Agreement and certain referenced elements therein are as follows:*

Employer: _Clear Channel_  Incorporated in: _Delaware_

Corporate Headquarters: _San Antonio TX_

Station and City and State License: _WKTU  New York, NY_

Metropolitan Statistical Area(s) in which Station Competes: _New York City_

Employee: _Anthony Campbell_

Employment Capacity (Job Duties): _Account Executive_

This Agreement is entered into by and between, the above-referenced "Employee" and the above-referenced "Employer." Employee is entering into employment with or is currently employed by Employer at the above-referenced Station in the above-referenced capacity.

During the term of this agreement, Employee will have access to and become familiar with various trade secrets and confidential information and techniques of Employer. Employee acknowledges that such confidential information and techniques, and trade secrets are owned and shall continue to be owned solely by Employer. During the term of his/her employment, and after such employment terminates, Employee agrees not to use such information for any purpose whatsoever or to divulge such information to any person other than Employer or person to whom Employer has given its consent. Under no circumstances shall Employee remove from Employer's office any of Employer's books, records, format materials, documents, or customer lists, or any copies of such documents without the written permission of Employer; nor shall employee make any copies of such books, records, materials, documents, or customer lists for use outside of Employer's office except as specifically authorized in writing by Employer.

Employee agrees that in consideration of his/her employment or continued employment with Employer, training in Employer's techniques, access to confidential trade secrets or Employer's expenditure of money and energy in advertising, training, promoting or dissemination of information about Employee or various programs in which Employee may participate, Employee does hereby agree that during his/her employment with Employer in the capacity above stated or otherwise and for a period of one hundred eighty (180) days thereafter, he/she shall neither engage directly or indirectly in the rendering of services similar to those provided for Employer nor have any direct or indirect interest in or employment relationship with any radio or television station (including cable organization or supplier) or firm or affiliated company owning or operating a radio or television station or cable system located within or purporting to serve the above-referenced Metropolitan Statistical Area(s), as defined by the US Government, other than properties operated by Employer. The parties have attempted to limit Employee's right to compete only to the extent necessary to protect Employer from unfair competition. The parties recognize, however, that reasonable people may differ in making such a determination. Consequently, the parties hereby agree that, if the scope or enforceability of the restrictive covenant is in any way disputed at any time, a court may modify and enforce the covenant to the extent that it believes to be reasonable under the circumstances existing at that time. In the event Employee violates the restrictive covenant set forth above, it is agreed that the term of the restrictive covenant so violated shall be extended for a period of one hundred eighty (180) days from the time Employee ceases such violation or, in the event of court action, for a period of one hundred eighty (180) days after the entry of a final order or judgment.

Employee further acknowledges that in the event his/her employment with Employer terminates for any reason, he/she will be able to earn a livelihood without violating the foregoing restrictions and that his/her

ability to earn a livelihood without violating such restrictions is a material condition to his/her employment with Employer.

Employee acknowledges that compliance with the covenants previously set forth herein is necessary to protect the business and good will of Employer and that a breach of those covenants will irreparably and continually damage Employer, for which money damages may not be adequate. Consequently, Employee agrees that in the event he/she breaches or threatens to breach any of these covenants, Employer shall be entitled to both a preliminary or permanent injunction in order to prevent the continuation of such harm and money damages insofar as they can be determined.

Nothing is this agreement, however, shall be construed to prohibit Employer from also pursuing any other remedy, the parties having agreed that all remedies shall be cumulative. As such money damages for the period of time during which Employee violated these covenants, Employer shall be entitled to recover the amount of fees, compensation or other remuneration earned by Employee as a result of any such breach. If in one or more instances either party fails to insist that the other party perform any of the terms of this agreement, such failure shall not be construed as a waiver by such party of any past, present or future right granted under this agreement; the obligations of both parties under this agreement shall continue in full force and effect.

The obligations contained in the preceding paragraphs shall survive the termination of this agreement. In addition, the termination of this agreement shall not affect any of the rights or obligations of either party arising prior to or at the time of the termination of this agreement, or which may arise by any event causing the termination of this agreement.

If any provision, paragraph or subparagraph of this agreement is adjudged by any court to be void or unenforceable in whole or in part, this adjudication shall not affect the validity of the remainder of the agreement including any other provision, paragraph, or subparagraph. Each provision, paragraph and subparagraph of this agreement is separable from every other provision, paragraph and subparagraph, and constitutes a separate and distinct covenant.

This agreement shall be binding upon and shall inure to the benefit of the parties and their successors, assigns, executors, administrators, and personal representatives. This agreement constitutes the complete understanding between the parties, all prior representations or agreements having been merged into this agreement. No alteration or modification to any of the provisions of this agreement shall be valid unless made in writing and signed by both parties. This agreement shall be subject to and governed by the laws of the above-referenced State. If Employee breaches any of the terms of this agreement, the Employee shall pay to Employer all of Employer's costs and expenses, including attorney's fees, incurred by Employer in enforcing the terms of this agreement.

Employee agrees and acknowledges that this agreement is not a contract for employment or continued employment and does not place any obligations upon Employer except as specifically stated herein.

"EMPLOYER"                                             "EMPLOYEE"

By:_____          Signature: _Pedro Crystal_____

Its:_____          Date: _4/26/07_____

# Exhibit B



**MEDIA MONITORS**

## WKTU-FM/New York Media Monitors℠ "Media Log" Report

### 3/21/2008 Spots

| Start Time | Duration | Type | Account / Title | Parent / Artist | Class |
|---|---|---|---|---|---|
| | | | | | |

| Start Time | Duration | Type | Account / Title | Parent / Artist | Class |
|---|---|---|---|---|---|
| **3/21/2008 12:00:00 AM** | | | | | |
| 12:19:30 AM | 00:30 | $ | Proactiv Solution | Guthy-Renker Corporation | Cosmetics & Skin Care Products |
| 12:21:00 AM | 01:01 | $ | WreckingBalm | WreckingBalm | Tattoo, Piercing, Removal & Supplies |
| 12:22:17 AM | 00:58 | $ | Proactiv Solution | Guthy-Renker Corporation | Cosmetics & Skin Care Products |
| 12:35:18 AM | 01:00 | $ | Verizon FiOS | Verizon Communications, Inc. | Business & Consumer Services |
| 12:36:18 AM | 01:00 | $ | Zencore Plus | Bodee, LLC | Nutritional Supplements |
| 12:37:18 AM | 01:00 | $ | CreditAnswers | CreditAnswers, LLC | Credit Counseling Services |
| 12:38:18 AM | 00:30 | $ | Proactiv Solution | Guthy-Renker Corporation | Cosmetics & Skin Care Products |
| **3/21/2008 1:00:00 AM** | | | | | |
| 1:18:48 AM | 00:59 | $ | Proactiv Solution | Guthy-Renker Corporation | Cosmetics & Skin Care Products |
| 1:20:13 AM | 00:29 | $ | Proactiv Solution | Guthy-Renker Corporation | Cosmetics & Skin Care Products |
| 1:34:18 AM | 01:01 | $ | WreckingBalm | WreckingBalm | Tattoo, Piercing, Removal & Supplies |
| 1:35:19 AM | 01:00 | $ | CreditAnswers | CreditAnswers, LLC | Credit Counseling Services |
| 1:36:19 AM | 01:00 | $ | Zencore Plus | Bodee, LLC | Nutritional Supplements |
| 1:37:19 AM | 00:30 | $ | Proactiv Solution | Guthy-Renker Corporation | Cosmetics & Skin Care Products |
| **3/21/2008 2:00:00 AM** | | | | | |
| 2:19:14 AM | 00:30 | $ | Nublu | Nublu | Restaurants, Night Clubs |
| 2:19:44 AM | 01:01 | $ | Vital Dent | Vital Dent | Dentistry |
| 2:20:45 AM | 01:00 | $ | Zencore Plus | Bodee, LLC | Nutritional Supplements |
| 2:21:45 AM | 00:30 | $ | Proactiv Solution | Guthy-Renker Corporation | Cosmetics & Skin Care Products |
| 2:34:49 AM | 00:30 | $ | Proactiv Solution | Guthy-Renker Corporation | Cosmetics & Skin Care Products |
| 2:35:19 AM | 01:00 | $ | CreditAnswers | CreditAnswers, LLC | Credit Counseling Services |
| 2:36:19 AM | 00:58 | $ | Proactiv Solution | Guthy-Renker Corporation | Cosmetics & Skin Care Products |
| **3/21/2008 3:00:00 AM** | | | | | |
| 3:17:17 AM | 01:01 | $ | WreckingBalm | WreckingBalm | Tattoo, Piercing, Removal & Supplies |
| | | | | Guthy-Renker | Cosmetics & Skin Care |

| Time | Duration | | Advertiser | Company | Category |
|---|---|---|---|---|---|
| 3:18:34 AM | 00:29 | $ | Proactiv Solution | Corporation | Products |
| 3:32:04 AM | 00:30 | $ | Proactiv Solution | Guthy-Renker Corporation | Cosmetics & Skin Care Products |
| 3:32:34 AM | 01:01 | $ | Vital Dent | Vital Dent | Dentistry |
| 3:34:19 AM | 00:58 | $ | Proactiv Solution | Guthy-Renker Corporation | Cosmetics & Skin Care Products |

| 3/21/2008 4:00:00 AM | | | | | |
|---|---|---|---|---|---|
| 4:17:06 AM | 00:31 | $ | DiBlasi Ford | DiBlasi Motors, Inc. | Cars & Lt Trucks, Local Dealers |
| 4:17:37 AM | 01:00 | $ | Zencore Plus | Bodee, LLC | Nutritional Supplements |
| 4:19:22 AM | 00:31 | $ | Proactiv Solution | Guthy-Renker Corporation | Cosmetics & Skin Care Products |
| 4:19:53 AM | 01:00 | $ | Vital Dent | Vital Dent | Dentistry |
| 4:33:52 AM | 00:30 | $ | Proactiv Solution | Guthy-Renker Corporation | Cosmetics & Skin Care Products |
| 4:34:22 AM | 00:31 | $ | NYS Broadcasters Recruitment | NYS Broadcasters Association, Inc. | Employment Recruitment |
| 4:35:10 AM | 00:30 | $ | Wal-Mart | Wal-Mart Stores, Inc. | Discount Department Store |
| 4:35:40 AM | 00:31 | $ | Dello Russo Laser Vision | Dello Russo Laser Vision | Eye Care & Eye Care Products |
| 4:36:11 AM | 00:58 | $ | GEICO | Berkshire Hathaway, Inc. | Insurance Providers |

| 3/21/2008 5:00:00 AM | | | | | |
|---|---|---|---|---|---|
| 5:13:20 AM | 00:59 | $ | Verizon Bundle | Verizon Communications, Inc. | Telecom Bundled Services |
| 5:14:19 AM | 00:29 | $ | McDonald's Recruitment | McDonald's Corporation | Employment Recruitment |
| 5:14:48 AM | 00:30 | $ | Toys "R" Us | Geoffrey, Inc. | Toy Stores |
| 5:15:18 AM | 00:58 | $ | Dunkin' Donuts | Dunkin' Brands, Inc. | Fast Food |
| 5:28:09 AM | 00:27 | $ | JCPenney | J.C. Penney Corporation, Inc. | Department Stores |
| 5:28:36 AM | 00:57 | $ | Ontario Tourism | ON Tourism Mktg. Partnership Corp. | Tourism Promotion |
| 5:29:33 AM | 00:30 | $ | Orbitz | Orbitz, LLC | Travel Services |
| 5:30:03 AM | 00:58 | $ | Verizon Wireless | Verizon Communications, Inc. | Wireless Carrier |
| 5:42:43 AM | 01:00 | $ | Burlington Coat Factory | Burlington Coat Factory Direct Corp. | Department Stores |
| 5:43:43 AM | 00:30 | $ | JCPenney | J.C. Penney Corporation, Inc. | Department Stores |
| 5:44:13 AM | 00:29 | $ | Toys "R" Us | Geoffrey, Inc. | Toy Stores |
| 5:44:42 AM | 00:29 | $ | JCPenney | J.C. Penney Corporation, Inc. | Department Stores |
| 5:45:11 AM | 00:30 | $ | Toys "R" Us | Geoffrey, Inc. | Toy Stores |
| 5:58:14 AM | 01:00 | $ | Verizon FiOS | Verizon Communications, Inc. | Business & Consumer Services |
| 5:59:14 AM | 00:30 | $ | Campbell's Swanson | Campbell Soup Company | Food & Beverages |

| 3/21/2008 6:00:00 AM | | | | | |
|---|---|---|---|---|---|
| 6:12:35 AM | 01:01 | $ | St. Lucia Tourism | St. Lucia Tourist Board | Tourism Promotion |
| 6:13:36 AM | 00:58 | $ | Dunkin' Donuts | Dunkin' Brands, Inc. | Fast Food |
| 6:14:34 AM | 00:32 | $ | Jaguar Of Great Neck | Jaguar Of Great Neck | Cars & Lt Trucks, Local Dealers |

| 6:15:23 AM | 00:27 | $ HD Digital Radio Alliance | HD Digital Radio Alliance | Organizational Advertising |
| 6:32:34 AM | 01:00 | $ PNC | PNC Financial Services Group, Inc. | Banks, S&Ls, Credit Unions |
| 6:33:34 AM | 00:58 | $ Jeep Grand Cherokee | Chrysler, LLC | Cars & Lt Trucks, Domestic Factory |
| 6:34:35 AM | 00:28 | $ Progressive Insurance | Progressive Casualty Insurance Co. | Insurance Providers |
| 6:49:12 AM | 01:00 | $ Toyota SUVs | Toyota Motor Sales, U.S.A., Inc. | Cars & Lt Trucks, Asian Factory |
| 6:50:12 AM | 00:58 | $ Verizon Wireless | Verizon Communications, Inc. | Wireless Carrier |
| 6:51:10 AM | 00:30 | $ McDonald's | McDonald's Corporation | Fast Food |
| 6:57:44 AM | 00:59 | $ Verizon Bundle | Verizon Communications, Inc. | Telecom Bundled Services |
| 6:58:43 AM | 01:00 | $ The Islands Of The Bahamas Tourism | The Bahamas Ministry Of Tourism | Tourism Promotion |

### 3/21/2008 7:00:00 AM

| 7:11:34 AM | 01:00 | $ Verizon FiOS | Verizon Communications, Inc. | Business & Consumer Services |
| 7:12:34 AM | 00:30 | $ American InterContinental University | American InterContinental University | Colleges & Universities |
| 7:13:30 AM | 00:31 | $ New York Lottery | New York State Lottery | Lotteries |
| 7:14:01 AM | 00:29 | $ New York Post | News Corporation | Newspapers |
| 7:30:02 AM | 00:58 | $ Verizon Wireless | Verizon Communications, Inc. | Wireless Carrier |
| 7:31:00 AM | 00:30 | $ Progressive Insurance | Progressive Casualty Insurance Co. | Insurance Providers |
| 7:31:30 AM | 00:59 | $ Mitsubishi Lancer | Mitsubishi Motors North America, Inc | Cars & Lt Trucks, Asian Factory |
| 7:32:44 AM | 00:29 | $ HD Digital Radio Alliance | HD Digital Radio Alliance | Organizational Advertising |
| 7:43:14 AM | 00:29 | $ McDonald's | McDonald's Corporation | Fast Food |
| 7:43:43 AM | 00:58 | $ St. Lucia Tourism | St. Lucia Tourist Board | Tourism Promotion |
| 7:44:41 AM | 00:57 | $ Estee Lauder | Estee Lauder, Inc. | Cosmetics & Skin Care Products |
| 7:56:27 AM | 01:00 | $ Burlington Coat Factory | Burlington Coat Factory Direct Corp. | Department Stores |
| 7:57:27 AM | 00:59 | $ IKEA | Inter IKEA Systems B.V. | Home Furnishings |
| 7:58:26 AM | 00:31 | $ Wendy's | Wendy's International, Inc. | Fast Food |

### 3/21/2008 8:00:00 AM

| 8:10:30 AM | 00:59 | $ Verizon Bundle | Verizon Communications, Inc. | Telecom Bundled Services |
| 8:11:29 AM | 00:59 | $ Burger King | Burger King Brands, Inc. | Fast Food |
| 8:12:28 AM | 00:34 | $ Villa Barone Caterers | Villa Barone Hilltop Manor | Food Svcs, Catering & Event Specialists |
| 8:13:02 AM | 00:58 | $ Verizon Wireless | Verizon Communications, Inc. | Wireless Carrier |
| 8:14:00 AM | 00:33 | $ ShopRite | Wakefern Food Corporation | Food & Beverage Retailers |
| 8:25:17 AM | 00:59 | $ AT&T Wireless | AT&T Corp. | Wireless Carrier |
| 8:27:00 AM | 00:30 | $ McDonald's | McDonald's Corporation | Fast Food |

| 8:27:46 AM | 00:58 | $ Mitsubishi Lancer | Mitsubishi Motors North America, Inc | Cars & Lt Trucks, Asian Factory |
|---|---|---|---|---|
| 8:28:49 AM | 00:30 | $ HD Digital Radio Alliance | HD Digital Radio Alliance | Organizational Advertising |

3/21/2008 9:00:00 AM

| 9:28:23 AM | 00:58 | $ Verizon Wireless | Verizon Communications, Inc. | Wireless Carrier |
|---|---|---|---|---|
| 9:29:21 AM | 01:01 | $ St. Lucia Tourism | St. Lucia Tourist Board | Tourism Promotion |
| 9:30:22 AM | 00:29 | $ State Farm | State Farm Mutual Automobile Ins Co. | Insurance Providers |
| 9:30:51 AM | 00:58 | $ New York Lottery | New York State Lottery | Lotteries |
| 9:31:49 AM | 00:29 | $ American InterContinental University | American InterContinental University | Colleges & Universities |
| 9:32:18 AM | 00:29 | $ State Farm | State Farm Mutual Automobile Ins Co. | Insurance Providers |
| 9:44:48 AM | 01:00 | $ AT&T Wireless | AT&T Corp. | Wireless Carrier |
| 9:45:48 AM | 00:58 | $ Mitsubishi Lancer | Mitsubishi Motors North America, Inc | Cars & Lt Trucks, Asian Factory |
| 9:47:18 AM | 00:58 | $ Mohegan Sun | Mohegan Sun, Inc. | Casinos |
| 9:48:16 AM | 00:31 | $ HD Digital Radio Alliance | HD Digital Radio Alliance | Organizational Advertising |

3/21/2008 10:00:00 AM

| 10:17:02 AM | 00:29 | $ Wendy's | Wendy's International, Inc. | Fast Food |
|---|---|---|---|---|
| 10:17:46 AM | 00:58 | $ St. Lucia Tourism | St. Lucia Tourist Board | Tourism Promotion |
| 10:18:44 AM | 00:59 | $ Mitsubishi Lancer | Mitsubishi Motors North America, Inc | Cars & Lt Trucks, Asian Factory |
| 10:20:12 AM | 00:30 | $ Cavit | Palm Bay International, Inc. | Alcoholic Beverages |
| 10:20:44 AM | 00:28 | $ Kohl's | Kohl's Corp. | Department Stores |
| 10:34:25 AM | 01:00 | $ Toyota | Toyota Motor Sales, U.S.A., Inc. | Cars & Lt Trucks, Asian Factory |
| 10:35:25 AM | 00:30 | $ State Farm | State Farm Mutual Automobile Ins Co. | Insurance Providers |
| 10:35:55 AM | 00:30 | $ Greater NY Automobile Dealers Assoc. | Greater NY Automobile Dealers Assoc. | Trade Association |
| 10:36:55 AM | 00:29 | $ NYC FootCare | Pampered FootCare, LLC | Diagnostic & Medical Services |
| 10:37:24 AM | 00:31 | $ Jaguar Of Great Neck | Jaguar Of Great Neck | Cars & Lt Trucks, Local Dealers |
| 10:37:55 AM | 00:57 | $ Topdot Mortgage | Topdot Mortgage | Finance & Mortgage Services |
| 10:38:52 AM | 00:31 | $ HD Digital Radio Alliance | HD Digital Radio Alliance | Organizational Advertising |

3/21/2008 11:00:00 AM

| 11:15:48 AM | 01:00 | $ OnStar | General Motors Corporation | Car & Truck Accessories & Kits |
|---|---|---|---|---|
| 11:16:48 AM | 00:29 | $ Con Edison | Consolidated Edison, Inc. | Power & Energy |
| 11:17:17 AM | 01:00 | $ Verizon FiOS | Verizon Communications, Inc. | Business & Consumer Services |
| 11:18:17 AM | 01:00 | $ IKEA | Inter IKEA Systems B.V. | Home Furnishings |
| 11:19:29 AM | 00:29 | $ Kit Kat | The Hershey Company | Candy, Gum, Confectionery & Snacks |

| Time | Dur | | Brand | Company | Category |
|---|---|---|---|---|---|
| 11:33:25 AM | 00:30 | $ | Wendy's | Wendy's International, Inc. | Fast Food |
| 11:34:10 AM | 00:59 | $ | Verizon Wireless | Verizon Communications, Inc. | Wireless Carrier |
| 11:35:09 AM | 01:01 | $ | St. Lucia Tourism | St. Lucia Tourist Board | Tourism Promotion |
| 11:36:25 AM | 01:00 | $ | Bargain Network | Bargain Network, Inc. | Business & Consumer Services |
| 11:37:25 AM | 00:59 | $ | Greater NY Automobile Dealers Assoc. | Greater NY Automobile Dealers Assoc. | Trade Association |
| 11:38:55 AM | 00:28 | $ | HD Digital Radio Alliance | HD Digital Radio Alliance | Organizational Advertising |

| 3/21/2008 12:00:00 PM | | | | | |
|---|---|---|---|---|---|
| 12:17:13 PM | 00:30 | $ | McDonald's | McDonald's Corporation | Fast Food |
| 12:17:43 PM | 00:58 | $ | St. Lucia Tourism | St. Lucia Tourist Board | Tourism Promotion |
| 12:18:41 PM | 01:00 | $ | Greater NY Automobile Dealers Assoc. | Greater NY Automobile Dealers Assoc. | Trade Association |
| 12:19:59 PM | 00:29 | $ | Con Edison | Consolidated Edison, Inc. | Power & Energy |
| 12:20:28 PM | 00:57 | $ | Topdot Mortgage | Topdot Mortgage | Finance & Mortgage Services |
| 12:34:02 PM | 00:26 | $ | Kmart | Sears Holdings Corp. | Discount Department Store |
| 12:34:32 PM | 01:00 | $ | Burlington Coat Factory | Burlington Coat Factory Direct Corp. | Department Stores |
| 12:35:32 PM | 01:01 | $ | St. Lucia Tourism | St. Lucia Tourist Board | Tourism Promotion |
| 12:36:33 PM | 00:29 | $ | New York State Department Of Health | State Of New York | Government-Unions-Associations |
| 12:37:02 PM | 00:29 | $ | NightSkin | Arthur W. Perry, MD | Cosmetics & Skin Care Products |
| 12:37:33 PM | 00:56 | $ | Verizon Wireless | Verizon Communications, Inc. | Wireless Carrier |
| 12:39:00 PM | 00:30 | $ | HD Digital Radio Alliance | HD Digital Radio Alliance | Organizational Advertising |

| 3/21/2008 1:00:00 PM | | | | | |
|---|---|---|---|---|---|
| 1:18:11 PM | 00:57 | $ | St. Lucia Tourism | St. Lucia Tourist Board | Tourism Promotion |
| 1:19:10 PM | 00:29 | $ | McDonald's | McDonald's Corporation | Fast Food |
| 1:19:41 PM | 00:58 | $ | Kit Kat | The Hershey Company | Candy, Gum, Confectionery & Snacks |
| 1:21:08 PM | 01:00 | $ | Toyota | Toyota Motor Sales, U.S.A., Inc. | Cars & Lt Trucks, Asian Factory |
| 1:22:08 PM | 00:30 | $ | Cavit | Palm Bay International, Inc. | Alcoholic Beverages |
| 1:35:01 PM | 00:59 | $ | SoBe | South Beach Beverage Co. | Beverages |
| 1:36:00 PM | 00:30 | $ | New York Post | News Corporation | Newspapers |
| 1:36:30 PM | 01:01 | $ | St. Lucia Tourism | St. Lucia Tourist Board | Tourism Promotion |
| 1:37:31 PM | 00:59 | $ | Mitsubishi Lancer | Mitsubishi Motors North America, Inc | Cars & Lt Trucks, Asian Factory |
| 1:38:30 PM | 01:00 | $ | GEICO | Berkshire Hathaway, Inc. | Insurance Providers |
| 1:39:51 PM | 00:30 | $ | HD Digital Radio Alliance | HD Digital Radio Alliance | Organizational Advertising |

| 3/21/2008 2:00:00 PM | | | | | |
|---|---|---|---|---|---|
| 2:17:22 PM | 00:59 | $ | Mitsubishi Lancer | Mitsubishi Motors North America, Inc | Cars & Lt Trucks, Asian Factory |
| 2:18:21 PM | 00:31 | | American InterContinental | American InterContinental | Colleges & Universities |

| | | | | |
|---|---|---|---|---|
| | | $ University | University | |
| 2:18:52 PM | 00:59 | $ AT&T Wireless | AT&T Corp. | Wireless Carrier |
| 2:19:51 PM | 00:30 | $ Cavit | Palm Bay International, Inc. | Alcoholic Beverages |
| 2:20:21 PM | 00:30 | $ National Association Of Realtors | National Association Of Realtors | Trade Association |
| 2:20:51 PM | 00:56 | $ Ontario Tourism | ON Tourism Mktg. Partnership Corp. | Tourism Promotion |
| 2:21:47 PM | 00:32 | $ ShopRite | Wakefern Food Corporation | Food & Beverage Retailers |
| 2:34:57 PM | 00:59 | $ Dunkin' Donuts | Dunkin' Brands, Inc. | Fast Food |
| 2:35:59 PM | 00:29 | $ NightSkin | Arthur W. Perry, MD | Cosmetics & Skin Care Products |
| 2:36:28 PM | 00:29 | $ State Farm | State Farm Mutual Automobile Ins Co. | Insurance Providers |
| 2:36:57 PM | 00:57 | $ St. Lucia Tourism | St. Lucia Tourist Board | Tourism Promotion |
| 2:38:25 PM | 00:33 | $ Villa Barone Caterers | Villa Barone Hilltop Manor | Food Svcs, Catering & Event Specialists |
| 2:38:58 PM | 00:59 | $ Verizon Wireless | Verizon Communications, Inc. | Wireless Carrier |
| 2:40:15 PM | 00:29 | $ HD Digital Radio Alliance | HD Digital Radio Alliance | Organizational Advertising |
| **3/21/2008 3:00:00 PM** | | | | |
| 3:16:57 PM | 01:00 | $ GEICO | Berkshire Hathaway, Inc. | Insurance Providers |
| 3:18:11 PM | 00:59 | $ Verizon Wireless | Verizon Communications, Inc. | Wireless Carrier |
| 3:19:23 PM | 00:29 | $ Axe | Unilever, PLC | Toiletries, Hygienic Products, Skin Care |
| 3:20:01 PM | 00:59 | $ Dunkin' Donuts | Dunkin' Brands, Inc. | Fast Food |
| 3:35:20 PM | 01:27 | $ Vital Dent | Vital Dent | Dentistry |
| 3:36:47 PM | 00:59 | $ PNC | PNC Financial Services Group, Inc. | Banks, S&Ls, Credit Unions |
| 3:37:46 PM | 00:58 | $ Estee Lauder | Estee Lauder, Inc. | Cosmetics & Skin Care Products |
| 3:39:44 PM | 00:59 | $ AT&T Wireless | AT&T Corp. | Wireless Carrier |
| 3:40:43 PM | 00:30 | $ HD Digital Radio Alliance | HD Digital Radio Alliance | Organizational Advertising |
| **3/21/2008 4:00:00 PM** | | | | |
| 4:19:56 PM | 00:30 | $ JCPenney | J.C. Penney Corporation, Inc. | Department Stores |
| 4:20:26 PM | 00:58 | $ Verizon Wireless | Verizon Communications, Inc. | Wireless Carrier |
| 4:21:39 PM | 00:30 | $ Wendy's | Wendy's International, Inc. | Fast Food |
| 4:22:09 PM | 00:57 | $ Estee Lauder | Estee Lauder, Inc. | Cosmetics & Skin Care Products |
| 4:39:43 PM | 01:01 | $ St. Lucia Tourism | St. Lucia Tourist Board | Tourism Promotion |
| 4:40:44 PM | 00:30 | $ New York Post | News Corporation | Newspapers |
| 4:41:14 PM | 00:29 | $ Axe | Unilever, PLC | Toiletries, Hygienic Products, Skin Care |
| 4:42:00 PM | 00:29 | $ New York Lottery | New York State Lottery | Lotteries |
| 4:43:43 PM | 00:30 | $ HD Digital Radio Alliance | HD Digital Radio Alliance | Organizational Advertising |
| **3/21/2008 5:00:00 PM** | | | | |

| 5:17:37 PM | 00:59 | $ Verizon Bundle | Verizon Communications, Inc. | Telecom Bundled Services |
|---|---|---|---|---|
| 5:18:36 PM | 01:01 | $ Vital Dent | Vital Dent | Dentistry |
| 5:19:37 PM | 00:50 | $ New York Lottery | New York State Lottery | Lotteries |
| 5:20:36 PM | 00:31 | $ Orbitz | Orbitz, LLC | Travel Services |
| 5:21:07 PM | 00:57 | $ St. Lucia Tourism | St. Lucia Tourist Board | Tourism Promotion |
| 5:39:27 PM | 01:00 | $ The Islands Of The Bahamas Tourism | The Bahamas Ministry Of Tourism | Tourism Promotion |
| 5:40:27 PM | 00:30 | $ DiBlasi Ford | DiBlasi Motors, Inc. | Cars & Lt Trucks, Local Dealers |
| 5:40:57 PM | 00:34 | $ ShopRite | Wakefern Food Corporation | Food & Beverage Retailers |
| 5:41:31 PM | 00:28 | $ McDonald's | McDonald's Corporation | Fast Food |
| 5:41:59 PM | 00:28 | $ Kmart | Sears Holdings Corp. | Discount Department Store |
| 5:42:30 PM | 00:30 | $ New York State Department Of Health | State Of New York | Government-Unions-Associations |
| 5:43:00 PM | 00:29 | $ HD Digital Radio Alliance | HD Digital Radio Alliance | Organizational Advertising |

### 3/21/2008 6:00:00 PM

| 6:20:25 PM | 00:59 | $ Verizon FiOS | Verizon Communications, Inc. | Business & Consumer Services |
|---|---|---|---|---|
| 6:21:24 PM | 00:31 | $ DiBlasi Ford | DiBlasi Motors, Inc. | Cars & Lt Trucks, Local Dealers |
| 6:21:55 PM | 01:01 | $ Vital Dent | Vital Dent | Dentistry |
| 6:22:56 PM | 00:59 | $ The Islands Of The Bahamas Tourism | The Bahamas Ministry Of Tourism | Tourism Promotion |
| 6:23:55 PM | 01:00 | $ SUBWAY | Doctor's Associates, Inc. | Fast Food |
| 6:24:55 PM | 00:30 | $ American InterContinental University | American InterContinental University | Colleges & Universities |
| 6:38:45 PM | 00:59 | $ Verizon Wireless | Verizon Communications, Inc. | Wireless Carrier |
| 6:39:46 PM | 00:58 | $ Mohegan Sun | Mohegan Sun, Inc. | Casinos |
| 6:40:44 PM | 00:30 | $ JCPenney | J.C. Penney Corporation, Inc. | Department Stores |
| 6:41:28 PM | 01:00 | $ SoBe | South Beach Beverage Co. | Beverages |
| 6:42:57 PM | 00:30 | $ JCPenney | J.C. Penney Corporation, Inc. | Department Stores |
| 6:43:39 PM | 00:29 | $ HD Digital Radio Alliance | HD Digital Radio Alliance | Organizational Advertising |

### 3/21/2008 7:00:00 PM

| 7:15:03 PM | 00:58 | $ Verizon Wireless | Verizon Communications, Inc. | Wireless Carrier |
|---|---|---|---|---|
| 7:16:01 PM | 00:56 | $ Ontario Tourism | ON Tourism Mktg. Partnership Corp. | Tourism Promotion |
| 7:16:59 PM | 00:57 | $ SUBWAY | Doctor's Associates, Inc. | Fast Food |
| 7:18:26 PM | 00:31 | $ NightSkin | Arthur W. Perry, MD | Cosmetics & Skin Care Products |
| 7:32:05 PM | 00:28 | $ Kohl's | Kohl's Corp. | Department Stores |
| 7:32:33 PM | 00:58 | $ New York Lottery | New York State Lottery | Lotteries |
| 7:33:31 PM | 01:00 | $ Nissan | Nissan North America, Inc. | Cars & Lt Trucks, Asian Factory |

| 7:34:31 PM | 00:30 | $ | State Farm | State Farm Mutual Automobile Ins Co. | Insurance Providers |
| 7:35:01 PM | 00:31 | $ | NightSkin | Arthur W. Perry, MD | Cosmetics & Skin Care Products |
| 7:35:32 PM | 00:30 | $ | McDonald's | McDonald's Corporation | Fast Food |
| 7:36:02 PM | 00:30 | $ | New York State Department Of Health | State Of New York | Government-Unions-Associations |
| 7:36:59 PM | 00:30 | $ | HD Digital Radio Alliance | HD Digital Radio Alliance | Organizational Advertising |

| 3/21/2008 8:00:00 PM | | | | | |
|---|---|---|---|---|---|
| 8:14:02 PM | 00:31 | $ | QuickBooks | Intuit, Inc. | Computer Software & Hardware |
| 8:14:33 PM | 00:58 | $ | Jameson | John Jameson Import Company | Alcoholic Beverages |
| 8:16:01 PM | 00:30 | $ | Con Edison | Consolidated Edison, Inc. | Power & Energy |
| 8:16:31 PM | 00:58 | $ | Verizon Wireless | Verizon Communications, Inc. | Wireless Carrier |
| 8:17:56 PM | 00:58 | $ | WreckingBalm | WreckingBalm | Tattoo, Piercing, Removal & Supplies |
| 8:32:17 PM | 00:29 | $ | Urban Tanz | Urban Tanz | Hair Products, Salons & Beauty Supplies |
| 8:33:02 PM | 00:59 | $ | Verizon Wireless | Verizon Communications, Inc. | Wireless Carrier |
| 8:34:01 PM | 00:59 | $ | Greater NY Automobile Dealers Assoc. | Greater NY Automobile Dealers Assoc. | Trade Association |
| 8:35:00 PM | 01:00 | $ | Mitsubishi Lancer | Mitsubishi Motors North America, Inc | Cars & Lt Trucks, Asian Factory |
| 8:36:30 PM | 00:29 | $ | HD Digital Radio Alliance | HD Digital Radio Alliance | Organizational Advertising |

| 3/21/2008 9:00:00 PM | | | | | |
|---|---|---|---|---|---|
| 9:17:58 PM | 00:29 | $ | Jell-O | Kraft General Foods, Inc. | Food & Beverages |
| 9:18:27 PM | 01:00 | $ | Burlington Coat Factory | Burlington Coat Factory Direct Corp. | Department Stores |
| 9:19:27 PM | 00:31 | $ | McDonald's | McDonald's Corporation | Fast Food |
| 9:19:58 PM | 00:27 | $ | U.S. Navy | U.S. Government | Government-Unions-Associations |
| 9:20:25 PM | 00:59 | $ | Toyota SUVs | Toyota Motor Sales, U.S.A., Inc. | Cars & Lt Trucks, Asian Factory |
| 9:34:46 PM | 00:29 | $ | Urban Tanz | Urban Tanz | Hair Products, Salons & Beauty Supplies |
| 9:35:15 PM | 00:57 | $ | Ontario Tourism | ON Tourism Mktg. Partnership Corp. | Tourism Promotion |
| 9:36:42 PM | 00:59 | $ | Greater NY Automobile Dealers Assoc. | Greater NY Automobile Dealers Assoc. | Trade Association |
| 9:37:57 PM | 00:59 | $ | WreckingBalm | WreckingBalm | Tattoo, Piercing, Removal & Supplies |
| 9:39:41 PM | 00:30 | $ | HD Digital Radio Alliance | HD Digital Radio Alliance | Organizational Advertising |

| 3/21/2008 10:00:00 PM | | | | | |
|---|---|---|---|---|---|
| 10:29:22 PM | 00:30 | $ | Cavit | Palm Bay International, Inc. | Alcoholic Beverages |
| 10:29:52 PM | 00:29 | $ | Kohl's | Kohl's Corp. | Department Stores |
| 10:30:21 PM | 00:59 | $ | Verizon Wireless | Verizon Communications, Inc. | Wireless Carrier |
| | | | Greater NY Automobile | Greater NY Automobile | |

| | | | | | |
|---|---|---|---|---|---|
| 10:31:20 PM | 00:58 | $ | Dealers Assoc. | Dealers Assoc. | Trade Association |
| 10:32:20 PM | 00:28 | $ | U.S. Navy | U.S. Government | Government-Unions-Associations |
| 10:33:12 PM | 00:29 | $ | Trojan | Church & Dwight Co., Inc. | Toiletries, Hygienic Products, Skin Care |
| 10:33:47 PM | 00:30 | $ | HD Digital Radio Alliance | HD Digital Radio Alliance | Organizational Advertising |

This data was generated and printed on 3/21/2008 at 11:05:51 PM
235 spot instances

 **MEDIA MONITORS**

Media Monitors services are © Copyright 2002-2008 Media Monitors, LLC. All Rights Reserved.
Media Monitors, its logo, "The New Broadcast Monitoring" and "Newspaper Ad Tracking" are service marks of Media Monitors, LLC.
The Media Monitors broadcast content recognition process is protected by U.S. Patent 5,437,050.

# Exhibit C

### Market X-Ray Report for New York
### Media Advertiser History Report for DIFEO BMW AUTO DEALER
Industry:   AUTO DLRS/DLR GRPS/ MANUFACTURERS/RENTALS

| | | | Period | | | | | Year to Date | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Period | Radio | TV | News | Total | Radio % | Radio | TV | News | Total | Radio % |
| 01/03 | | | 10,519 | 10,519 | 0.0% | | | 10,519 | 10,519 | 0.0% |
| 02/03 | | | 39,176 | 39,176 | 0.0% | | | 49,695 | 49,695 | 0.0% |
| 03/03 | | | 64,647 | 64,647 | 0.0% | | | 114,342 | 114,342 | 0.0% |
| 04/03 | | | 91,161 | 91,161 | 0.0% | | | 205,503 | 205,503 | 0.0% |
| 05/03 | | | 99,168 | 99,168 | 0.0% | | | 304,671 | 304,671 | 0.0% |
| 06/03 | | | 85,743 | 85,743 | 0.0% | | | 390,414 | 390,414 | 0.0% |
| 07/03 | | | 192,551 | 192,551 | 0.0% | | | 582,965 | 582,965 | 0.0% |
| 08/03 | | | 185,407 | 185,407 | 0.0% | | | 768,372 | 768,372 | 0.0% |
| 09/03 | | | 97,256 | 97,256 | 0.0% | | | 865,628 | 865,628 | 0.0% |
| 10/03 | | | 120,645 | 120,645 | 0.0% | | | 986,273 | 986,273 | 0.0% |
| 11/03 | | | 102,220 | 102,220 | 0.0% | | | 1,088,493 | 1,088,493 | 0.0% |
| 12/03 | | | 144,499 | 144,499 | 0.0% | | | 1,232,992 | 1,232,992 | 0.0% |
| 02/04 | | | 75,887 | 75,887 | 0.0% | | | 75,887 | 75,887 | 0.0% |
| 03/04 | | | 42,279 | 42,279 | 0.0% | | | 118,166 | 118,166 | 0.0% |
| 04/04 | | | 42,279 | 42,279 | 0.0% | | | 160,445 | 160,445 | 0.0% |
| 05/04 | | | 90,852 | 90,852 | 0.0% | | | 251,297 | 251,297 | 0.0% |
| 06/04 | | | 121,136 | 121,136 | 0.0% | | | 372,433 | 372,433 | 0.0% |
| 07/04 | | | 42,878 | 42,878 | 0.0% | | | 415,311 | 415,311 | 0.0% |
| 08/04 | | | 25,187 | 25,187 | 0.0% | | | 440,498 | 440,498 | 0.0% |
| 09/04 | | | 35,381 | 35,381 | 0.0% | | | 475,879 | 475,879 | 0.0% |
| 10/04 | | | 35,381 | 35,381 | 0.0% | | | 511,260 | 511,260 | 0.0% |
| 11/04 | | | 35,381 | 35,381 | 0.0% | | | 546,641 | 546,641 | 0.0% |
| 12/04 | | | 17,690 | 17,690 | 0.0% | | | 564,331 | 564,331 | 0.0% |
| 01/05 | | | 17,690 | 17,690 | 0.0% | | | 17,690 | 17,690 | 0.0% |
| 02/05 | | | 35,381 | 35,381 | 0.0% | | | 53,071 | 53,071 | 0.0% |
| 03/05 | | | 0 | 0 | 0.0% | | | 53,071 | 53,071 | 0.0% |
| 04/05 | | | 0 | 0 | 0.0% | | | 53,071 | 53,071 | 0.0% |
| 05/05 | | | 0 | 0 | 0.0% | | | 53,071 | 53,071 | 0.0% |
| 06/05 | | | 0 | 0 | 0.0% | | | 53,071 | 53,071 | 0.0% |
| 07/05 | | | 0 | 0 | 0.0% | | | 53,071 | 53,071 | 0.0% |
| 08/05 | | | 54,684 | 54,684 | 0.0% | | | 107,755 | 107,755 | 0.0% |
| 09/05 | | | 72,912 | 72,912 | 0.0% | | | 180,667 | 180,667 | 0.0% |
| 10/05 | | | 91,140 | 91,140 | 0.0% | | | 271,807 | 271,807 | 0.0% |
| 11/05 | | | 72,912 | 72,912 | 0.0% | | | 344,719 | 344,719 | 0.0% |
| 12/05 | | | 72,912 | 72,912 | 0.0% | | | 417,631 | 417,631 | 0.0% |
| 01/06 | 23,010 | | 36,456 | 59,466 | 38.7% | 23,010 | | 36,456 | 59,466 | 38.7% |
| 02/06 | 14,490 | | 61,975 | 76,465 | 18.9% | 37,500 | | 98,431 | 135,931 | 27.6% |
| 03/06 | 19,920 | | 52,150 | 72,070 | 27.6% | 57,420 | | 150,581 | 208,001 | 27.6% |
| 04/06 | 26,765 | | 36,857 | 63,622 | 42.1% | 84,185 | | 187,438 | 271,623 | 31.0% |
| 05/06 | 20,701 | | 36,456 | 57,157 | 36.2% | 104,886 | | 223,894 | 328,780 | 31.9% |
| 06/06 | 20,221 | | 0 | 20,221 | 100.0% | 125,107 | | 223,894 | 349,001 | 35.8% |
| 07/06 | 874 | | 0 | 874 | 100.0% | 125,981 | | 223,894 | 349,875 | 36.0% |
| 08/06 | 12,589 | | 50,617 | 63,206 | 19.9% | 138,570 | | 274,511 | 413,081 | 33.5% |
| 09/06 | 25,090 | | 0 | 25,090 | 100.0% | 163,660 | | 274,511 | 438,171 | 37.4% |
| 10/06 | 36,110 | | 0 | 36,110 | 100.0% | 199,770 | | 274,511 | 474,281 | 42.1% |
| 11/06 | 50,325 | | 37,338 | 87,663 | 57.4% | 250,095 | | 311,849 | 561,944 | 44.5% |
| 12/06 | 32,950 | | 37,338 | 70,288 | 46.9% | 283,045 | | 349,187 | 632,232 | 44.8% |
| 01/07 | 3,900 | | | 3,900 | 100.0% | 3,900 | | | 3,900 | 100.0% |
| 02/07 | 8,675 | | | 8,675 | 100.0% | 12,575 | | | 12,575 | 100.0% |
| 03/07 | 39,475 | | 77,616 | 117,091 | 33.7% | 52,050 | | 77,616 | 129,666 | 40.1% |
| 04/07 | 33,900 | | 34,096 | 67,996 | 49.9% | 85,950 | | 111,712 | 197,662 | 43.5% |

**Market X-Ray Report for New York**
**Media Advertiser History Report for DIFEO BMW AUTO DEALER**
Industry:   AUTO DLRS/DLR GRPS/ MANUFACTURERS/RENTALS

| | Period | | | | | Year to Date | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Period | Radio | TV | News | Total | Radio % | Radio | TV | News | Total | Radio % |
| 05/07 | 23,375 | | 0 | 23,375 | 100.0% | 109,325 | | 111,711 | 221,036 | 49.5% |
| 06/07 | 24,380 | | 0 | 24,380 | 100.0% | 133,705 | | 111,711 | 245,416 | 54.5% |
| 07/07 | 24,355 | | 0 | 24,355 | 100.0% | 158,060 | | 111,711 | 269,771 | 58.6% |
| 08/07 | 6,450 | | 0 | 6,450 | 100.0% | 164,510 | | 111,711 | 276,221 | 59.6% |
| 09/07 | 0 | | 0 | 0 | 0.0% | 164,510 | | 111,711 | 276,221 | 59.6% |
| 10/07 | 13,500 | | 0 | 13,500 | 100.0% | 178,010 | | 111,711 | 289,721 | 61.4% |
| 11/07 | 31,250 | | 62,337 | 93,587 | 33.4% | 209,260 | | 174,048 | 383,308 | 54.6% |
| 12/07 | 0 | | 0 | 0 | 0.0% | 209,260 | | 174,048 | 383,308 | 54.6% |
| **TOTALS** | **$492,305** | | **2,738,190** | **3,230,495** | **15.2%** | | | | | |

# Exhibit D



## Products - Strategic Account Management



**Manage accounts**
**Create, route and approve proposals electronically**

# Sales Process Automation

VIERO RADIO FUSION™ CRM and sales automation organizes, manages and transforms data into knowledge your sales force can use. When used in conjunction with the other tools of the VIERO® solutions suite, VIERO RADIO FUSION CRM and sales automation is the smart, powerful solution to your CRM needs.

Beginning with a lead, your account executives create an e-proposal reflecting up-to-the-minute inventories and demand-reflective pricing. After totally electronic review and approval, the proposal - calculated to optimize the profit potential of all your avails - becomes an order. With final management approval the order is injected directly into VIERO RMS™ revenue management (T&B). And that's truly just the beginning of what VIERO RADIO FUSION CRM and sales automation can do for you.

> Prospect leads, manage contacts and maintain critical historical information on all of your accounts.
>
> AE efficiencies - easily see the entire sales cycle from the first contact to emails, appointments, proposals and orders; all activity is tied to client records for easy reporting and personalized selling.
>
> Integrates with Microsoft Exchange Server for Calendar, Contacts, Email, Tasks and Notes - navigation and layout utilize already-familiar concepts and techniques.
>
> Proposal features ratings information, up-to-date pricing and real time inventory from VIERO BEST RATE® rate and yield management, ensuring maximum value for your inventory.
>
> Paper is optional - VIERO RADIO FUSION CRM and sales automation transcends the standard, hard copy environment with its inherent inefficiencies like data entry errors and redundant work. You enhance visibility, streamline workflow and expedite the sales process.

Home - **About Us** - Solutions - Support - News - Sitemap
Terms of Use | © 2006 LAN International
info@lanint.com - 949-425-3322

**Stay informed and ahead...**
**click here sign up for LAN's free quarterly newsletter today!**



How to win the **battle**
to maximize revenue.

Home    About Us    Solutions    Support    News

VIERO BEST RATE®
RATE AND YIELD MANAGEMENT

## Solutions - Rate & Yield Management

Real-time
Yield Management
## Demand-driven Pricing

The VIERO BEST RATE® rate and yield management helps you manage station inventories quickly and efficiently. It provides sales managers and account executives with the information they need to make better daily, weekly, monthly, quarterly and annual pricing decisions.

VIERO BEST RATE rate and yield management measures the daily demand on inventory, and adjusts rates with a single objective: to maximize revenue. Utilizing data gathered from across your enterprise, VIERO BEST RATE rate and yield management is your tool for identifying trends and developing simulations to predict budget, sales rates and inventory.

It is the first enterprise network pacing and pricing tool, saving countless hours of manual calculations as your sales force works toward maximizing sales revenues. Best of all, it integrates transparently with the VIERO solutions suite.

VIERO BEST RATE rate and yield management travels across your WAN.

**With VIERO BEST RATE
rate and yield management you can:**

Adjust rates in realistic anticipation of market demand

Identify and leverage pockets of high demand, and adjust rates accordingly

Reduce risk of lost revenue by adjusting rates lower where amount of unsold inventory is high

Generate real-time rate cards

Reduce the number of bumped spots

Improve revenue through better inventory management

LAN International

accessing, processing and packaging information for six distinct organizational levels (executive management, senior management, regional management, market management, station management, and account executives).

VIERO BEST RATE rate and yield management searches its datamart for nightly downloads from the VIERO® revenue management solution. It then uses this data to generate current demand prices for unsold available inventory. These prices are maintained in a portion of the VIERO BEST RATE rate and yield management program referred to as a rate card. Rate cards display recommended spot pricing based on inventory usage, calculated daily and seasonal demand, and availability for a given station.

Page 3 of 4

LAN International



LAN International

Home - About Us - Solutions - Support - News - Sitemap
Terms of Use | © 2006 LAN International
info@lanint.com - 949-425-3322

**Stay informed and ahead...**
**click here sign up for LAN's free quarterly newsletter today!**

**TAPSCAN®**
Local market radio ratings software suite

Radio salespeople know TAPSCAN as the software that makes it easy to tell their station's story and generate more revenue. The intuitive design is easy to use and master—if your sellers can use a mouse, they will be able to use TAPSCAN from their very first day on the job.

The TAPSCAN Suite may include TAPSCAN, TrafficLink®, RETAIL SPENDING POWER[SM], MEDIAMASTER[SM] and pdfFactory®

Powered with exclusive Maximi$er®-level data, TAPSCAN gives you access to customized demos, geographies, dayparts and multibook averages. TAPSCAN gives you an edge by making almost every part of the sale easier, from the initial presentation all the way to the hand-off to traffic.

With TAPSCAN, you can:

- Demonstrate the sales potential of your audience with more than 80 categories of RETAIL SPENDING POWER qualitative information
- Show advertisers the number of listeners they can reach only through your station
- See what you—and your competition—can charge to hit a requested CPP
- Find out how many spots you need to run to reach a certain frequency, based on a demo and daypart
- Determine your reach and frequency by specific demo, daypart and spot level
- Demonstrate your power against newspapers, magazines, television, cable and outdoor
- Get proposals to clients faster with e-mail-friendly PDF output
- Streamline order approval and automate the transfer to your traffic system

**Data used in system:**
Arbitron Respondent-Level Radio Data, Arbitron Summary-Level Radio Data, Arbitron Black Radio Data, Arbitron Hispanic Radio Data, Eastlan Radio Data

Want more info? Contact your account manager now!

Maximi$er®, MEDIAMASTER[SM], RETAIL SPENDING POWER[SM] and TrafficLink® are marks of Arbitron Inc.
TAPSCAN® is a registered mark of TAPSCAN Inc., used under license.
pdfFactory® is a registered mark of FinePrint Software, LLC.
Last updated: 2.21.08

Radio Stations | Ad Agencies | Television Services | Portable People Meters
Online Radio | National Radio | Out-of-Home Companies
Custom Research | International | Arbitron Home
Privacy Statement | Patents | Trademarks | Contact

© 2008 Arbitron Inc. All Rights Reserved

# Exhibit E



Sunday, March 23, 2008

Google Search [Go] Search T



## Newsradio 790 AM WNIS



**WNIS 790AM**
**NEWSRADIO**

### Ask The Expert with CHristie Lynn Hodge
Saturday Morning Expert Show Host

*Listen for CHristie Saturday mornings on the Ask the Expert shows!*
*CHristie is also the Executive Producer for Macrini's Morning News Team.*

WNIS

Call: 757-627-7979 or toll free 888-226-7979

**CHristie Lynn Hodge [email]**



Born and raised in Williamsburg, Virginia. I have
enjoyed being a dj on other stations, but the
interaction with the "Buy, Sell, or Trade" and "Ask
The Expert" show listeners on the air has been
entertaining and fulfilling. I appreciate all of the
support from the listeners!



· **Main**
· **Schedule**
· **Announcers**
· **Ask The Expert**
· **Scrapbook**

· **Sports**
· **Local News**
· **Local Weather**
· **Crime Line**
· **Local Events**
· **VDOT Updates**
· **Military**
· **Adopt A Pet**
· **Movies**

· **Real Estate**
· **Health/Medical**
· **Legal Services**
· **Finance**
· **Home & Garden**

· **Contest Rules**
· **Advertise**
· **Contact**

### On This Week's Expert Shows with CHristie Lynn Hodge

Listen to the **Bales Pest Control** Ask the Expert Show on Saturday
February 9th at 10am.

Bales in-Bugs out!!!!!:):):).

Listen to the **Precision Spinal Care** Ask the Expert Show on
Saturday February 9th at 8am.

Stop Living in Pain and Start Living!!:):):) Listen to Dr. Dave
Packer!!!! Learn about NUCCA.

### Ask The Expert with Pasquale Giovani
Saturday Morning Expert Show Host

*Pasquale Giovani along with business leaders in Hampton Roads take*
*your calls weeknights on Ask The Expert.*

Call· 757-627-7979 or toll free 888-226-7979





**Progr**
Find inf
progra
**Local**
See our
team and

**Loc**
Check
site's
submitte

Chec
sched
Virginia
and Nas
**Ad**
See
informa
local she
a
I
Military





**Pasquale Giovani [email]**





Accomplished host/interviewer and Navy veteran, Pasquale Giovani has been hosting and producing talk shows for over ten years. In addition, he interviews and interacts with a variety of CEOs, politicos, and people on the go. A Farm Fresh President's Award recipient, who excels in consumer issues and community news and interests, he works with diverse charitable boards and marketing groups. Pasquale also has a (Class A) Commercial Driver's License Professional; which he earned by graduating from Advanced Technology Institute. Listen for Pasquale during the weeknight and Saturday morning Ask the Expert shows, and on The Restaurant Show with Monroe Duncan.

## On This Week's Expert Shows with Pasquale Giovani



Listen to the **DOLLARS and COMMON SENSE** Ask the Expert Show on Saturday March 22, 9-10a.

Pasquale talks with Dan Bunting (President and CFP) from Bunting Capital Management. The discussion will be ANOTHER indispensable hour of financial-talk. Dan will be focusing on the 'Fiduciary responsibility" of financial planners, and what YOU should be aware of, and always be looking for..

Bunting Capital Management office: 456-2200

 

## Expert Schedule

Click a month to view the schedule (requires Adobe's free PDF viewer).

**2008 Expert Schedules**
JAN | FEB | MAR

## Contact Expert Show Guests

- Visit the Equity for Life **website** or call Steve Burton at (757)424-8901 ext 303.
- **Paul "Crunchman" Clemons (email** or call 1-866-8CRUNCH, 1-866-827-8624)

- **"Business Success Forum" with Michael Parris & Assoc.**
  **(Email Michael Parris & Assoc.)**
- **Bales Pest Control** (**Email Bales Pest Control**)
- **Mechanical Service Company**
- **Ask the Man From Trane**
- **"Dollars And Common Sense" Bunting Capital Management**
  **(Email Dan Bunting)**

**Looking for 850 AM WTAR Ask The Expert Show info? click here**

**Sinclair Communications**



Thanks for listening to AM790 WNIS. Watch

·ABC News  ·NYSE  ·Dow Jones  ·NASDAQ  ·Yellow Pages/White Pages  ·CNET  ·refdesk.com
·National Do Not Call Registry  ·Internet Movie Database  ·Fun Facts  ·Horoscopes




© 2008 Sinclair Communications. Sinclair Communications is an Equal Opportunity Employer [View Jobs]
Original Design Creation By Tina George.

kmbz.com



Brought to you by The Voice
Kansas City 980 KMBZ

Ask An Expert is brought to you by the fine people at KMBZ, Entercom Broadcasting, Gary Tipton and Associates and KC Waterproofing

All of our experts are locally recognized leaders in their fields. Please understand that if you have a serious issue you should consult someone in person and that Askanexpertkc.com, Entercom Broadcating, KMBZ and all of our experts and affiliates can not be held responsible for any advice given on this web site.

Brought to you by



## Mens Health

Click here to submit a question.

•Mark from Belton wants to know what he can do to prevent a heart attack...Listen to Dr. Troy Burns answer Marks question here.

•Zach from Shawnee wants to know how to figure a reasonable goal for his weight...Listen to Dr. Troy Burns answer here.

•Jay from KC wants to know the best way to lose weight. Listen to Dr. Troy Burns answer here.

Brought to you by



## Insurance

Click here to submit a question.

•Windsheild repair question?...Listen to Gary's answer here.

•Rental Car insurance questions...Listen to Gary's answer here.

•Bob from Lee's Summit is seeking advice on keeping his teenage driver safe. Listen to Gary's answer here.

•Kent from Shawnee wants to know about uninsured motorist coverage
Listen to Gary Tipton and Associates answer Kent's question here.

•Ron from Blue Springs wants to know if he has to carry

homeowners insurance.
Listen to Gary Tipton and Associates answer Ron's question here.

•Dennis from DeSoto wants to know if all homeowners polices are alike.
Listen to Gary Tipton and Associates answer Dennis' question here.

•Jason from Overland Park wants to know if he can drive legally without insurance.
Listen to Gary Tipton and Associates answer Doug's question here.

•Doug from Parkville wants to know about the least expensive cars to insure.
Listen to Gary Tipton and Associates answer Doug's question here.

•Joey from Overland Park wants to know if his credit rating effects his insurance rates.

Listen to Gary Tipton and Associates answer Joey's question here.

•Janelle from Kansas City, Missouri wants to know who's responsible for falling tree branches.
Listen to Gary Tipton and Associates answer Janelle's question here

Click here to watch the experts answer.



## +Waterproofing your house, brought to you by Don Derry and KC Waterproofing

Click here to submit a question.

•Sheila from Grain Valley needs a contractor and wants to know what qualifications to ask for. Listen to experts answer here.

•Mike from Lee's Summit wants to know how the energy saving features of his new house are helping his indoor air. Listen to experts answer here.

•With the recent rains, Ellen from Brookside has noticed water in her basement. She wants to know if this could be causing other issues. Listen to experts answer here.

•David from North Kansas City wants to know why mold can be such a problem. Listen to experts answer here.

•With the recent ice and snow, Steve from Independence has noticed some water coming in through the foundation and wants to know what's causing this and what he can do. Listen to experts answer here.

•Mary Jo from Leawood is about to shop for a new home but wants to know to tell if the homes she's looking at have foundation problems. Listen to experts answer here.

•Jim from Overland Park wants to know what to do to prevent foundation problems in his hom.. Listen to experts answer here.

•Mark from Blue Springs has noticed mold in the basement of his new home and wonders if this is a problem. Listen to experts answer here.

•Steve from Independence has recently noticed water coming in from the foundation and he's not sure what to do. Listen to experts answer here.

•Joyce from Kansas City asks about cracks in her brick and trouble closing her door. Listen to experts answer here.



**BORDNER**

**R O O F I N G**

A Subsidiary of Bordner Installation Group, Inc.

### +Home Improvement Questions Brought To You By Bordner

Click here to submit a question.

Tiffany from Lenexa is worried that her roof has hail damage and that the roofing repair industry is unstable.. Listen to Charlie Fleenor's answer.here.

Susan from Gardner wants to know if she shoud get new windows or just a a new door. Listen to Charlie Fleenor's answer.here.

Bernice from Overland Park says her siding is cracked and fading and wants to know about newer siding. Listen to Charlie's answer.here.

Dan from Leawood is tired of paying insurance premiums for a wood roof and wants to know what his options are.here.

Jenny from KC is concerned about a contractor pressuring her. Listen to Charlie's answer.here.

Brought to you by KMBZ and Entercom Broadcasting
Copyright© 2007, Entercom Broadcasting

# Exhibit 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Capstar Radio Operating Company, a Delaware :
Corporation, :
                         :
     Plaintiff, :
                         :
v. : No. 08 CV 2976 (LAK)
                         :
Anthony Campbell; Louis Carpino; Adam Gross; : **DECLARATION OF**
Jose Luis Torres; Citadel Broadcasting Corporation, : **LOUIS CARPINO**
a Nevada Corporation; and John Does 1-10, :
                         :
     Defendants. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

*Louis Carpino declares:*

1. I am a defendant in this case. I submit this declaration upon personal knowledge, in opposition to the motion by plaintiff Capstar Radio Operating Company, a subsidiary of Clear Channel Communications (together "Clear Channel") for an injunction that would prevent me from working for the next six months.

2. I am a New York radio advertising salesman. I am 26 years old. I was employed as an advertising salesperson with Clear Channel radio station WLTW-FM (Lite FM) from March 20, 2006 to March 5, 2008, as part of that station's local sales team. Before that, from November 2004 to March 2006, I worked in local sales at radio station 1010 WINS, owned by CBS Radio, where I worked with Jonathan Mason. I still consider Jonathan Mason to be a mentor and friend. Before I worked for 1010 WINS I worked at an advertising agency called WPI and at Countrywide Financial (as a loan officer).

3. On March 5, 2008, I went to work for New York Assets LLC, which is an indirect, wholly-owned subsidiary of Citadel Broadcasting Corporation. My job is in ad sales for WABC-AM ("WABC"), a New York talk radio station.

4.  I have reviewed the declaration of my colleague Anthony Campbell, and I agree with it and adopt it in the following respects:  My experience of wanting to work with Jonathan Mason again was basically the same as Anthony's, as described in his declaration.  I agree with his characterization of the differences between WABC and WKTU.  WLTW also follows a totally different format and targets a different demographic than WABC.  The experience Anthony describes with regard to the Clear Channel non-compete agreement was the same experience I had.  Anthony's statements about how easy it is to find customer and contact information are accurate.  I also agree with his statements about Clear Channel's computer software and training programs.  Like Anthony, I have not closed any ad sales since joining WABC.  I agree with Anthony that "Ask the Expert" is not a concept unique to Clear Channel.  I also did not bring any Clear Channel "Ask the Expert" materials with me to WABC and have no personal knowledge of anybody at WABC using these materials.

5.  When I started my current job, WABC told me not to bring any Clear Channel materials with me.  I took this to mean not to bring any materials containing Clear Channel trade secrets.  I did bring my contacts list.  Throughout my time at WLTW, I saved to a flash drive some pitch presentations I had created while at 1010 WINS and at WLTW.  I had done this for the purpose of working from home, and I last updated the flash drive well before I left WLTW.  Other than my contacts list, I am turning over to counsel all copies of any materials from Clear Channel.  Even though I have had these presentation materials, I have not accessed or used them in connection with my employment at WABC.

6.  I had about 20 clients who had active accounts at WLTW at the time I left the station.  So far I have made contact with the following former clients from Clear Channel on behalf of WABC: Dello Russo (the contact from which I knew before joining WLTW, when I worked for

the WPI advertising agency), Bella Vita foods, Pepsi and New Balance of Northern New Jersey. I have contacted Touro College only to let them know that I had left WLTW, and I invited a former Clear Channel contact and friend from the Hill Holiday ad agency to a party of mine.

7.  The event referred to in Complaint ¶ 86 was a fundraising event thrown by Rienzi Foods, a Clear Channel account. I have not approached Rienzi about becoming a client of WABC's. Rather, Mike Rienzi contacted me to ask whether I would attend the fundraiser and whether I could bring several of my friends to the event. Rienzi was concerned that the event would be too sparsely attended. As he says in his declaration, Bernhard Weiss, my former boss at WLTW, did ask me not to attend this event, but as it was not a Clear Channel function, not a business-related function in any event, and I was attending solely as a personal favor to someone I had become friends with, I considered it appropriate that I attend.

8.  Plaintiff's complaint at ¶ 85 is inaccurate. A few days ago, a man named Mark Brown who works in WABC's office building, for Kick the Habit (an anti-smoking company), visited WABC's offices, as I understand he often does. Being new to WABC and being that the man was in WABC's offices, I assumed that he was a WABC employee as well. After I introduced myself and said that I had come from WLTW, he asked whether I knew Leon Bart-Williams, who is a friend of mine at WLTW and the person who serviced this man's account there. After I said I knew Leon, the man suggested that we call Leon to joke around, which we did. There was nothing business-related about the call, he's already a client of WABC's, and contrary to what is stated in Complaint ¶ 85, we called from WABC's offices, not the man's offices.

9.  Paragraph 6 of Leon Bart-Williams' Declaration is also factually inaccurate. I learned that Leon was going to have a meeting with Bella Vita (a client of mine when I was at

-3-

Clear Channel) because a week or two ago we spoke and he asked me, since he was new to the account, for details on the Bella Vita account and then told me he was meeting with them in a few days. Other Clear Channel employees have similarly called me for detailed information on the accounts that they took on following my departure.

10. While I was at WLTW, my boss, Bernhard Weiss, actively encouraged me to target former 1010 WINS accounts and expected that I do so, without regard to whether I was under a non-compete or whether CBS Radio would regard those customers as proprietary to it. For example, I was told by Weiss, as one of my first tasks at WLTW, to solicit my former 1010 WINS account United Credit Adjusters.

11. An order that would prevent me from working in radio or television in New York for 180 days would be personally devastating to me, and unfair given that I was not given any severance by Clear Channel to take me through such a period of unemployment. I also agree with Anthony Campbell that the 180-day ban is unreasonable, because my old station WLTW does not compete for listeners with WABC, and because at my new job at WABC I will not be using anything proprietary to Clear Channel.


I declare under the penalty of perjury that the foregoing is true and correct.

Executed on March 24, 2008 in New York, New York.

                                              Lou Carpino

# Exhibit 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Capstar Radio Operating Company, a Delaware         :
Corporation,                                        :
                                                    :
            Plaintiff,                              :
                                                    :
      v.                                            :    No. 08 CV 2976 (LAK)
                                                    :
Anthony Campbell; Louis Carpino; Adam Gross;        :    **DECLARATION OF**
Jose Luis Torres; Citadel Broadcasting Corporation, :    **ADAM GROSS**
a Nevada Corporation; and John Does 1-10,           :
                                                    :
            Defendants.                             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Adam Gross declares:

1. I am a defendant in this case. I submit this declaration upon personal knowledge, in opposition to the motion by plaintiff Capstar Radio Operating Company, a subsidiary of Clear Channel Communications (together "Clear Channel") for an injunction that would prevent me from working for the next six months.

2. I am a New York radio advertising salesman. I am 22 years old. My first job after graduating University of Michigan in 2007 was with Clear Channel. I sold New York local advertising for WKTU-FM, a New York urban contemporary station, from July 9, 2007 to March 5, 2008. Jonathan Mason, then the local sales manager for WKTU, recruited me straight out of college. I consider Jonathan to be a mentor and friend.

3. On March 17, 2008, I went to work for New York Assets LLC, which is an indirect, wholly-owned subsidiary of Citadel Broadcasting Corporation. My job is in ad sales for WABC-AM ("WABC"), a New York talk radio station.

4. I have reviewed the declaration of my colleague Anthony Campbell, and I agree with it and adopt it in the following respects: My experience of wanting to work with Jonathan

Mason again was basically the same as Anthony's, as described in his declaration. I agree with his characterization of the differences between WABC and WKTU contained in his declaration. The experience Anthony describes in his declaration with regard to the non-compete agreement was the same experience I had. Anthony's statements about how easy it is to find customer and contact information are accurate. I also agree with his statements about Clear Channel's computer software and training programs. Like Anthony, I have not closed any ad sales since joining WABC. I agree with Anthony that "Ask the Expert" is not a concept unique to Clear Channel. I also did not bring any Clear Channel "Ask the Expert" materials with me to WABC and have no personal knowledge of anybody at WABC using these materials.

5. When I started my current job, WABC told me not to bring any Clear Channel materials with me. I took this to mean that I should not bring any Clear Channel training materials, station information or rate information with me. The only thing I took with me was contact information for a few accounts I had dealt with at WKTU.

6. I had about six clients who had active accounts with WKTU at the time that I left the station. So far I have made contact with only one of these on behalf of WABC: Long Island University. I have contacted my old Clear Channel accounts of NAC Marketing, and Target and Response, but only to tell them that I'd left Clear Channel and their new representative would contact them.

7. An order that would prevent me from working in radio or television in New York for 180 days would be personally devastating to me, and unfair given that I was not given any severance by Clear Channel to take me through such a period of unemployment. I also agree with Anthony Campbell that the 180-day ban is unreasonable because my old station WKTU

does not compete for listeners with WABC, and because at my new job at WABC I will not be using anything proprietary to Clear Channel.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on March 24, 2008 in New York, New York:

Adam Gross

# Exhibit 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------ x

Capstar Radio Operating Company, a Delaware   :
Corporation,                                   :
                                               :
                    Plaintiff,                 :
                                               :
        v.                                     :    No. 08 CV 2976 (LAK)
                                               :
Anthony Campbell; Louis Carpino; Adam Gross;   :
Jose Luis Torres; Citadel Broadcasting Corporation, :
a Nevada Corporation; and John Does 1-10,      :    **DECLARATION OF**
                                               :    **JOSE LUIS TORRES**
                    Defendants.                :
                                               :

------------------------------ x

Jose Luis Torres hereby declares as follows:

    1.    I am a defendant in this case. I submit this declaration upon personal knowledge, in opposition to the motion for a preliminary injunction by plaintiff Capstar Radio Operating Company, a subsidiary of Clear Channel Communications (together "Clear Channel"), for an injunction that would prevent me from working for the next six months.

    2.    I am a New York radio advertising salesman. I am 30 years old. My first job in the field was for Clear Channel at WKTU-FM ("WKTU"), a rhythmic adult contemporary station. I sold local New York advertising for WKTU from July 9, 2007 until March 5, 2008. I wanted to work in the field so I sent my resume and cover letter to many stations, including WKTU. Jonathan Mason, the then-local sales manager for WKTU, hired me for the position. I consider Jonathan a mentor and friend.

    3.    On March 5, 2008, I went to work in local sales for WABC-AM ("WABC"), a New York talk radio station owned by NY Radio Assets, LLC, a Delaware entity which is an indirect wholly-owned subsidiary of Citadel Broadcasting. I left for Citadel because I wanted to

work at a station that covered local and national politics and I also wanted to work again for

Jonathan Mason, who had just started working at Citadel. I understand that between the time

that Jonathan left Clear Channel and the time he started at Citadel, Jonathan was in a "non-

solicit" period during which he could not ask or encourage me to come to WABC. He did not do

so. I voluntarily expressed interest in joining him, and he told me I would have to talk to other

people at WABC.

     4.     I have reviewed the declaration of my colleague Anthony Campbell, and I agree

with it and adopt it in the following respects: My experience of wanting to work with Jonathan

Mason again was basically the same as Anthony's, as described in his declaration. I agree with

his characterization of the differences between WABC and WKTU contained in his declaration.

The experience Anthony describes in his declaration with regard to the non-compete agreement

was the same experience I had. Anthony's statements about how easy it is to find customer and

contact information are accurate. I also agree with his statements about Clear Channel's

computer software and training programs. Like Anthony, I have not closed any ad sales since

joining WABC. I also did not bring any Clear Channel "Ask the Expert" materials with me to

WABC and have no personal knowledge of anybody at WABC using these materials.

     5.     When I started my current job, WABC told me not to bring any Clear Channel

materials with me. I have in my possession three electronic files belonging to Clear Channel that

I emailed to my personal email account before I left WKTU. I have not used any of these

materials in connection with my employment with WABC or for any other purpose. I have

provided copies of these documents to counsel and I will not consult or otherwise access the

documents. When I am given permission, I will delete the files from my personal email account.

6.    I had about 5 clients who had active accounts with WKTU at the time that I left the station. So far I have made contact with only one of these on behalf of WABC: Gothic Cabinet Craft. I have reached out to my contact from the Vermont Teddy Bear Company, but I did not contact this person for the purpose of obtaining business for WABC. The Vermont Teddy Bear Company is already a client of WABC and another account executive handles their business.

7.    An order that would prevent me from working in radio or television in New York for 180 days would be personally devastating to me, and unfair given that I was not given any severance by Clear Channel to take me through such a period of unemployment. I also agree with Anthony Campbell that the 180-day ban is unreasonable because my old station WKTU does not compete for listeners with WABC, and because at my new job at WABC I will not be using anything proprietary to Clear Channel.


I declare under the penalty of perjury that the foregoing is true and correct.

Executed on March 24, 2008 in New York, **New York:**

_____

Jose Luis Torres

# Exhibit 9

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, DC 20549

# FORM 10-K

(Mark One)

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the fiscal year ended December 31, 2007

OR

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

Commission file number: 001-31740

# CITADEL BROADCASTING CORPORATION
(Exact name of registrant as specified in its charter)

| | |
|---|---|
| **Delaware** | **51-0405729** |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

**City Center West, Suite 400**
**7201 West Lake Mead Blvd.**
**Las Vegas, Nevada 89128**
(Address of principal executive offices and zip code)

**(702) 804-5200**
(Registrant's telephone number, including area code)

**SECURITIES REGISTERED PURSUANT TO SECTION 12(b) OF THE ACT:**

| Title of Each Class | Name of Each Exchange on Which Registered |
|---|---|
| Common stock, par value $0.01 per share | New York Stock Exchange |

**SECURITIES REGISTERED PURSUANT TO SECTION 12(g) OF THE ACT:**
**NONE**

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.   Yes ☐   No ☒

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.   Yes ☐   No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   Yes ☒   No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendments to this Form 10-K. ☒

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Exchange Act. (Check One):

Large accelerated filer ☒          Accelerated filer ☐          Non-accelerated filer ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).   Yes ☐   No ☒

The aggregate market value of the voting and nonvoting common equity held by nonaffiliates of the registrant on June 30, 2007, based upon the closing price of the common stock, was $1.2 billion.

As of February 22, 2008, there were 264,483,835 shares of common stock, $.01 par value per share, outstanding.

**DOCUMENTS INCORPORATED BY REFERENCE**

Portions of the Proxy Statement for the 2008 Annual Meeting of Stockholders are incorporated by reference into Part III.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Capstar Radio Operating Company, a Delaware    :
Corporation,    :
   :
          Plaintiff,    :
   :
      v.    :    No. 08 CV 2976 (LAK)
   :
Anthony Campbell; Louis Carpino; Adam Gross;   : **CERTIFICATE OF**
Jose Luis Torres; Citadel Broadcasting Corporation, : **<u>SERVICE</u>**
a Nevada Corporation; and John Does 1-10,    :
   :
         Defendants.    :
   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      The undersigned, an employee of Debevoise & Plimpton LLP, counsel for defendants,

certifies: On the 24th day of March 2008, I caused the within Memorandum of Defendants in

Opposition To Motion For Temporary Restraining Order and Declaration of Jeremy Feigelson to

be served by hand on counsel for plaintiff, L. Lynnette Sarno, Esq., Seyfarth Shaw LLP, 620

Eighth Avenue, New York, New York 10018.

Dated:  New York, New York
       March 24, 2008

                           <u>/s/ Benjamin Sirota</u>

                           Benjamin Sirota