UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Capstar Radio Operating Company, a Delaware
Corporation,

          Plaintiff,

    v.

Anthony Campbell; Louis Carpino; Adam Gross;
Jose Luis Torres; Citadel Broadcasting Corporation,
a Nevada Corporation; and John Does 1-10,

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Case No. 08-CV- 2976 (LAK)

## DECLARATION OF L. LYNNETTE SARNO, ESQ.

L. LYNNETTE SARNO, ESQ., being duly sworn, declares under penalty of

perjury:

1.    I am a member of the Bar of the State of New York and a partner in the

firm of Seyfarth Shaw LLP, attorneys for Plaintiff Capstar Radio Operating Company

("Capstar" or "Plaintiff") in the above-captioned case. This Declaration is submitted in

support of Plaintiff's motion for an order accepting Plaintiff's notice of voluntary

withdrawal without prejudice pursuant to Rule 41(a)(1)(A) of the Federal Rules of Civil

Procedure.

2.    Capstar commenced this action by filing a complaint on March 21, 2008.

Concurrently, Capstar sought to obtain a temporary restraining order against Anthony

Campbell, Louis Carpino, Adam Gross, Jose Luis Torres (collectively "Individual

Defendants") and Citadel Broadcasting Corporation enjoining them from among, other

things, soliciting Capstar's clients, using Capstar's trade secrets and conspiring to

misappropriate and misuse Capstar's confidential information. A copy of the Complaint filed in this action is attached hereto as Exhibit A.

3.    Capstar filed this action before this Court based upon diversity of citizenship. Capstar is a Delaware Corporation.

4.    Although the intended corporate Defendant, at the time of filing, was Citadel Broadcasting Company, a Nevada Corporation, Plaintiff inadvertently named Citadel Broadcasting Corporation.

5.    All of the Individual Defendants are residents of New York.

6.    Based upon the information available at the time of filing, I believed in good faith that this Court would have jurisdiction over each Defendant based upon diversity of citizenship.

7.    On March 24, 2008, a hearing was held before the Court on the issue of Plaintiff's application for a temporary restraining order ("TRO"). The Court denied Plaintiff's application for a TRO and ordered the parties to engage in expedited discovery.

8.    In opposition to Plaintiff's application for a TRO, Defendants claimed that the Court lacked jurisdiction over the named corporate Defendant, Citadel Broadcasting Corporation, because it is also a Delaware Corporation.

9.    Thereafter, I was advised by Defendant's counsel, Jeremy Feigelson, that the proper corporate entity – the entity which employs the Individual Defendants – is New York Radio Assets LLC, also a Delaware Corporation.

10.     The Court cannot exercise diversity jurisdiction over New York Radio Assets LLC or Citadel Broadcasting Corporation, the named corporate Defendant, because they are both Delaware corporations.

11.     On March 25, 2008, after learning from Defendant's counsel that New York Radio Assets LLC was the proper Defendant, I filed a notice of voluntary withdrawal without prejudice through the Court's electronic filing system (ECF).

12.     A copy of Plaintiff's notice of voluntary withdrawal without prejudice is annexed hereto as Exhibit B and a copy of the docket in this action which reflects Plaintiff's March 25, 2008 filing is annexed hereto as Exhibit C.

13.     Plaintiff also served a copy of the notice upon counsel for Defendants via facsimile on March 25, 2008.  A copy of the facsimile confirmation sheet to Jeremy Feigelson confirming the transmittal of Plaintiff's notice of voluntary withdrawal without prejudice is annexed hereto as Exhibit D.

14.     The following day, March 26, 2008, I checked the Court's docket and learned that Plaintiff's notice of voluntary withdrawal was rejected.  The Court docket indicates, "Filing Error – Electronic Filing for Non-ECF Document."

15.     My office immediately contacted the Clerk's office for Orders and Judgments, Southern District of New York.  We were advised that the electronic filing was rejected because voluntary dismissals, even those filed pursuant to Rule 41(a)(1)(A), required prior approval by the Court.

16.     In response, my office immediately submitted the notice of voluntary withdrawal to the Clerk of the Court for Orders and Judgments.

17.    Thereafter, on March 26, 2008, I learned that Individual Defendants filed its Answer *after* Plaintiff attempted to file its notice of voluntary withdrawal.

18.    Later that day, I also received a copy of the answer by overnight delivery. The postmark on the envelope indicated that it was served upon Plaintiff on or about 11:45 p.m. on March 25, 2008, which was well after Plaintiff's filing of its ECF notice of voluntary withdrawal. Annexed hereto as Exhibit E is a copy of the envelope that contained Defendant's answer.

I declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct.

Executed on April 21, 2008

L. Lynnette Sarno (LS-2421)

# EXHIBIT A

L. Lynnette Sarno, Esq. (LS-2421)
Gloria Galant, Esq. (GG-2818)
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
(212) 218-5500

Attorneys for Plaintiff
Capstar Radio Operating Company



MAR 2 1 2008
U.S.D.C. S.D. N.Y.
CASHIERS

JUDGE KAPLAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

Capstar Radio Operating Company, a Delaware
Corporation,

                Plaintiff,

    v.

Anthony Campbell; Louis Carpino; Adam Gross;
Jose Luis Torres; Citadel Broadcasting Corporation,
a Nevada Corporation; and John Does 1-10,

                Defendants.

------------------------------------------------------------x

**08 CV 2976**

**COMPLAINT**

:
:
:
:
:
:
:
:
:
:
:
:
:

Plaintiff Capstar Radio Operating Company, a Delaware Corporation, and indirect

subsidiary of Clear Channel Communications Inc., a Texas Corporation, ("Clear Channel" or

"Plaintiff"), by and through its attorneys, Seyfarth Shaw LLP, complaining of Defendants

Anthony Campbell ("Campbell"), Louis Carpino ("Carpino"), Adam Gross ("Gross"), Jose Luis

Torres ("Torres") (together, "Individual Defendants"), John Does 1-10, and Citadel Broadcasting

Corporation, a Nevada Corporation ("Citadel") (collectively with Individual Defendants, the

"Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.     This is an action for a temporary restraining order, preliminary injunction,

permanent injunction, and damages arising from, among other things:

- Individual Defendants' breach of their Confidentiality, Trade Secrets and Non-Compete Agreements ("Non-Compete Agreements") with Clear Channel, which expressly prohibits them from competing within a limited geographic area and time period;

- Defendants' unlawful misappropriation of Clear Channel's confidential, proprietary and trade secret information, including client and proprietary business information;

- Individual Defendants' breach of their fiduciary duty and duty of loyalty to Clear Channel when they exploited Clear Channel's confidential, proprietary, and trade secret information with the intent to use such information for their benefit;

- Defendant Citadel's engagement in unfair competition with Clear Channel by virtue of Individual Defendants' becoming employed by Citadel in the sale of radio advertising;

- Defendants' misuse and misappropriation of Clear Channel's confidential and proprietary client and business information for their benefit; and

- Citadel's tortious inducement of Individual Defendants to breach their written agreements with, and common law duties to Clear Channel.

2.     Each Non-Compete Agreement of the Individual Defendants with Clear Channel

expressly forbids each of them from, among other things, using or disclosing Clear Channel's

trade secrets and confidential business information, the unauthorized use of Clear Channel's

name, and from joining Citadel a direct competitor of Clear Channel in the radio broadcasting

industry within the New York City area for a period of one hundred and eighty (180) days from

their termination of employment with Clear Channel. Nevertheless, as set out in more detail

below, on March 5, 2008, each of the Individual Defendants voluntarily terminated their

employment with Clear Channel and immediately commenced employment with Citadel.

2

3.    Since the Individual Defendants' departure, Clear Channel has learned that a Citadel station has boldly taken a Clear Channel sales program, which has been in use for approximately a year, and adopted it for its own use.

4.    In addition, upon information and belief, Individual Defendants have since been actively contacting and/or soliciting clients of Clear Channel, with whom they were working while employed by Clear Channel in an attempt to divert business to Citadel.

## THE PARTIES

5.    Plaintiff Capstar Radio Operating Company's corporate headquarters and principal place of business are located in the State of Texas. Capstar Radio Operating Company is authorized to do business in the State of New York and operates seven radio stations in New York, including WKTU and WLTW.

6.    Capstar Radio Operating Company is an indirect subsidiary of Clear Channel Communications, Inc., a Texas Corporation ("Clear Channel"). Clear Channel, through various subsidiaries, such as Capstar Radio Operating Company, provides entertainment, information products, and services to communities and effective solutions to advertisers in those communities.

7.    Clear Channel's and its subsidiaries' assets include radio stations and outdoor advertising formats, such as signs and billboards, through which it sells advertising time and access to its customer base.

8.    Upon information and belief, Campbell is a citizen of the State of New York residing at 9 Norwood Road, Yonkers, New York 10710.

9.    Campbell was previously employed with Clear Channel as an Account Executive for WKTU in New York, New York prior to his voluntary resignation on March 5, 2008.

3

10.    Upon information and belief, Gross is a citizen of the State of New York residing at 369-371 First Avenue, Apt. 4B, New York, New York 10010.

11.    Gross was previously employed with Clear Channel as an Account Executive for WKTU in New York, New York prior to his voluntary resignation on March 5, 2008.

12.    Upon information and belief, Carpino is a citizen of the State of New York residing at 2155 34th Avenue, Apt. 4-A, Long Island City, New York 11106.

13.    Carpino was previously employed with Clear Channel as an Account Executive for WLTU in New York, New York prior to his voluntary resignation on March 5, 2008.

14.    Upon information and belief Torres is a citizen of the State of New York residing at 221 W. 28th Street Apt. 3FW, New York, New York 10001.

15.    Torres was previously employed with Clear Channel as an Account Executive for WKTU in New York, New York prior to his voluntary resignation on March 5, 2008.

16.    Citadel is a Nevada Corporation which, upon information and belief, is authorized to do business in New York. Citadel owns and operates WABC, a radio station with offices located at 2 Penn Plaza, 17th Floor, New York, New York 10121. Upon information and belief, Citadel also provides entertainment, information products, and services to communities in the radio industry.

17.    Citadel operates businesses which compete directly with Clear Channel.

18.    Defendants John Does 1 through 10 are unidentified individuals who have aided and abetted in Defendants' misappropriation of Citadel's trade secrets, unlawful solicitation of clients, and/or other tortious conduct, or acted in concert therewith.

4

## JURISDICTION AND VENUE

19.    The Court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, since there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

20.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because the Defendants reside or do business within this District and a substantial part of the events giving rise to the claims occurred in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

**Clear Channel's Business**

21.    Clear Channel provides entertainment, information products, and services to communities and effective solutions to advertisers in those communities.

22.    Clear Channel's assets include radio stations and outdoor advertising formats, such as signs and billboards, through which it sells advertising time and access to its customer base.

23.    Clear Channel has seven radio stations located in New York, New York.

24.    Clear Channel's parent's Premiere Radio Networks unit syndicates more than 70 programs to more than 5,000 radio affiliates, including Rush Limbaugh, Dr. Laura, Jim Rome and Carson Daly.

**Clear Channel's Confidential and Proprietary Information**

25.    Clear Channel has invested substantial time and money gathering and developing confidential and proprietary information concerning its markets, services, clients, and its clients' customer base.

26.    Because of its vast presence in radio and outdoor advertising, Clear Channel's confidential and other proprietary information is unique and sets it apart from its competitors in the marketplace.

27.    The competitive nature of the radio, television, and advertising industry is such that Clear Channel greatly depends on maintaining and preserving its confidential information and trade secrets to maintain its competitive edge.

28.    Clear Channel's confidential and proprietary information currently includes proprietary software systems called Radio Fusion and Best Rate, and, until November 2007, Tapscan.

- Radio Fusion

29.    Radio Fusion is a program that manages and schedules all advertising for various radio stations by date, time, and listener base for up to a year.

30.    Radio Fusion contains information used by Clear Channel's Account Executives to create effective, market-based proposals targeting specific clients.

31.    Such analysis includes client identity and contact information, historical purchases made by clients, products, benefits, pricing, advertising/marketing schedules, event sponsorships, promotional events, and television campaigns for the near future.

32.    Radio Fusion provides detailed client profiles based upon historical data that defines the relationship between Clear Channel and its specific client base.

- Best Rate

33.    Best Rate is a software program incorporated into Radio Fusion.

34.    Best Rate employs an algorithm to create a pricing system used by Clear Channel to sell advertising to its clients on the various radio stations it owns.

6

35.    Best Rate incorporates historical information including, but not limited to, costs, product development, date and time of day, time slot and amount of time, historical data, and forecasting.

36.    This software system not only determines the rates that should be charged, it alerts personnel to sales that are outside the desired parameters or when actual sales are not aligned with sales targets.

37.    Clear Channels' pricing strategy information is extremely valuable and directly effects its competitive position in the marketplace.

- Tapscan

38.    Tapscan was a scheduling program, utilized by Clear Channel until November 2007, when it was replaced by Radio Fusion.

39.    Through Tapscan, Clear Channel's employees could access scheduling information and various market rates and ad space scheduling for particular clients of any of Clear Channel's six Chicago radio stations.

- Sales Programs

40.    In addition, Clear Channel's confidential and proprietary information also includes its sales programs, training courses, materials and methodology.

41.    Clear Channel sales programs are created for the exclusive use of its sales staff to develop business for Clear Channel.

42.    Clear Channel has also dedicated extensive resources to its training programs that are provided through its exclusive training school, Clear Channel University.

43.    One of the programs developed by Clear Channel University is its "Solution Based Selling for Account Executives" ("SBSAE"). SBSAE is a customized training program

7

that is designed specifically for Clear Channel which is intended to sharpen the Account

Executive's sales skills, build better client relationships and achieve sales results.  The SBSAE

includes comprehensive preparation assignments and a 3-day training workshop that is

exclusively for Clear Channel Account Executives.  During this program, the participating

Account Executives are trained on Clear Channel's sales methods, target marketing techniques,

music and radio products, and sample scripts.

44.     Each Account Executive also receives pre-workshop assignments which

introduces the program and which is followed-up with unique practice assignments to apply the

training that they have received.

**Clear Channel Protects its Trade Secrets and other Confidential Information**

45.     Clear Channel has invested years, substantial dollars, and extensive resources

gathering, developing, and analyzing its confidential, proprietary information concerning its

customers.

46.     This information is not available to the general public or to Clear Channel's

competitors.  Clear Channel requires that such information be kept strictly confidential by its

employees and restricts access to this information in the manner described below.

47.     Clear Channel uses a secure computer system to organize, maintain, secure, and

access its confidential and proprietary information.

48.     The system is password-protected and includes strict rules concerning the

protection of password secrecy.

49.     In addition, Clear Channel takes other specific measure to preserve the

confidentiality of its proprietary information, including:

       a.     All applicants agree that, if they are hired, they will abide by Clear
            Channel's policies, rules, and procedures.

8

b.    When they are first hired, all Clear Channel employees must agree to abide by the Clear Channel Employee Guide which provides that Clear Channel requires each employee to protect its confidential and proprietary information, including:

- Business promotion strategies and plans (these may be in writing, communicated orally, or exist as a matter of practice or custom).

- Proposals to clients or potential clients, including information compiled or prepared to assist with proposals to clients or potential clients.

- Client lists or prospective (e.g., "target") client lists.

- Client requests (whether presented orally or in writing) for information, proposals, promotional assistance, or other information, which relates to Clear Channel or to the client.

- Event or potential event information, including dates, locations, costs, ticket prices, on-sale information, ticket price determination formulas, methods, strategies, or variations.

- Information regarding other employees and their employment with Clear Channel, including personal information that employees learn in the course of their job duties.

- Information regarding the talents, skills, abilities, and work experience of other employees.

- Computer hardware, software, or computer-related information, whether purchased or created by or on behalf of Clear Channel, as used or applied to Clear Channel's business.

- Information, which pertains – directly or indirectly – to contemplated or actual business relationships between Clear Channel and businesses that engage in activities related to Clear Channel business, e.g., promoters, advertising or marketing firms, etc.

- The identity of consultants, vendors, or other third parties that provide or seek to provide services to Clear Channel, together with the nature of any such services.

- Personal information regarding non-employees, which is obtained through Clear Channel's promotional activities (such as information regarding Internet website visitors, contest winners, email newsletter subscribers, etc.)

9

c.  The Guide also contains a policy that prohibits the dissemination of Clear Channel's confidential and trade-secret information through use of electronic communications. That policy provides that:

> Sending or posting confidential or sensitive material, trade secrets, or proprietary information outside Clear Channel is prohibited. This includes sending or posting messages or material that could damage Clear Channel's image or reputation (both from work or home, and during working or nonworking time).

d.  All Clear Channel employees are also given a Clear Channel Communications, Inc. Code of Business Conduct and Ethics to read and acknowledge that they understand their responsibilities under the code. The Code of Conduct requires, among other things, employees to identify confidential and proprietary information and to keep it confidential:

> It is also important that you protect the confidentiality of company information. Confidential or proprietary information includes all information that is not generally known to the public and is helpful to the company, or would be helpful to competitors. Proprietary information should be marked accordingly, kept secure and access limited to those who have a need to know in order to do their jobs.
>
> Our business relations are built on trust, and our customers and suppliers count on that trust. If you learn information from them that is not otherwise public, you should keep that information confidential also.

e.  Clear Channel also requires all of its Account Executives to sign a Confidentiality Agreement, Trade Secrets And Non-Compete Agreement that defines the type of confidential and proprietary information they may be exposed to, specifically states that this information is the property of Clear Channel, and requires that Account Executives maintain the confidentiality of Clear Channel's information:

During the term of this agreement, Employee will have access to and become familiar with various trade secrets and confidential information and techniques of Employer. Employee acknowledges that such confidential information and techniques, and trade secrets are owned and shall continue to be owned solely by Employer. **During the term of his/her employment, and after such employment terminates, Employee agrees not to use such information for any purpose whatsoever or to divulge such information to any person other than Employer or person to whom Employer has given its consent.** Under no circumstances shall Employee remove from Employer's office any of Employer's books, records, format materials, documents, or customer lists, or any copies of

10

such documents without the written permission of Employer; nor shall employee make any copies of such books, records, materials, documents, or customer lists for use outside of Employer's office except as specifically authorized in writing by Employer.

    f.    Every time an employee accesses any Clear Channel computer system, Clear Channel reminds the employee that the information stored on its computers are the property of Clear Channel through a warning message. Prior to accessing Clear Channel's computer systems, all employees must agree to abide by the following policy:

> All email, instant messaging, voice mail, internet traffic and computer files used, created, or stored on Clear Channel equipment is Company property and subject to monitoring by the Company.
>
> Clear Channel has the right to access and review your electronic files, messages, email, and Internet activity. We might need to do this for business reasons, or to make sure there is no misuse or violation of Company policy or any law. This may happen at any time and without notice to you. By accessing Clear Channel's email or Internet system, all employees knowingly and voluntarily consent to electronic monitoring, and acknowledge Clear Channel's right to conduct such monitoring.

    g.    Upon separation from Clear Channel, network access is terminated immediately and any passwords given to access Clear Channel's computers and systems are disabled to prevent any further access.

    h.    Finally, upon separation from Clear Channel requires an exit interview with its Account Executives, during which Clear Channel reminds the employee of their continuing obligations not to compete or disclose Clear Channel's confidential and proprietary information.

50.    Clear Channel maintains the confidential nature of its proprietary business and customer information because such information provides Clear Channel with a competitive advantage in the marketplace from which Clear Channel derives economic value.

**Individual Defendants' Employment with Clear Channel**

51.    Louis Carpino, Anthony Campbell, Adam Gross and Jose Torres (collectively, "Individual Defendants") were hired by Clear Channel as Account Executives.

11

52.    An Account Executive is responsible for meeting local business owners and advertising agency representatives, in order to build relationships, and selling all Clear Channel assets as marketing solutions to help clients meet their key business challenges.

53.    The essential duties of an Account Executive is to maintain existing business relationships while striving to increase billing and market share; attract new business accounts and sponsorships for the employee's home station, as well as Clear Channel; develop and maintain ongoing relationships with corporate, advertising, and public relations communities; develop presentations to corporations and agencies designed to sell marketing solutions; solicit funding for broadcast and non-broadcast projects, special events web-streaming, and other off-air projects; maintain ability to analyze client marketing analysis, target consumer needs, benefits sought, assignments; develop and sell new accounts.

54.    The Individual Defendants acknowledged that they each read and agreed to abide by Clear Channel's Code of Conduct, Business and Ethic Guide.

55.    In addition, as a condition of their employment, each of the Individual Defendants signed a non-compete agreement which provided:

> Employee agrees that in consideration of his/her employment or continued employment with Employer, training in Employer's techniques, access to confidential trade secrets or Employer's expenditure of money and energy in advertising, training, promoting or dissemination of information about Employee or various programs in which Employee may participate, **Employee does hereby agree that during his/her employment with Employer in the capacity above stated or otherwise and for a period of one hundred eighty (180) days thereafter, he/she shall neither engage directly or indirectly in the rendering of services ... with any radio or television station ... or firm or affiliated company owning or operating a radio or television station or cable system ...**

*    *    *    *

Employee acknowledges that compliance with the covenants previously set forth herein is necessary to protect the business and good will of Employer and that a breach of those covenants will irreparably and continually damage Employer, for which money damages may not be adequate. … Employee agrees that in the event he/she breaches …, **Employer shall be entitled to both a preliminary or permanent injunction in order to prevent the continuation of such harm** and money damages insofar as they can be determined.

56.    In consideration for signing the non-compete agreement, Clear Channel provided the Individual Defendants with their continued employment and were sent to Clear Channel University programs, including the SBSAE training.

- Louis Carpino

57.    Carpino was hired by Clear Channel on March 20, 2006 as an Account Executive with radio station, WLTW.

58.    Immediately upon his hire, Carpino signed the Confidentiality, Trade Secrets and Non-Compete Agreement.

59.    In addition, Carpino received a copy of Clear Channel's Employee Guide (the "Guide"). Carpino acknowledged receipt of the Employee Handbook on March 20, 2006.

60.    Thereafter, Carpino also received Clear Channel's Code of Business Conduct and Ethics (the "Conduct of Conduct"). On September 15, 2006, Carpino acknowledged that he read and agreed to abide by the Code of Conduct and again confirmed receipt of the Guide.

61.    As consideration for agreeing to keep Clear Channel's confidences and signing his non-compete agreement, Carpino was invited to and attended Clear Channel University's SBSAE program in May 2006, which was held in Philadelphia, Pennsylvania.

- Anthony Campbell

62.    Campbell was hired by Clear Channel on April 30, 2007 as an Account Executive with radio station, WKTU.

13

63.    When he was hired, Campbell signed the Confidentiality, Trade Secrets and Non-Compete Agreement.

64.    In addition, Campbell received a copy of Clear Channel's Guide and the Conduct of Conduct.

65.    On April 26, 2007, Campbell acknowledged that he read and agreed to abide by the Guide and the Code of Conduct.

66.    As consideration for agreeing to keep Clear Channel's confidences and signing his non-compete agreement, Campbell was invited to and attended Clear Channel University's SBSAE program in July 2007, which was held in Weehawken, New Jersey.

- Adam Gross

67.    Gross was hired by Clear Channel on July 9, 2007 as an Account Executive with radio station, WKTU.

68.    When he was hired, Gross signed the Confidentiality, Trade Secrets and Non-Compete Agreement.

69.    In addition, Gross received a copy of Clear Channel's Guide and the Conduct of Conduct.

70.    On June 29, 2007, Gross acknowledged that he read and agreed to abide by the Guide and the Code of Conduct.

71.    As consideration for agreeing to keep Clear Channel's confidences and signing his non-compete agreement, Gross was invited to and attended Clear Channel University's SBSAE program in February 2008, which was held in Weehawken, New Jersey.

- Jose Torres

72.    Torres was hired by Clear Channel on July 9, 2007 as an Account Executive with radio station, WKTU.

14

73.    When he was hired, Torres signed the Confidentiality, Trade Secrets and Non-Compete Agreement.

74.    In addition, Torres received a copy of Clear Channel's Guide and the Conduct of Conduct.

75.    On June 29, 2007, Torres acknowledged that he read and agreed to abide by the Guide and the Code of Conduct.

76.    As consideration for agreeing to keep Clear Channel's confidences and signing his non-compete agreement, Torres was invited to and attended Clear Channel University's SBSAE program in February 2008, which was held in Weehawken, New Jersey.

**Events Giving Rise to This Action**

77.    The Individual Defendants informed Clear Channel that they were collectively going to be working at a competing station, WABC-AM, and resigned on March 5, 2008.

78.    WABC-AM is owned by Defendant Citadel. At WABC–AM, the Individual Defendants joined the former Local Sales Manager of Clear Channel's WKTU, Jonathan Mason ("Mason").

79.    Upon information and belief, Mason is now a Sales Manager  at WABC-AM.

80.    WABC-AM is a direct competitor of WLTW and WKTU, as they are in the same Metropolitan Statistical Area, the same radio market, and compete for the same radio advertising clientele.

81.    Despite their non-compete agreements, Clear Channel has learned that the Individual Defendants joined Citadel's WABC-AM and are selling radio advertising for WABC-AM.

82.    Clear Channel has verified that, since the Individual Defendants' departure, Citadel's WABC-AM has reached out to Clear Channel's clients and solicited their business.

83.     It has been merely days since the Individual Defendants left their employment, and several of Clear Channel's clients have already advised it that WABC-AM is seeking their business.

84.     Specifically, Clear Channel has learned that Carpino has contacted at least six of the client contacts he developed while working for Clear Channel.

85.     Carpino even called the Clear Channel Account Executive that took over one of his prior accounts, Leon Bart-Williams, from the client's office, thus, overtly confirming that Carpino is competing with Clear Channel.

86.     In addition, Carpino attended an event sponsored by a Clear Channel client, even though he  had no relationship with this client prior to his employment with Clear Channel.

87.     Surprisingly, Carpino has even reached out to Bart-Williams seeking introductions to other clients for his sales efforts at WABC-AM.

88.     Most egregious, however, on March 19, 2008, Clear Channel learned that since March 5, 2008, a Citadel station has used a Clear Channel sales program and adopted it for its own use.  It appears that the Citadel station simply took Clear Channel's PowerPoint presentation on Clear Channel's "Ask the Expert" program, reconfigured it slightly, placed a Citadel station's name on it, and sold it under the Citadel station's name.

89.     Clear Channel's "Ask the Expert" program was developed by the Clear Channel sales team and required a significant expenditure of company resources.  Moreover, the PowerPoint presentation created to introduce the client to this product was developed over time and, again, required a significant investment of time and money.

90.     Individual Defendants were never given any authority to use or disclose Clear Channel's confidential and proprietary information for any purpose other than for a legitimate

16

Clear Channel business purpose, and was not given permission to remove Clear Channel's property, including its confidential information, from Clear Channel's premises and retain it following their resignation.

91.    Clear Channel's confidential and proprietary information is of tremendous value to Clear Channel and could provide (and has provided) an unfair competitive advantage to any one of its competitors who acquired that information, including Citadel.

92.    A competitor, such as Citadel, could use Clear Channel's confidential information, including its secret process of determining pricing information for advertisement values, product information, business plans, and marketing strategies, to develop competing products, adjust its marketing strategies, unfairly price its products, or otherwise move business away from Clear Channel.

**Citadel's Pattern of Soliciting Business from Clear Channel's Clients**

93.    In addition to the four Individual Defendants, within the last few months, Citadel has hired two Account Executives in its Chicago market, as well.

94.    Similar to the case here, Clear Channel has learned that Citadel has solicited the business of the Clear Channels clients in Chicago.

**Irreparable Harm to Clear Channel**

95.    Defendants' actions have harmed Clear Channel's business, especially its relationships with its clients, reputation and goodwill.

96.    Clear Channel's trade secrets and confidential client information that Individual Defendants have thus far disclosed to Citadel and has used to unfairly compete with Clear Channel can never be secret again.

17

97.     As a result of Defendants' actions as described above, Clear Channel has suffered, and will continue to suffer, severe and irreparable harm, for which it has no adequate remedy at law, including, but not limited to:

(a)     Loss of its ability to control the use and disclosure of the confidential and proprietary information and trade secrets it has developed at great effort and expense;

(b)     Disclosure of its confidential and proprietary information and trade secrets to third parties, including competitors, such as Citadel;

(c)     Use of its confidential and proprietary information and trade secrets by third parties, including competitors, such as Citadel;

(d)     Loss of business opportunities and client and customer accounts; and

(e)     Harm to, and dilution of, the reputation and goodwill Citadel has established at great effort and expense.

98.     Injunctive relief is necessary and appropriate because if the Defendants continue to compete unfairly, Clear Channel will suffer further damage that cannot be compensated by money alone.

## COUNT I
### (Breach of Contract)
### (Against Defendants Campbell, Carpino, Gross and Torres)

99.     Clear Channel repeats and realleges each and every allegation contained in Paragraphs 1 through 98 of this Complaint as if fully set forth herein.

100.    Defendants Campbell, Carpino, Gross, and Torres each entered into a Confidentiality, Trade Secrets and Non-Compete Agreement ("Non-Compete Agreement") with Clear Channel that explicitly prohibited each of them from, *inter alia*, competing with, becoming employed by, or providing services to "any radio station, television station (including any cable organization or supplier) or any firm or affiliated company owning or operating a radio station, television station or cable system, with an office located in New York, New York" for a period

of one hundred eighty days and/or from using, or disclosing Clear Channel's confidential information and trade secrets.

101.    The restrictive covenants contained in the Non-Compete Agreements of the Individual Defendants remain in full force and effect, and, for good consideration, Individual Defendants remain obligated to comply with the restrictive covenants.

102.    Clear Channel has satisfied all of its obligations under the terms and conditions of the restrictive covenants contained in Individual Defendants' Non-Compete Agreements.

103.    Individual Defendants have breached their restrictive covenants by:

(a)    competing with, becoming employed by, and providing services to a radio broadcasting company in competition with Clear Channel;

(b)    soliciting the business and patronage of Clear Channel's clients, and seeking to divert business from Clear Channel to their new employer, Citadel, within one hundred eighty days after their termination from employment with Clear Channel; and

(c)    using and/or disclosing to others Clear Channel's confidential client information in their efforts to solicit Clear Channel's clients' business.

104.    These actions have damaged Clear Channel's goodwill, reputation and legitimate business interests, and have denied Clear Channel the benefit of its bargain with respect to the restrictive covenants agreed to by Individual Defendants.

105.    By reason of the foregoing, Clear Channel requests that this Court grant preliminary and permanent injunctive relief. Clear Channel has no adequate remedy at law. Unless injunctive relief is granted, Clear Channel will be irreparably harmed in a manner not fully compensable by money damages.

19

106.    As a direct and proximate cause of Individual Defendants' breaches of contract, Clear Channel has also sustained and will incur further damages in an amount to be determined at trial.

**COUNT II**
**(Misappropriation of Trade Secrets)**
**(Against All Defendants)**

107.    Clear Channel repeats and realleges each and every allegation contained in Paragraphs 1 through 106 of this Complaint as if fully set forth herein.

108.    By virtue of their employment at Clear Channel and performance of responsibilities for Clear Channel, Individual Defendants were given access to and possessed trade secrets and confidential and proprietary information of Clear Channel, to wit, its sales programs, extensive information about Clear Channel's clients (including, without limitation, their identities, contact information, history, needs and pricing), as well as Clear Channel sales training and methodology that were prepared by Clear Channel at great time, cost and expense.

109.    Defendants misappropriated, exploited and misused Clear Channel's confidential information for their own self-interest and for the benefit of Citadel to compete unfairly with Clear Channel.

110.    As a result of the wrongdoing of the Defendants, Clear Channel has suffered and continues to suffer the substantial and irreparable loss of its trade secrets and its goodwill resulting in harm not fully compensable by money damages.

111.    By reason of the foregoing, Clear Channel requests that this Court grant preliminary and permanent injunctive relief. Clear Channel has no adequate remedy at law. Unless injunctive relief is granted, Clear Channel will continue to be irreparably harmed in a manner not fully compensable by money damages.

20

112.    As a direct and proximate cause of Defendants' misconduct, as set forth above, Clear Channel has also sustained and will incur further damages in an amount to be determined at trial.

113.    Punitive damages should also be awarded in that the conduct of Citadel was willful, wanton and malicious.

## COUNT III

### (Breach of Fiduciary Duty of Loyalty)
### (Against Defendants Campbell, Carpino, Gross and Torres )

114.    Clear Channel repeats and realleges each and every allegation contained in Paragraphs 1 through 113 of this Complaint as if fully set forth herein.

115.    By virtue of their positions at Clear Channel, Individual Defendants owed Clear Channel a fiduciary duty of the utmost good faith and loyalty, including a duty of candor and a duty not to misappropriate, exploit or misuse Clear Channel 's confidential client information, to wit, extensive information about Clear Channel's clients (their identities, contact information, assets, and investment preferences, history, needs and requirements) whom Clear Channel had previously entrusted for servicing to Individual Defendants.

116.    Through their wrongdoing as alleged herein, Individual Defendants  breached their fiduciary duty owed to their employer Clear Channel.

117.    As a result of Individual Defendants'  wrongdoing, Clear Channel has suffered and continues to suffer the substantial and irreparable loss of its trade secrets and its goodwill, resulting in harm not fully compensable by money damages.

118.    By reason of the foregoing, Clear Channel requests that this Court grant preliminary and permanent injunctive relief.  Clear Channel has no adequate remedy at law. Unless injunctive relief is granted, Clear Channel will continue to be irreparably harmed in a

manner not fully compensable by money damages, including, but not limited to the loss of its

trade secret confidential client information and its clients' business and attendant goodwill.

119. As a direct and proximate cause of Individual Defendants' misconduct, as set

forth above, Clear Channel has also sustained and will incur further damages in an amount to be

determined at trial.

120. Punitive damages should also be awarded in that the conduct of Citadel was

willful, wanton and malicious.

## COUNT IV

### (Conversion and Unfair Competition)
### (Against All Defendants)

121. Clear Channel repeats and realleges each and every allegation contained in

Paragraphs 1 through 120 of this Complaint as if fully set forth herein.

122. By virtue of their employment at Clear Channel and performance of

responsibilities for Clear Channel, Individual Defendants were given access to and possessed

trade secrets and confidential and proprietary information of Clear Channel, including propriety

client and business information, as well as Clear Channel sales training and methodology.

123. Individual Defendants have misappropriated, and along with Citadel have

willfully converted, exploited and misused, Clear Channel's trade secrets and confidential and

proprietary information for their respective own self-interests and have gained an unfair

competitive advantage in competing with Clear Channel.

124. Defendants have further unfairly competed with Clear Channel by using this

information to cause injury to Clear Channel's goodwill and reputation amongst its clients.

22

125.    As a result of Defendants' wrongdoing, Clear Channel has suffered and continues to suffer the substantial and irreparable loss of its trade secrets and its goodwill and reputation resulting in harm not fully compensable by money damages.

126.    By reason of the foregoing, Clear Channel requests this Court to grant preliminary and permanent injunctive relief.  Clear Channel has no adequate remedy at law.  Unless injunctive relief is granted, Clear Channel will continue to be irreparably harmed in a manner not fully compensable by money damages.

127.    As a direct and proximate cause of Defendants' misconduct, as set forth above, Clear Channel has also sustained and will incur further damages in an amount to be determined at trial.

128.    Punitive damages should also be awarded in that the conduct of Citadel was willful, wanton and malicious.

## COUNT V

### (Tortious Interference With Contractual Relations)
### (Against Defendant Citadel)

129.    Clear Channel repeats and realleges each and every allegation contained in Paragraphs 1 through 128 of this Complaint as if fully set forth herein.

130.    Individual Defendants entered into Non-Compete Agreements with Clear Channel.  The agreements contained covenants that provided for continuing contractual obligations after the termination of their employment relationship.

131.    Upon information and belief, Defendant Citadel knew of the existence of the Individual Defendants' Non-Compete Agreements with Clear Channel.

132.    Upon information and belief, Defendant Citadel intentionally induced Individual Defendants to violate their agreements with Clear Channel by providing services to and

23

becoming employed by Citadel, knowing that they were subject to Non-Compete Agreements with Clear Channel which prohibited their employment with a competing radio station in the New York area within one hundred eighty (180) days of their resignation from Clear Channel, and further knowing – *and with the intent that* -- they would use and/or disclose their knowledge of Clear Channel's confidential information to unfairly compete with Clear Channel by misappropriating Clear Channel's trade secrets for the benefit of Citadel, as well as by cooperating in, aiding, and consenting to the wrongful use of Clear Channel's proprietary information, all in violation of the Individual Defendant's employment agreements with Clear Channel.

133.    By reason of the foregoing, Clear Channel requests that this Court grant preliminary and permanent injunctive relief. Clear Channel has no adequate remedy at law. Unless injunctive relief is granted, Clear Channel will be irreparably harmed in a manner not fully compensable by money damages.

134.    As a direct and proximate cause of Citadel's tortious misconduct, as set forth above, Clear Channel has also sustained and will further incur damages in an amount to be determined at trial.

135.    Punitive damages should also be awarded in that the conduct of Citadel was willful, wanton and malicious.

**COUNT VI**
**(Civil Conspiracy)**
**(Against All Defendants)**

136.    Clear Channel repeats and realleges each and every allegation contained in Paragraphs 1 through 136 of this Complaint as if fully set forth herein.

24

137.    Defendants, and possibly others, by tacit agreement, with malice and intent, engaged in a scheme to misappropriate and misuse Clear Channel's trade secrets and confidential and proprietary information to enable them to compete unfairly against Clear Channel.

138.    By virtue of their above-described actions, Individual Defendants in concert with Citadel, and possibly others, committed unlawful acts in furtherance of this scheme by malicious and intentionally misappropriating and disclosing to Citadel, Clear Channel's trade secrets and confidential and proprietary information, for the benefit of themselves and Citadel; soliciting clients on behalf of Citadel and selling competing services to Clear Channel's clients, with Clear Channel's knowledge and consent.

139.    As a direct and proximate result of the tortious conduct of Defendants, Clear Channel has also sustained and will incur further damages in an amount to be proven at trial.

140.    Punitive damages should also be awarded in that the conduct of the Defendants was willful, wanton and malicious.

### COUNT VII
### (Unjust Enrichment)
### (Against All Defendants)

141.    Clear Channel repeats and realleges each and every allegation contained in Paragraphs 1 through 141 of this Complaint as if fully set forth herein.

142.    Defendants obtained Clear Channel's confidential, proprietary, and trade secret information, including its client and business information, that in equity and good conscience they should not have obtained.

143.    As a result, Defendants have been unjustly enriched at the expense of Clear Channel in an amount to be proven at trial.

**WHEREFORE,** Clear Channel respectfully requests that the Court enter Judgment:

(a)    finding that Defendants Campbell, Carpino, Gross and Torres breached their restrictive covenants in their Non-Compete Agreements with Clear Channel;

(b)    finding that Defendants Campbell, Carpino, Gross and Torres misappropriated Clear Channel's trade secrets and confidential information;

(c)    finding that Defendants Campbell, Carpino, Gross and Torres breached their duty of loyalty to Clear Channel;

(d)    enjoining Defendants Campbell, Carpino, Gross and Torres from being employed or providing services to any radio station, television station (including any cable organization or supplier) or any firm or affiliated company owning or operating a radio station, television station or cable system, with an office located in New York, New York, including Citadel, for a period of one hundred eighty days from entry of the Order of this Court;

(e)    enjoining Defendants Campbell, Carpino, Gross and Torres and Citadel from directly or indirectly contacting or soliciting the trade and patronage of Clear Channel's clients for a period of one hundred eighty days from entry of the Order of this Court, thereby enjoining continuing breaches of Individual Defendants' obligations to Clear Channel and Citadel's tortious inducement of said breaches;

(f)    enjoining Defendants from, directly or indirectly, disclosing or using any confidential and/or proprietary and/or trade secret protected information of any kind, nature or description belonging to Clear Channel;

(g)    directing the Defendants to return to Clear Channel all documents, records and property of any kind or nature whatsoever and in any form whatsoever (including copies thereof and computer and other electronic records), which are within the Defendants' possession, custody or control and belong to Clear Channel;

(h)  adjudging the Defendants liable for compensatory damages in an exact amount to be determined at trial;

(i)  adjudging the Defendants liable for punitive damages in an exact amount to be determined at trial;

(j)  granting Clear Channel costs and expenses, including reasonable attorney's fees; and

(k)  granting Clear Channel  such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        March 21, 2008

Respectfully submitted,
SEYFARTH SHAW LLP

By:_____
     L. Lynnette  Sarno, Esq.
     Gloria Galant,  Esq.

620 Eighth Avenue
New York, New York  10018
(212) 218-5500
Email:  lsarno@seyfarth.com
        ggalant@seyfarth.com


Attorneys for Plaintiff
Capstar Radio Operating Company

27

# EXHIBIT B

L. Lynnette Sarno (LS-2421)
Gloria Galant (GG-2818)
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
(212) 218-5500

Attorneys for Plaintiff Capstar Radio Operating Company

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

Capstar Radio Operating Company, a Delaware         :
Corporation,                                        :
                                                    :    **ECF CASE**
                                                    :
            Plaintiff,                              :    08 Civ. 2976
                                                    :
      v.                                            :    **NOTICE OF**
                                                    :    **VOLUNTARY DISMISSAL**
Anthony Campbell; Louis Carpino; Adam Gross;        :    **WITHOUT PREJUDICE**
Jose Luis Torres; Citadel Broadcasting Corporation, :
a Nevada Corporation; and John Does 1-10,           :
                                                    :
            Defendants.                             :

-------------------------------------------------------------------x

PLEASE TAKE NOTICE THAT, plaintiff Capstar Radio Operating Company

("Capstar"), by its undersigned counsel, hereby dismisses *without prejudice*, all claims and

causes of action against defendants Anthony Campbell; Louis Carpino; Adam Gross; Jose Luis

Torres; Citadel Broadcasting Corporation, a Nevada Corporation; and John Does 1-10

(collectively, "Defendants") in the above-captioned action, without costs or attorneys' fees to

any party, pursuant to Rule 41(a)(1)(i) of the Federal Rules of Civil Procedure.  No defendants

have served an answer or motion for summary judgment herein.

Dated: New York, New York
      March 25, 2008

                         SEYFARTH SHAW LLP

                         By:
                           L. Lynnette Sarno, Esq.
                            Gloria Galant,  Esq.
                         620 Eighth Avenue
                         New York, New York  10018
                         (212) 218-5500

                         Attorneys for Plaintiff
                         Capstar Radio Operating Company

**EXHIBIT C**

**Defendant**

**Jose Luis Torres**                                     represented by **Jeremy Feigelson**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**Citadel Broadcasting Corporation**

**Defendant**

**a Nevada Corporation**

**Defendant**

**John Does 1-10**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/21/2008 | 1 | COMPLAINT against Anthony Campbell, Louis Carpino, Adam Gross, Jose Luis Torres, Citadel Broadcasting Corporation, a Nevada Corporation, John Does 1-10. (Filing Fee $ 350.00, Receipt Number 645614)Document filed by Capstar Radio Operating Company.(js) (Entered: 03/24/2008) |
| 03/21/2008 | | SUMMONS ISSUED as to Anthony Campbell, Louis Carpino, Adam Gross, Jose Luis Torres, Citadel Broadcasting Corporation, a Nevada Corporation, John Does 1-10. (js) (Entered: 03/24/2008) |
| 03/21/2008 | | Case Designated ECF. (js) (Entered: 03/24/2008) |
| 03/21/2008 | | Magistrate Judge Andrew J. Peck is so designated. (js) (Entered: 03/24/2008) |
| 03/21/2008 | 2 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Capstar Radio Operating Company.(js) (Entered: 03/24/2008) |
| 03/25/2008 | 3 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Citadel Broadcasting Corporation.(Feigelson, Jeremy) (Entered: 03/25/2008) |
| 03/25/2008 | 4 | FILING ERROR - ELECTRONIC FILING FOR NON-ECF DOCUMENT - NOTICE of Voluntary Dismissal without prejudice dated 3/25/08. Document filed by Capstar Radio Operating Company. (Sarno, Lindafel) Modified on 3/26/2008 (db). (Entered: 03/25/2008) |
| 03/26/2008 | 5 | ANSWER to Complaint. Document filed by Anthony Campbell, Louis Carpino, Adam Gross, Jose Luis Torres. (Attachments: # 1 Certificate of Service)(Feigelson, Jeremy) (Entered: 03/26/2008) |
| 03/26/2008 | | ***NOTE TO ATTORNEY TO RE-FILE DOCUMENT - NON-ECF DOCUMENT ERROR. Note to Attorney Lindafel C. Sarno to E-MAIL |

| | | Document No. 4 Notice of Voluntary Dismissal Without Prejudice to orders_and_judgments@nysd.uscourts.gov. This document is not filed via ECF. (db) (Entered: 03/26/2008) |
|---|---|---|

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/26/2008 13:42:27 | | | |
| **PACER Login:** | ss0235 | **Client Code:** | 99999-000510 dgf |
| **Description:** | Docket Report | **Search Criteria:** | 1:08-cv-02976-LAK |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

**EXHIBIT D**



**SEYFARTH**
**ATTORNEYS SHAW** LLP

620 Eighth Avenue

New York, New York 10018-1405

(212) 218-5500

Fax (212) 218-5526

www.seyfarth.com

# Facsimile Transmission

Date:  March 25, 2008

| RECIPIENT | COMPANY | PHONE NO. | FAX NO. |
|---|---|---|---|
| **Jeremy Feigelson** | Debevoise & Plimpton LLP | 212-909-6595 | **212-521-7230** |

**FROM:**  L. Lynnette Sarno

**PHONE:**  (212) 218-5528

**RE:**  **REPLY FAX NO.: (212) 218-5526**

| File No: | Number of Pages, Including Cover: |
|---|---|

☒ Hard copy to follow                    ☐ Hard copy will not follow

☐ Per your request                         ☐ Please review and revise if necessary

☐ Please telephone me

**MESSAGE:**

Please see attached.

THE INFORMATION CONTAINED IN THIS FACSIMILE IS CONFIDENTIAL AND MAY ALSO CONTAIN PRIVILEGED ATTORNEY-CLIENT INFORMATION OR WORK PRODUCT.  THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED.  IF YOU ARE NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY USE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THE FACSIMILE IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ADDRESS ABOVE VIA THE U.S. POSTAL SERVICE.  THANK YOU.

ANY TAX INFORMATION OR WRITTEN TAX ADVICE CONTAINED HEREIN (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED TO BE AND CANNOT BE USED BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON THE TAXPAYER.  (THE FOREGOING LEGEND HAS BEEN AFFIXED PURSUANT TO U.S. TREASURY REGULATIONS GOVERNING TAX PRACTICE.)

**IF YOU DO NOT RECEIVE ALL THE PAGES, PLEASE PHONE (212) 218-5500 AS SOON AS POSSIBLE.**

NY1 26507614.1

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO              1188
DESTINATION TEL #     #894
DESTINATION ID
ST. TIME              03/25 07:51
TIME USE              00'48
PAGES SENT            4
RESULT                OK
```



# SEYFARTH SHAW LLP
ATTORNEYS

620 Eighth Avenue
New York, New York 10018-1405
(212) 218-5500
Fax (212) 218-5526
www.seyfarth.com

## Facsimile Transmission

Date:  March 25, 2008

| RECIPIENT | COMPANY | PHONE NO. | FAX NO. |
|---|---|---|---|
| **Jeremy Feigelson** | Debevoise & Plimpton LLP | 212-909-6595 | **212-521-7230** |

**FROM:**     L. Lynnette Sarno

**PHONE:**    (212) 218-5528

**RE:**                                          **REPLY FAX NO.: (212) 218-5526**

| File No: | Number of Pages, Including Cover: |
|---|---|

☒ Hard copy to follow            ☐ Hard copy will not follow
☐ Per your request                 ☐ Please review and revise if necessary
☐ Please telephone me

**MESSAGE:**

Please see attached.



**SEYFARTH** ATTORNEYS **SHAW** LLP

620 Eighth Avenue

New York, New York 10018-1405

(212) 218-5500

fax (212) 218-5526

www.seyfarth.com

Writer's direct phone

(212) 218-5528

Writer's e-mail

lsarno@seyfarth.com

Writer's direct fax

March 25, 2008

**VIA FACSIMILE (212) 521-7230**
**AND U.S. MAIL**

Jeremy Feigelson, Esq.
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022

   Re: *Capstar Radio Operating Company v. Citadel Broadcasting Corporation, et al.*
     Docket No. 08 CV 2976
     (LAK)

Dear Mr. Feigelson:

   Enclosed is a Notice of Voluntary Dismissal Without Prejudice, pursuant to Rule 41(a)(1)(i) of the Federal Rules of Civil Procedure, in the above referenced matter. We have electronically filed the foregoing Notice of Voluntary Dismissal Without Prejudice with the Clerk of the District Court using the CM/ECF system. However, we learned that your firm has yet to file a Notice of Appearance and has not filed any papers in this action. Accordingly, we are forwarding a copy to you.

      Very truly yours,

      SEYFARTH SHAW LLP

      L. Lynnette Sarno

cc:  Gloria Galant

BRUSSELS
WASHINGTON, D.C.
SAN FRANCISCO
SACRAMENTO
NEW YORK
LOS ANGELES
HOUSTON
CHICAGO
BOSTON
ATLANTA

NY1 26507613.1

L. Lynnette Sarno (LS-2421)
Gloria Galant (GG-2818)
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
(212) 218-5500

Attorneys for Plaintiff Capstar Radio Operating Company

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

Capstar Radio Operating Company, a Delaware
Corporation,

                                 Plaintiff,

v.

Anthony Campbell; Louis Carpino; Adam Gross;
Jose Luis Torres; Citadel Broadcasting Corporation,
a Nevada Corporation; and John Does 1-10,

                                 Defendants.

-------------------------------------------------------------------x

**ECF CASE**

08 Civ. 2976

**NOTICE OF
VOLUNTARY DISMISSAL
WITHOUT PREJUDICE**

       PLEASE TAKE NOTICE THAT, plaintiff Capstar Radio Operating Company

("Capstar"), by its undersigned counsel, hereby dismisses *without prejudice*, all claims and

causes of action against defendants Anthony Campbell; Louis Carpino; Adam Gross; Jose Luis

Torres; Citadel Broadcasting Corporation, a Nevada Corporation; and John Does 1-10

(collectively, "Defendants") in the above-captioned action, without costs or attorneys' fees to

any party, pursuant to Rule 41(a)(1)(i) of the Federal Rules of Civil Procedure.  No defendants

have served an answer or motion for summary judgment herein.

Dated: New York, New York
      March 25, 2008

                        SEYFARTH SHAW LLP

                        By:
                          L. Lynnette Sarno, Esq.
                          Gloria Galant,  Esq.
                        620 Eighth Avenue
                        New York, New York  10018
                        (212) 218-5500

                        Attorneys for Plaintiff
                        Capstar Radio Operating Company

# EXHIBIT E

EXTREMELY URGENT    Please Rush To Addressee

PLEASE PRESS FIRMLY

**EXPRESS MAIL**

UNITED STATES POSTAL SERVICE

♻ Recycled Paper

**Flat Rate Mailing Envelope**

*For Domestic and International Use*

*Visit us at usps.com*

Print postage online - Go to usps.com/postage

home or office at usps.com/pickup

**ORIGIN (POSTAL SERVICE USE ONLY)**

PO ZIP Code: 10199

Date Accepted: Mo. 3 Day 25 Year 08

Time Accepted: 1:45 ☐ AM ☑ PM

Flat Rate ☐ or Weight: lbs. 4 ozs.

EH 011347723 US

**Day of Delivery**
☐ Next ☑ 2nd ☐ 2nd Day

**Scheduled Time of Delivery**
☐ Noon ☐ 3 PM

Military ☐ 2nd Day

Postage $ 16.25

Return Receipt Fee

COD Fee    Insurance Fee

Total Postage & Fees $ OK

Acceptance Emp. Initials

**FROM:** (PLEASE PRINT)  PHONE ( 212 ) 909-6000

Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022

PRESS HARD, YOU ARE MAKING 3 COPIES.

FOR PICKUP OR TRACKING
Visit **www.usps.com**
Call 1-800-222-1811

EP13F JULY 2007 © U.S. Postal Service

---

**EXPRESS MAIL**

**Mailing Label**
Label 11-B, March 2004

**Post Office To Addressee**

**DELIVERY (POSTAL USE ONLY)**

Delivery Attempt Mo. Day    Time ☐ AM ☐ PM    Employee Signature

Delivery Attempt Mo. Day    Time ☐ AM ☐ PM    Employee Signature

Delivery Date 3/26/08 Time 10:53 ☐ AM ☑ PM    Employee Signature BT (BK seat)

**CUSTOMER USE ONLY**

PAYMENT BY ACCOUNT
Express Mail Corporate Acct. No.

Federal Agency Acct. No. or
Postal Service Acct. No.

**TO:** (PLEASE PRINT)  PHONE ( )

L. Lynnette Serna, Esq.
Seyfarth Shaw LLP
620 8th Avenue
New York, NY

ZIP + 4 (U.S. ADDRESSES ONLY, DO NOT USE FOR FOREIGN POSTAL CODES.)

1 0 0 1 8 + 1 9 0 5

FOR INTERNATIONAL DESTINATIONS, WRITE COUNTRY NAME BELOW.

EMS