UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Capstar Radio Operating Company, a Delaware
Corporation,

                    Plaintiff,

      v.

Anthony Campbell; Louis Carpino; Adam Gross;
Jose Luis Torres; Citadel Broadcasting Corporation,
a Nevada Corporation; and John Does 1-10,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Case No. 08-CV- 2976 (LAK)

## DECLARATION OF L. LYNNETTE SARNO, ESQ.

L. LYNNETTE SARNO, ESQ., being duly sworn, declares under penalty of perjury:

1.      I am a member of the Bar of the State of New York and a partner in the firm of Seyfarth Shaw LLP, attorneys for Plaintiff Capstar Radio Operating Company ("Capstar" or "Plaintiff") in the above-captioned case. This Declaration is submitted in further support of Plaintiff's motion for an order accepting Plaintiff's notice of voluntary withdrawal without prejudice pursuant to Rule 41(a)(1)(A) of the Federal Rules of Civil Procedure.

2.      Annexed hereto as Exhibit F is a true and accurate copy of the letter from Defendants' counsel, Jeremy Feigelson, to the Court, dated March 26, 2008.

3.      Annexed hereto as Exhibit G is a true and accurate copy of the letter from Defendants' counsel, Jeremy Feigelson, to the Court, dated April 22, 2008.

I declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct.

Executed on May 9, 2008

L. Lynnette Sarno (LS-2421)

# EXHIBIT F

# DEBEVOISE & PLIMPTON LLP

919 Third Avenue
New York, NY 10022
Tel  212 909 6000
www.debevoise.com

**Jeremy Feigelson**
Partner
Tel  212 909 6230
Fax  212 521 7230
jfeigelson@debevoise.com

March 26, 2008

**BY HAND**

Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-2012

**Capstar v. Campbell et al.**
**No. 08 CV 2976 (LAK)**

Dear Judge Kaplan:

On behalf of defendants, we write to request a conference and the entry of an order confirming the schedule set at Monday's hearing. We make this request in light of plaintiff's filing last night of a purported Notice of Voluntary Dismissal under Rule 41(a)(1) of the Federal Rules of Civil Procedure.

**Background**

On Monday, the Court denied plaintiff's application for a TRO and the parties agreed on the record to specific dates for expedited discovery and an evidentiary hearing. Plaintiff asserted that any jurisdictional defect arising from the lack of diversity as to defendant Citadel Broadcasting Corporation ("Citadel") was curable by amending the complaint to add a claim under the Computer Fraud and Abuse Act ("CFAA"). The Court also noted its authority to dismiss Citadel and retain jurisdiction over the balance of the case. *See* Transcript (Mar. 24, 2008), attached at tab A.

Yesterday afternoon, plaintiff's counsel advised me that plaintiff would be serving discovery requests as agreed to on the record Monday. We served defendants' discovery requests yesterday, and we also provided plaintiff with a stipulation and order that would memorialize the schedule agreed to on Monday. A copy of the proposed stipulation and order is attached at tab B.

Plaintiff's counsel also asked yesterday afternoon if defendants would consent to allow the case to proceed in state court rather than federal court. The stated reason for the request was that plaintiff now realized it could not obtain federal jurisdiction on

New York • Washington, D.C. • London • Paris • Frankfurt • Moscow • Hong Kong • Shanghai

diversity grounds over any relevant Citadel corporate entity. The CFAA went unmentioned. Plaintiff's counsel also stated that it was necessary to have a corporate defendant in order to explore the "Ask the Expert" issue, apparently disregarding the availability of third-party discovery. I advised that I had no authority to consent and that we regarded plaintiff as bound by the agreed procedure set at Monday's hearing.

Yesterday evening just before 9 p.m., plaintiff filed via ECF, and faxed to me, a purported Notice of Voluntary Dismissal pursuant to Fed. R. Civ. P. 41(a). *See* tab C. Shortly thereafter we served an answer via U.S. Mail on behalf of the Individual Defendants, as soon as we obtained consent from them to serve it on their behalf. *See* tab D. We were unable to obtain instructions yesterday evening from our client Citadel because the general counsel was on an airplane.

## Argument

## I.    Plaintiff's Notice of Voluntary Dismissal Is Ineffective.

Plaintiff cannot dismiss this case without moving for and obtaining a court order under Rule 41(a)(2), for three reasons:

*First*, defendants served an answer on behalf of the Individual Defendants on the same day as plaintiff filed its Notice of Voluntary Dismissal, making recourse to unilateral dismissal unavailable to plaintiff. Under all the circumstances, the fact that plaintiff's ECF filing slightly preceded the mailing of defendants' answer on the same day does not entitle plaintiff to circumvent Rule 41(a)(2) and its requirement that the Court approve dismissal of the case. *See Grass v. Citibank, N.A.*, 90 F.R.D. 79, 80 (S.D.N.Y. 1981) (declining to treat Rule 41(a)(1) notice of dismissal without prejudice as effective, in part because "one of the defendants filed an answer on the same day that the plaintiff filed a notice of dismissal without prejudice").

*Second*, the procedure and schedule set on Monday are binding just as any terms set on the record in open court are binding. Plaintiff's request yesterday afternoon that defendants consent to proceed in state court reflected a concession that it had already foregone unilateral voluntary dismissal under Rule 41(a)(1). Notably, plaintiff did not reserve any rights in this regard at Monday's hearing; it joined in the scheduling discussion and asked only for modest adjustments to the dates proposed by defendants.

*Third*, regardless of the timing of the answer, the prior proceedings in this case bring it within the requirement of Rule 41(a)(2) that a court order must precede any dismissal. Although this case is young, there is an extensive record already before the Court (six declarations were submitted by plaintiff and five by defendants) and a TRO application has already been heard and denied after the Court considered that record. That brings this case in line with *Harvey Aluminum, Inc. v. Am. Cyanamid Co.*, 203 F.2d 105 (2d Cir. 1953), where the Court of Appeals held that when "the merits of the

Honorable Lewis A. Kaplan                3                    March 26, 2008

controversy were squarely raised and the district court in part based its denial of the injunction on its conclusion that the plaintiffs' chance of success on the merits was small," then voluntary dismissal was not permitted even though it "was attempted before any paper labeled 'answer' or 'motion for summary judgment' was filed." While subsequent cases confirm that an answer or summary judgment motion generally is necessary to trigger the court order requirement of Rule 41(a)(2), *Harvey* remains good law, and it is directly applicable here where the Court has stated, "I don't see any hard facts" on irreparable injury and "[t]hat goes also to the issue of likelihood of success on the merits." *See* Transcript at 36.

## II.    No Order of Dismissal Should Issue.

It is apparent that plaintiff prefers not to proceed before Your Honor, but its hope of finding a state judge who might view the case more favorably is not a proper purpose under Rule 41(a)(2). 8 Moore's Federal Practice § 41.40[7][b] at 41-158 ("A motion for a voluntary dismissal should generally be denied when the purpose is to avoid an adverse determination on the merits of the action.").

Nor does the prospect of delay – trading expedited bilateral discovery and an imminent trial date in this Court for the notoriously slow train of state-court proceedings – provide a proper purpose. *Id.* § 41.40[7][c] at 41-163 ("The district court should not permit a voluntary dismissal to be employed as an easy substitute for an adjournment of a scheduled trial."); *id.* § 41.40[7][d] ("The district court should not permit the plaintiff voluntarily to dismiss the action to thwart discovery deadlines."). Losing the expedited schedule already agreed to would be particularly detrimental to the Individual Defendants. They deserve to have the cloud of this meritless litigation lifted as soon as possible. Plaintiff's attempted move to state court also stands in contrast to the urgency that it professed before Your Honor on Monday, and before Judge Baer on Good Friday.

We respectfully request that the Court convene a conference to address this matter. We believe that an appropriate remedy would be for the Court to enter the scheduling and confidentiality order attached at tab B.

Respectfully yours,

Jeremy Feigelson

Attachments

cc (by hand):  L. Lynette Sarno, Esq.

**TAB A**

83oncapa.txt

1

83oncapa
1     UNITED STATES DISTRICT COURT
1     SOUTHERN DISTRICT OF NEW YORK
2     ----------------------------x
2
3     CAPSTAR RADIO OPERATING
3     COMPANY, a DELAWARE
4     CORPORATION,
4
5                         Plaintiff,         New York, N.Y.
5
6              v.                            08 Civ. 2976 (LAK)
6
7     ANTHONY CAMPBELL, LOUIS
7     CARPINO, ADAM GROSS, JOSE LUIS
8     TORRES, CITADEL BROADCASTING
8     CORPORATION, a Nevada
9     Corporation and JOHN DOES 1-10
9
10                        Defendants.
10
11    ----------------------------x
11
12                                          March 24, 2008
12                                          2:30 p.m.
13
13    Before:
14
14                      HON. LEWIS A. KAPLAN,
15
15                                          District Judge
16
16                         APPEARANCES
17
17    SEYFARTH SHAW
18          Attorneys for Plaintiff
18    BY:   L. LYNNETTE SARNO
19          GLORIA GALANT
20
20    DEBEVOISE & PLIMPTON
21          Attorneys for Defendant
21    BY:   JEREMY FEIGELSON
22          TRICIA BOZYK SHERNO
23
24
25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

♀                                                            2
83oncapa
1            (Case called)
2            THE COURT:  All right, Ms. Sarno.
3            MS. SARNO:  Good afternoon, your Honor.
4            We represent Capstar Radio Operating Company.
5            THE COURT:  Use the lectern, please.
6            MS. SARNO:  Sure.
7            Good afternoon again.
8            As mentioned, we represent Capstar Radio Operating
9     Company, and for ease purposes because Capstar is a subsidiary
10    of ClearChannel communications, I'll refer to them as
11    ClearChannel.
12            Your Honor we are here this afternoon at the request
                            Page 1

```
                          83oncapa.txt
13   of a temporary restraining order on these individual defendants
14   Mr. Campbell, Mr. Carpino, Mr. Gross and Mr. Torres, as well as
15   Citadel with regard to unfair competition that they have
16   engaged in, in the mere 17 days since they left ClearChannel.
17   In the short time we have learned many things which leads us to
18   believe that they have engaged in a concerted --
19              THE COURT:  Let's start with whether I have
20   jurisdiction.
21              MS. SARNO:  Sure, your Honor.
22              I understand that one of the issues that was raised
23   was -- and we just received Citadel's papers now, but we
24   certainly believe there is diversity jurisdiction.  Capstar and
25   its parent company ClearChannel is a Delaware corporation with
                   SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
```

♀                                                                    3

```
     83oncapa
1    its principal place of business in Texas.
2              In addition to that issue, because of the information
3    that we keep learning as time goes, we also believe that we
4    have a Computer Fraud and Abuse Act action.
5              THE COURT:  I'm sorry.
6              MS. SARNO:  What has happened since we've brought this
7    action as well is that we continue to gain information that
8    leads us to believe that we will also have a Computer Fraud and
9    Abuse Act action, that we will be able to amend this claim.
10             THE COURT:  But jurisdiction is determined as of the
11   moment of the filing of the complaint.  Right?
12             MS. SARNO:  Yes, your Honor.
13             THE COURT:  So as of the moment of the filing of the
14   complaint, did I have any jurisdiction?
15             MS. SARNO:  We did not know.  It was our understanding
16   that Citadel was a Nevada corporation incorporated in Nevada.
17             THE COURT:  I understand that's what you thought.  Is
18   there any dispute over the fact as of now that they are in fact
19   a Delaware corporation?
20             MS. SARNO:  The only information that I have is what
21   was given to me today.  So we have been unable to confirm that.
22   But I certainly would expect that --
23             THE COURT:  Did you look at their 10-K before you
24   filed the lawsuit?
25             MS. SARNO:  I believe we did.  We must have gotten it
                   SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
```

♀                                                                    4

```
     83oncapa
1    mixed up with another entity.
2              THE COURT:  You think there is another publicly held
3    company with registered securities that's got another 10-K that
4    is also called Citadel?
5              MS. SARNO:  To be honest, your Honor, I don't know.
6    But it is my understanding that we did check on their
7    jurisdictional issues.
8              THE COURT:  Go ahead.
9              MS. SARNO:  Notwithstanding that issue, your Honor,
10   though, we certainly believe that, given the facts that have
11   been established, we would be able to amend our claim to
12   include a Computer Fraud and Abuse Act action because of the
13   fact that we have direct evidence that documentary files of
14   ClearChannel have been tampered with and basically plagiarized,
15   which would certainly show that they have engaged in
16   misappropriation of our trade secrets through the use of the
17   computer.
                             Page 2
```

83oncapa.txt

18          THE COURT:  You certainly don't expect me to grant you
19   a temporary retraining order on the basis of a complaint you
20   haven't filed, right?
21          MS. SARNO:  I understand that, your Honor.
22          THE COURT:  Let's focus on what's before me.
23          MS. SARNO:  Sure.
24          What is before you, your Honor, is the blatant
25   conspiracy between the parties in this action.  What we have

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5

83oncapa
1    since learned in these few days since they have left is that,
2    as is mentioned in defendant's papers, from what I understand,
3    a former local sales manager of ClearChannel joined Citadel at
4    the end of February, which is exactly when his noncompete
5    agreement with ClearChannel ended.  Since then, actually within
6    days of that, four of our salespeople joined Citadel.  They
7    resigned from two different radio stations en masse and joined
8    a competing station of Citadel, WABC.
9           From what we understand, they have the exact same
10   roles at the Citadel station as they had at the ClearChannel
11   station.
12          THE COURT:  They are basically entry-level salesmen,
13   right?
14          MS. SARNO:  Yes, your Honor.
15          THE COURT:  So let's not get carried away with this.
16   That's what they are.
17          MS. SARNO:  Your Honor, we concede that.  That is not
18   what we think is an issue here.  What we think is an issue is
19   they have actually taken our confidential and trade information
20   and used it for their own use.
21          THE COURT:  Specifically what?  Where is the evidence
22   of it?
23          MS. SARNO:  Sure, your Honor.  I am happy to go
24   through that.
25          Specifically, we have clients who have said to us,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6

83oncapa
1    directly to our employees that are mentioned in our
2    declarations that these four salespeople have contacted them.
3           THE COURT:  Is it not the case that anybody can find
4    out who advertises on your stations by turning on the radio?
5           MS. SARNO:  We recognize that, your Honor.
6           That in and of itself is not what we are concerned
7    about.  What we are concerned about is the confidential
8    information that they gained in order make those contacts.  For
9    example, all of our client information, and I understand the
10   identities in and of themselves may be public, but there is a
11   lot of background information in connection with those clients.
12   For example, in our software which is called Radio Fusion --
13          THE COURT:  Is it true that Radio Fusion is a
14   third-party package that anybody can go buy?
15          MS. SARNO:  Yes.  It is not the software that we are
16   concerned about.  It's the information that's kept within the
17   software.  In that software is our pricing information, our
18   scheduling information.  That pricing is regularly updated
19   depending upon the market.
20          THE COURT:  What's the evidence that anybody either
21   took or used your internal pricing information?
22          MS. SARNO:  We know that they contacted them and

Page 3

```
                              83oncapa.txt
23   certainly used it for their solicitation.
24            THE COURT:  How do you know that?   Where is the
25   evidence of that?
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                              7
     83oncapa
1             MS. SARNO:  We know that they contacted them, and we
2    think through discovery we will be able to find that.
3             What we do have --
4             THE COURT:  Do you have an affidavit here that says, I
5    saw the defendant take the internal information and use it in
6    pitching client X; or I'm client X, defendant No. 3 pitched me,
7    and in the course of pitching me he used information about the
8    prices I paid to ClearChannel, which he could only have found
9    out because it was from ClearChannel because it was their
10   internal information?  Is there anything like that in the
11   record.
12            MS. SARNO:  No, your Honor.
13            THE COURT:  All you've got is you've got four guys who
14   you say pitched accounts, the existence of which they knew of,
15   and the existence of which as your accounts is knowable to
16   probably 7 million people in the New York City area who listen
17   to the radio, right?
18            MS. SARNO:  Your Honor, what we think is the most
19   egregious thing that's happened, and actually was the impetus
20   for our filing was last Wednesday we received an e-mail from a
21   client with a PowerPoint presentation that was attached to it
22   that had what we have referred to in our papers as the
23   Ask-the-Expert presentation.
24            That is where we have seen direct evidence that
25   Citadel has used our proprietary information.  Ask the Expert,
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                              8
     83oncapa
1    it is a program that several of our stations developed.  In
2    fact, the gentleman who developed it at ClearChannel is one of
3    the declarants, Bernhard Weiss.  He developed that over a year
4    ago.
5             On Wednesday evening we received an e-mail from one of
6    our clients saying to us, gee, this looks awfully familiar.
7    What it was is that it was ClearChannel's PowerPoint
8    presentation, but with a Citadel station on it.  In fact, some
9    of the pictures on the cover were exactly the same.  The text
10   was the same.
11            THE COURT:  Is a copy of it in your papers?
12            MS. SARNO:  Your Honor, we have it available for you
13   in camera.  Because it is proprietary we wanted to keep it
14   confidential, but we do have copies for everyone here.
15            THE COURT:  This might be a good time to hand them
16   out.
17            MS. SARNO:  Your Honor, what you will see is one
18   presentation from Z100, which is a ClearChannel station, and
19   another presentation from WPLJ, which is a Citadel station.
20            THE COURT:  You are going too fast.
21            MS. SARNO:  Sure.
22            THE COURT:  We are going to mark this Plaintiff's
23   Exhibit AA for identification.
24            You are telling me this is two different documents, is
25   that right?
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                              Page 4
```

83oncapa.txt

83oncapa
```
 1                MS. SARNO:  Yes.  It's two different documents.  You
 2    can see they are very similar.  The Z100 --
 3                THE COURT:  Ma'am, you talk far faster than I listen.
 4                MS. SARNO:  I'm sorry, your Honor.  My apologies.
 5                THE COURT:  Z100 belongs to whom?
 6                MS. SARNO:  ClearChannel.
 7                THE COURT:  I see.  So I only had one of them in front
 8    of me when you said I had two.
 9                MS. SARNO:  The Light Touch lasers.
10                THE COURT:  Yes.
11                MS. SARNO:  That is the other one.
12                THE COURT:  We will mark that Plaintiff's Exhibit AB?
13                MS. SARNO:  OK.
14                THE COURT:  AA, the one that says Z100, that's
15    ClearChannel?
16                MS. SARNO:  Yes.
17                THE COURT:  All right.  And AB?
18                MS. SARNO:  That is Citadel.
19                THE COURT:  All right.  Go ahead.  Why should I be
20    upset about this?
21                MS. SARNO:  Your Honor, the Ask the Expert program,
22    just to give you a little bit of background, is a sales program
23    of ClearChannel.
24                what they do is they allow the people within specific
25    industries to be expert for that station.  For example, this is
```
                      SOUTHERN DISTRICT REPORTERS, P.C.
                               (212) 805-0300

83oncapa
```
 1    the dental assistant expert for that station.  They go through
 2    this whole advertising program as to the DJs, you know, these
 3    people and so forth.
 4                This Ask the Expert PowerPoint that you see here was
 5    developed by a ClearChannel sales manager, Bernhard Weiss, as
 6    mentioned in his declaration, about a year ago.
 7                Last Wednesday, we received what you see as AB, 1AB,
 8    which is a PowerPoint from WPLJ radio, which is a Citadel
 9    station.  From the very beginning, your Honor, it is obvious
10    that one is taken from the other.  On the first page alone, the
11    pictures on the top are the exact same pictures.
12                THE COURT:  Are those pictures trade secrets?
13                MS. SARNO:  No, your Honor.  I am just saying that
14    that is probably what called it to the client's attention, but
15    if you look further, you will see how much more similar it is.
16    The second page is called "Marketing Strategy" on the Z100
17    proposal.  It's also called "Marketing Strategy" on the PLJ
18    proposal.  The text of it, notwithstanding the difference in
19    font, is exactly the same.
20                THE COURT:  The theory of protection is what?
21                MS. SARNO:  Your Honor, this is a sales program that
22    is used exclusively by the account executives of ClearChannel.
23    This is how they pitch to their clients on how you can become
24    well known in the industry as the expert of our station.
25                THE COURT:  Let me ask you this.  When you pitch to
```
                      SOUTHERN DISTRICT REPORTERS, P.C.
                               (212) 805-0300

83oncapa
```
 1    the client, does the client who receives the pitch sign a
 2    confidentiality agreement?
 3                MS. SARNO:  I don't know.
```
                                Page 5

83oncapa.txt

```
 4          THE COURT:  So, in the absence of evidence that that's
 5   the case, then you are publicly performing this pitch all over
 6   the place in circumstances in which the entire audience, to
 7   wit, all of the prospective customers to whom you are making
 8   this pitch, are free to tell anybody, let me tell you how
 9   ClearChannel just pitched my business here, right?
10          MS. SARNO:  Yes, your Honor.
11          But that doesn't allow Citadel to take the program
12   with it and take it as their own.
13          THE COURT:  Why not?
14          MS. SARNO:  It was a proprietary sales method of
15   theirs.
16          THE COURT:  What does "proprietary" mean in this
17   context?
18          MS. SARNO:  It was a manner in which they attracted
19   sales clients, and it was exclusive to their stations.  They
20   are allowed to take this method of -- I am not following your
21   Honor.
22          THE COURT:  You are speaking in totally bottom-line
23   conclusions.  I am asking you to explain what is proprietary
24   about it, and you tell me that it is proprietary and
25   exclusively theirs.  Frankly, that is not legal analysis.
```

             SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

                                                          12
83oncapa
```
 1   That's rhetoric.
 2          Sometimes things are proprietary because they are
 3   trade secrets.  Sometimes they are proprietary because they are
 4   copyrighted.  Sometimes they are proprietary in a specialized
 5   sense because they're trademarked.  Sometimes they are
 6   proprietary because they are patented.
 7          We are not talking about patents here.  We are not
 8   talking about trademarks here.  When I inquired about
 9   copyright, I drew a blank from you in the sense that you
10   weren't asserting that.
11          So, it must come down to trade secrets.  Now, if the
12   theory of protection is trade secrets, and you are making this
13   pitch available without restriction to anybody who is a
14   prospective customer, then what is the basis for calling any of
15   it proprietary?
16          MS. SARNO:  Your Honor, within the presentation is not
17   only the way in which the -- within the presentation is the way
18   the advertisement is actually going to be done, the methodology
19   of it, the streaming media of it, the use of key words, the
20   e-mail data.
21          Certainly what they are intending to do by showing
22   this particular PowerPoint, not necessarily the -- even if the
23   PowerPoint itself is public, the fact that they intend to use
24   this means of advertising, that is proprietary.
25          THE COURT:  Why?
```

             SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

                                                          13
83oncapa
```
 1          MS. SARNO:  Because they are going to use our method
 2   of sales for their station.
 3          THE COURT:  So what?
 4          MS. SARNO:  That would certainly fall under unfair
 5   competition.
 6          THE COURT:  Suppose you were a car dealer, and at the
 7   end of every August, you got your dealership owner to go on
 8   television with a silly hat saying, "Come on down, greatest
```
                        Page 6

83oncapa.txt
```
 9    deals in history.  Get here by Labor Day and you are going to
10    get a fabulous deal.  We'll match any price."
11              Well, that's the way he intends to sell cars.
12              Do you mean to tell me that if another dealer
13    somewhere else decided to do the same thing, that person
14    couldn't lawfully do it because somebody else was doing it?
15              I don't think so.
16              MS. SARNO:  Your Honor, I agree with you with regard
17    to that.  That means of sales is certainly far beyond what is
18    going on here.
19              Here we have an entire sales program that was
20    developed that shows how they are going to do banner ads, how
21    they are going to do streaming media, how they are going to do
22    these things, and they would not have had knowledge of that had
23    they not taken them from ClearChannel.
24              THE COURT:  I don't mean to be rude, I really don't.
25    But the question "so what?" has not yet gone out of my mind.
```
              SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                14

83oncapa
```
 1              This is a perfectly obvious way to sell radio
 2    advertising.  It is hard to imagine doing these things in other
 3    ways.
 4              I don't see the big deal.  I don't see a trade secret
 5    because it is not confidential.  I don't see a patent.  I don't
 6    see a copyright.  I don't see any of that.
 7              So if you have an argument at all, it's some kind of a
 8    fiduciary duty argument.  It is hard for me to see that the law
 9    of fiduciary duty extends so far as to prevent people from
10    doing what is really plain vanilla in the industry.
11              MS. SARNO:  Your Honor, we would certainly not think
12    this particular program is plain vanilla in the industry.  I
13    understand that selling radio ads to different stations and
14    using your usual sales pitch may fall under that.  However,
15    this is a specific program that has done very well.  The fact
16    that they are now going to use it for their stations dilutes
17    the market of this particular program that has done quite well
18    for ClearChannel.
19              THE COURT:  There is a word for that.  The word is
20    competition.
21              MS. SARNO:  But, your Honor, in this particular case
22    we believe it is unfair competition because they have taken the
23    information from ClearChannel and used it for their own
24    purposes.  Certainly the fact that we discovered this
25    information nearly seven business days since they left is
```
              SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                15

83oncapa
```
 1    evidence that this is -- they left ClearChannel.
 2              THE COURT:  What if they rewrote page 2 of the
 3    exhibit?
 4              MS. SARNO:  Your Honor, I believe and we believe that
 5    it's the idea behind the PowerPoint that --
 6              THE COURT:  Tell me what the idea is.  What is the
 7    idea?
 8              MS. SARNO:  The idea is what they do is they reach out
 9    to salespeople and they have an entire program of you click on
10    the website, there's different aspects to it, but this is one
11    aspect.  You click on the website.  It is called Ask the
12    Expert.
13              For example, on Lite FM it's one of the banners that
```
                        Page 7

```
                           83oncapa.txt
14    you can click.  It says, plastic surgery, dentistry, and then
15    you click on that and it has different endorsements and
16    different information on this particular --
17            THE COURT:  OK.  I will go with you so far.
18            There are people who have bought this from you, right?
19        MS. SARNO:  Yes.
20            THE COURT:  So if I turn on the radio and listen long
21    enough, I am going to hear an Ask the Expert bit, right?
22        MS. SARNO:  Yes.
23            THE COURT:  Some guy is going to come on and say, I'm
24    a chiropractor, and I have got this fabulous way of
25    manipulating somebody's vertebrae and so forth.  And if I am a
                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```
                                                                    16
```
      83oncapa
1     competing ad salesman, it doesn't take much to figure out that
2     if I am hearing that often that is a good way to sell
3     advertising, right?  Am I not right?
4         MS. SARNO:  Yes, your Honor.
5             THE COURT:  So what's the problem?
6         MS. SARNO:  The problem is that they have taken the
7     exact methods of ClearChannel and used it for their own.  I
8     understand that maybe the concept is the same, but what they
9     have actually done here is taken everything that they've
10    learned from ClearChannel and taken it over to Citadel.
11            Just to give you some more background, your Honor, two
12    of the defendants, Mr. Gross and Mr. Campbell, attended
13    ClearChannel training less than three business days from the
14    day they resigned.
15            We certainly think that what they have done is they
16    have been taking all of the methods and all of the information
17    that they gained from ClearChannel and brought it over to
18    Citadel.  Whether it was by design, we can't make that call,
19    but certainly it's suspicious.  We certainly think it would
20    give us a likelihood of success on the merits because what had
21    happened, just to give you a time line, is Jonathan Mason left
22    ClearChannel in November of 2007.  He had a noncompete
23    agreement and a nonsolicitation agreement that just expired at
24    the end of February 2008.
25            Immediately thereafter, the week afterwards, we get
                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```
                                                                    17
```
      83oncapa
1     notices of resignation from these four people.  Two of those
2     people attended our training process called Solution Based
3     Selling the Wednesday before they resigned.
4             They have now taken all of that information and
5     brought it over to Citadel.  Certainly in that time frame they
6     gained so much information about ClearChannel products,
7     ClearChannel --
8             THE COURT:  What did they gain?  Is there any showing
9     here in the record?
10        MS. SARNO:  They gained all of the training that they
11    received from ClearChannel University, your Honor.
12            THE COURT:  Listen, the last time I looked,
13    ClearChannel University was not in the Ivy League.  To tell me
14    ClearChannel University, it is just more advertising hype.
15    It's meaningless.  It is an employee training program.
16            what were they trained on?  What is the information
17    that's so sensitive?
18        MS. SARNO:  Within that program, your Honor, they
                             Page 8
```

83oncapa.txt
```
19    learned ClearChannel's sales techniques, ClearChannel tips --
20        THE COURT:  what specific techniques did they learn,
21    and what's the evidence that they are trade secrets?  What is
22    the evidence, for example, that they are not exactly the same
23    as the sales techniques that Citadel was using before they ever
24    went to Citadel?
25        MS. SARNO:  Your Honor, we would not know what
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

18

83oncapa
```
1    Citadel's sales techniques are, but certainly these are
2    techniques that have taken years and an extensive amount of
3    resources to develop.
4        THE COURT:  where is the evidence of that?
5        MS. SARNO:  We have the declaration from the
6    salesperson, and we don't have it here, but the actual booklets
7    and the training programs are quite extensive.
8        THE COURT:  If I had in here XYZ Chevrolet, they could
9    make exactly the same arguments at this level of generality.
10    They would tell me that our car salesmen have got all this
11    wonderful training that we have developed over our 60 years in
12    business, and wowee, it's fabulous.  At the end of the day it
13    may be nothing more than what each and every one of us who has
14    ever bought a car knows for having been through the process.
15    This is all generalities.
16        MS. SARNO:  Your Honor, what the solution based
17    selling includes are client resources, where exactly they
18    should go within the company to get certain information.  They
19    have --
20        THE COURT:  where within ClearChannel?
21        MS. SARNO:  Yes, where within ClearChannel.
22        THE COURT:  You think that's extremely valuable to
23    Citadel, do you?
24        MS. SARNO:  Sure.
25        THE COURT:  why?
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

19

83oncapa
```
1        MS. SARNO:  The information that they now have they
2    know where --
3        THE COURT:  You are telling me that it is very
4    important for Citadel to show where within ClearChannel they
5    should go to find something out if they were selling ads for
6    ClearChannel?
7        MS. SARNO:  Yes, your Honor.  They had access to that
8    while they were there.
9        THE COURT:  So what?
10    They probably knew where the men's room was too, but I
11    don't think that would be too valuable to Citadel in most
12    circumstances.
13        MS. SARNO:  Your Honor, the information that they
14    gained during the time that they were there is certainly
15    important, could certainly be important to Citadel.
16        In addition to just that information, they also had
17    all the access to the different ClearChannel products, all the
18    different proposals into the future that they planned on
19    creating.
20        within that Radio Fusion, your Honor -- I don't want
21    to lose sight of what was in that client information that they
22    had.  We understand that the client lists in and of themselves
23    are readily available.  If I turn on the radio it is available.
```
Page 9

83oncapa.txt

24    But it is the information about those clients which is what was
25    proprietary.  In the Radio Fusion, which is a third-party
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                    20
83oncapa
1    program provided by Viero, in there was the company's pricing,
2    scheduling, history of sales.
3            THE COURT:  Is there any evidence they walked out of
4    there with a piece of paper or a CD or a magnetic medium that
5    has any proprietary information on it?
6            MS. SARNO:  Not at this time, but certainly that may
7    be developed.
8            THE COURT:  You think they could remember all this
9    stuff if they ever looked at it?
10            MS. SARNO:  Certainly the names of the people could be
11    remembered, but not the information in there because that
12    information is quite detailed.  It shows the pricing points, it
13    shows differences in pricing points.
14            THE COURT:  All right.  Don't you think that if they
15    were selling ads to an account against ClearChannel and
16    ClearChannel was offering the account a better deal that the
17    account would say, "Hey, I am being offered the following by
18    ClearChannel.  You are going to have to beat that"?
19            Don't you think that's likely?
20            MS. SARNO:  Not necessarily, your Honor.  I mean, even
21    if that were the case, certainly, it would be a different sales
22    pitch if I were to know that ahead of time and wouldn't have to
23    get into that negotiation.  Certainly it could lead to better
24    pricing for them.
25            THE COURT:  But you have no evidence that any of them
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                    21
83oncapa
1    has that information, right?
2            MS. SARNO:  Well, they had access to it at that time,
3    your Honor.
4            THE COURT:  Right.  There was a time when I had access
5    to the entire contents of the Harvard University libraries, but
6    I can't repeat them to you.
7            MS. SARNO:  Your Honor, but these particular people
8    had focused on particular clients.  They focused on particular
9    industries, and each of them were different.  Certainly they
10    can remember that information with regard to the ones that they
11    dealt with closely.
12            THE COURT:  When you say "remember that information,"
13    you mean specifically what?
14            MS. SARNO:  For example, the history of a client's
15    sales within that radio station, the pricing and the change of
16    pricing, the specific information about who to contact there
17    and how to pierce the company.  I understand that in the radio
18    industry it can be very difficult to pierce client contacts.
19            THE COURT:  Anything else?
20            MS. SARNO:  Your Honor, just to touch on it as well,
21    certainly the scope and duration of this agreement is very
22    narrow and should be enforced.  180 days within a small
23    industry of radio, within the industry of radio and television
24    in the New York area is very reasonable.
25            THE COURT:  The law in New York is that those
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                    22

83oncapa.txt
83oncapa
1 agreements, correct me if I am wrong, are utterly unenforceable
2 except to the extent necessary to protect trade secrets.
3           Isn't that essentially right?
4           MS. SARNO:  Absolutely, your Honor.
5           THE COURT:  Where are the trade secrets?
6           MS. SARNO:  Again, we believe the trade secrets are
7 within the advertising techniques and programs that they not
8 only have been aware of but have already used for the benefit
9 of Citadel.  The information within Radio Fusion that is kept
10 about each particular client and each client that they dealt
11 with we certainly believe is proprietary to ClearChannel, and
12 the fact that they have reached out to them has shown malice on
13 their part that they are already engaging in such
14 misappropriation and unfair competition.
15           THE COURT:  The argument proves more than a little too
16 much.  It proves they would like to continue supporting their
17 families or eating.  And it proves that they know that these
18 are accounts, which anybody else in New York who turns on a
19 radio knows, right?
20           MS. SARNO:  Your Honor, it is not the fact that they
21 know the accounts, but the information about the facts that
22 we're concerned about.
23           THE COURT:  But you don't know that.  You are guessing
24 as to that.  OK.  Thank you very much.
25           MS. SARNO:  Thank you, your Honor.
                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
                                                              23

83oncapa
1           THE COURT:  Mr. Feigelson.
2           MR. FEIGELSON:  Good afternoon, your Honor.  Jeremy
3 Feigelson from Debevoise & Plimpton.  We represent the
4 individual defendants as well as Citadel, with me is my
5 colleague Tricia Bozyk Sherno.
6           THE COURT:  What about this Ask the Experts bit?
7           MR. FEIGELSON:  Let's go right there, Judge.
8           First of all, you have in the record, we submitted
9 this afternoon some declarations from each of the four
10 individual defendants disclaiming any knowledge of the
11 PowerPoint presentation that we have just seen for the first
12 time and how, if it made its way into Citadel's hands and it
13 was utilized in any way to create the Citadel version of that
14 PowerPoint, these four individuals know nothing about it.  That
15 is now a matter of record, Judge.  So it provides no basis for
16 any injunction against them.
17           We have had this case, your Honor, since late Friday
18 afternoon.  Over the holiday weekend we have been able to learn
19 a lot of facts, but not all the facts.  I cannot, sitting here
20 today, give your Honor a good explanation of the degree to
21 which the slides are similar and what role anyone within the
22 Citadel organization may have played.  That is something
23 obviously that we will look into.
24           But I want to emphasize, your Honor, that the program
25 itself, Ask the Expert, as your Honor suggested in the colloquy
                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
                                                              24

83oncapa
1 with Ms. Sarno, there is really nothing special or confidential
2 or proprietary about it.
3           THE COURT:  It is not dissimilar to Car Talk in a
4 segment called "Stump the Chumps."
                         Page 11

83oncapa.txt
```
 5          MR. FEIGELSON:  I am a fan of that show, your Honor,
 6  so I would not disagree.  I was going to direct the court to
 7  the Campbell declaration, which is Exhibit 5 in the declaration
 8  package that we handed up to your Honor earlier.
 9          If the Court looks at Exhibit E to the Campbell
10  declaration, you will see there are two Internet promotions for
11  radio sales programs called Ask the Expert which appear to be
12  essentially identical.  These are from two other radio station
13  companies, Sinclair and Entercom, which have nothing to do with
14  either Citadel or ClearChannel.
15          This is a concept, your Honor, that has been out there
16  in the radio industry for --
17          THE COURT:  For a million years.
18          MR. FEIGELSON:  -- years and years.
19          While the similarity between the couple of the slides
20  and the PowerPoint is a matter of curiosity, Judge, I think
21  it's fair to say that it is of no legal consequence,
22  particularly since the program itself does not embody any kind
23  of a protectable concept.  It's what everybody in the business
24  does.  It is how everybody sells.
25          If the Court has other questions about Ask the Expert,
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                25

83oncapa
```
 1  I would be pleased to try to answer them.  Otherwise I do want
 2  to touch on jurisdiction.
 3          THE COURT:  I am afraid of asking the expert.
 4          MR. FEIGELSON:  Jurisdiction, your Honor, is quite a
 5  serious issue.  Citadel's incorporation is a matter of public
 6  record.  The 10-K that is in the exhibit package that we handed
 7  up, that we submitted to chambers earlier today, Exhibit 9 to
 8  the Feigelson declaration, is the cover page from Citadel's
 9  10-K, that, of course, is a publicly available document, your
10  Honor.  We have pulled it down from Citadel's website.  It is
11  there for the world to see, including ClearChannel and its
12  counsel.  It is a complete answer to the assertion that there
13  is diversity jurisdiction here.
14          To be clear, your Honor, the complaint only asserts
15  one ground for federal jurisdiction.  That is diversity.
16  Diversity, of course, requires complete diversity.
17          You will see in the caption that Capstar asserts that
18  it is a Delaware corporation.  We now know that Citadel
19  Broadcasting also is a Delaware corporation.  That means, your
20  Honor, that wherever this case belongs, if it belongs anywhere,
21  it does not belong in federal court.
22          THE COURT:  Not necessarily, because if I thought it
23  appropriate, I could permit Citadel to be dropped as a party,
24  right?
25          MR. FEIGELSON:  You could, your Honor.  We are
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                26

83oncapa
```
 1  certainly aware of that possibility.  That's why in our papers
 2  we did go to on to address the merits.  I will go into those
 3  issues now.
 4          Our position, your Honor, is that certainly there is
 5  no basis in today's record for a TRO.  There will never be a
 6  basis, even after the record is developed, but certainly not
 7  today.
 8          Today, after two days of investigation that we have
 9  been able to document very thoroughly in our papers, Judge,
```
                                Page 12

83oncapa.txt

10    there is absolutely nothing proprietary or confidential that is
11    at issue in this business dispute.
12            This is a dispute about front-line radio ad salesmen,
13    as your Honor noted. It is not about people with access to
14    high-level corporate information. It is not about the secret
15    formula for Coke.
16            We are talking about a handful of categories of
17    information. Each of them is shown very comprehensively in our
18    papers, Judge, based on just two days of investigation, to be
19    matters of public record. Customer identities, not only your
20    Honor, are they available to any listeners of the radio, but
21    again, pointing to the Campbell declaration, if the Court looks
22    at Exhibit B to the Campbell declaration, this is a report from
23    a subscription based web service called Media Monitors. What
24    this shows, your Honor, is, with a couple of clicks of a mouse,
25    any salesmen in this industry can call up an extremely detailed
              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

                                                              27

83oncapa
1     station-by-station, day-by-day, day part-by-day part report of
2     exactly who is advertising on what radio stations.
3             It is a report that your Honor sees in the record here
4     was actually called up by Mr. Campbell, one of the individual
5     defendants, using his Citadel-issued log-on ID. He's able to
6     call up all the detail for WKTU, which is the station he used
7     to sell for at ClearChannel.
8             Anyone can do that who has access to Media Monitors.
9     It is a totally standard industry tool, and it is the way that
10    salesmen using this public information fairly go after the
11    competition regardless of whether they used to work at the
12    competing company or not. There is an enormous amount of
13    detail available out there that doesn't even require turning on
14    the radio.
15            As far as customer contact information, it is also a
16    matter of record that it is extremely easy to obtain. We are
17    talking about salesmen who are targeting primarily small and
18    mid-sized businesses in the New York area, car dealerships,
19    restaurants, doctors. It does not take a lot of work, your
20    Honor, to find out who at one of these businesses is the right
21    contact person to make an advertising decision. It is in
22    Mr. Campbell's declaration, again undisputed, that all it takes
23    is typically a couple of clicks of a mouse maybe a phone call
24    or two and you've got the right person. It is as simple as
25    that.
              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

                                                              28

83oncapa
1             The contact information, to the extent it is not
2     already publicly available by looking on a business' website,
3     is very easily re-created by anyone without special knowledge
4     or information.
5             The other categories of information that are at issue
6     here, Judge, I think are the software, the training, and the
7     specific materials. The software I think it's very clear is
8     not proprietary at all. It is described explicitly in the
9     papers that ClearChannel submitted as proprietary software. It
10    is just not. Every software system that's been described is
11    publicly available for purchase by any radio station company.
12            I think it is also clear from the colloquy we just
13    heard that there is no evidence that these individuals had
14    taken any information from those systems, and their
                          Page 13

83oncapa.txt
15    declarations confirm that.  Those are now in the record, too.
16         The training is generic training.  How do you sell ads
17    on radio?  Again, this is not rocket science, your Honor.  As
18    for specific materials, what we have been able to learn and
19    what the declarations confirm is that these individuals took
20    their contacts lists because those are public information.
21    They provided client contact information for clients whose
22    identity as customers of the ClearChannel station is already
23    well known.  In a couple of cases people seemed to have taken
24    some presentation materials with them, which they have now
25    promised that they will return and which they have not
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                                    29

83oncapa
1     consulted or used any way in the few days that they have been
2     working for WABC.
3          THE COURT:  What about the question of whether they
4     ought to be permitted to contact accounts that were either
5     handed to them at ClearChannel or that they developed beginning
6     while they were at ClearChannel.
7          MR. FEIGELSON:  I think ClearChannel's own views on
8     that are quite important, your Honor.  One of the things we've
9     suggested in our papers is that we agree with ClearChannel that
10    there ought to be expedited discovery.  One of the major topics
11    we would propose to pursue in expedited discovery is how
12    ClearChannel looks at this very issue, because two of the
13    individual defendants, your Honor, have stated in their
14    declarations that when they came to ClearChannel, they were
15    encouraged or even specifically directed to pursue clients from
16    former radio station companies where they used to work.
17         This is how the business functions, your Honor.  It is
18    how ClearChannel functions, too.  So should they be allowed to?
19    I think they should certainly be allowed to do at Citadel what
20    ClearChannel encouraged them to do when they were at
21    ClearChannel.
22         THE COURT:  I'm chuckling because this is deja vu all
23    over for me.  I will explain why later.
24         MR. FEIGELSON:  In any event, your Honor, should they
25    be allowed to -- again it goes back to the question of is there
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                                    30

83oncapa
1     anything confidential or proprietary here.  Anyone could come
2     to a sales job like this, your Honor; and, equipped with the
3     same tools that any of these four individual defendants have,
4     could quickly reconstruct the same client profiles and customer
5     contact information for all the clients of a ClearChannel
6     station.
7          So it is fair competition, your Honor, and there is no
8     reason why these individuals should be forbidden to engage in
9     it.
10         It is also important to note, your Honor, that some of
11    the clients contacts we are talking about here are contacts
12    that these gentlemen brought with them from previous
13    employment.  Certainly, it would be odd to suggest that
14    ClearChannel acquires a proprietary interest in a customer
15    relationship the individual had already developed while working
16    at another employer.
17         THE COURT:  This is just like the Wall Street rating
18    cases when the brokers go from one house to another.  Every
19    firm on Wall Street has the papers on both sides of the issue
                              Page 14

83oncapa.txt

20    in the word processor ready to go depending on whether they are
21    rating or being rated.
22            MR. FEIGELSON:  Well, your Honor, the fact that all
23    these categories of information that the plaintiffs have put in
24    issue are clearly matters of public information and common
25    sense, that is really the thread that pulls you through all of
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                                31
83oncapa
1    the legal theories that have been thrown up in the plaintiff's
2    papers.
3            All of those legal theories, including the proposition
4    that the noncompete should be enforced, they all require an
5    evidentiary showing of actual trade secrets and confidential
6    information.
7            I think it's very clear that there's been no showing.
8    In fact, with our submission today, your Honor, the record
9    tilts very heavily in the opposite direction.
10            We would be pleased to engage in expedited discovery.
11    We have included in our submission a proposed order and some
12    initial discovery requests.
13            We are ready to be back here in a matter of weeks
14    after quick document productions and quick depositions on both
15    sides to show your Honor on the basis of a full record exactly
16    why this case as absolutely no merit.
17            THE COURT:  Is there any reason why I shouldn't
18    consolidate the preliminary injunction motion with the trial on
19    the merits under Rule 65(a)(2)?
20            MR. FEIGELSON:  Your Honor, that is a question that
21    obviously I need to consult with my client on before answering
22    definitively, but my snap reaction is it sounds like a
23    reasonable idea.
24            THE COURT:  Thank you.
25            Ms. Sarno?
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                                32
83oncapa
1            MS. SARNO:  Your Honor, just to address a few of the
2    point that were raised by defendant, we are well aware of Media
3    Monitors.  It was an Internet program that is available to
4    everyone and is certainly known to all account executives.
5            What we are talking about is what is available on the
6    information that is within Radio Fusion.  Radio Fusion,
7    although it is provided by Viero, has been particularly
8    tailored for ClearChannel.  In that is specific historical
9    purchase information, product information, benefits
10    information, pricing, scheduling, and sponsorship information.
11            This is all information that was kept about the
12    clients that these four individuals worked with.  These four
13    individuals developed goodwill, and for the most part, with the
14    exception ever a few of them, were developed at ClearChannel
15    and were prior clients of ClearChannel long before they were
16    there.  They now have this information to take with them.
17            With regard to the allegation that these gentlemen
18    were encouraged to solicit clients from their former employers,
19    I am aware of one of them, and, yes, he was encouraged because
20    there was no noncompete agreement.  It is my understanding one
21    of the gentleman came from another radio station, and there was
22    no --
23            THE COURT:  That ultimately doesn't matter if you are
24    right on the law, right?
                        Page 15

83oncapa.txt
25          If in fact it is actionable under New York law on the
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

33

83oncapa
1    theory of unfair competition to compete with a former employer
2    for a customer to whom the changing employee was introduced
3    while at the former employer, then the absence of a noncompete
4    doesn't matter, right?
5          MS. SARNO:  Yes, your Honor.  But in this particular
6    situation, they took the goodwill and they took the client, the
7    confidential client information with them and they are now
8    using it.  They have admitted that they have contacted --
9          THE COURT:  Don't you think that when these guys you
10   hired and encouraged to go after their former accounts came to
11   you that they knew what the business history and the
12   relationship between their former employer and the clients you
13   urged then to go after was?  They couldn't have avoided knowing
14   that if your theory holds water.
15         MS. SARNO:  That is true.  But without a contractual
16   agreement restricting them or a nonsolicitation or
17   noncompete --
18         THE COURT:  If your unfair competition theory is
19   right, the noncompete doesn't matter, does it?
20         MS. SARNO:  I understand where you are going, your
21   Honor, but certainly that goes to the ones that they brought
22   with them.  From my understanding, they're putting those aside,
23   almost all of the clients that they worked with.
24         THE COURT:  It doesn't go to the ones they brought
25   with them.  It goes to what your client's practice is.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

34

83oncapa
1          Let us posit for the sake of discussion that it is
2    unfair competition for an employee to move from employer A to
3    employer B and then to solicit employer A's clients because he
4    knows things about employer A's clients that he learned while
5    working for employer A.
6          That's your premise, right?
7          MS. SARNO:  Yes.
8          THE COURT:  Let's assume that to be true.
9          If your practice is, notwithstanding that principle,
10   to take somebody who comes from employer A and goes to work for
11   you to solicit the accounts he served while employed by
12   employer A, then you are regularly encouraging and engaging in
13   unfair competition, right?
14         MS. SARNO:  If the circumstances are the same.  The
15   reason why I say that is I also, in addressing your Honor, the
16   radio station -- for example, I believe it was Mr. Carpino that
17   came from a different radio station that brought over some
18   clients and he contacted them.  It is my understanding with
19   regard to him he came from a station that was not in the same
20   market as ours.
21         That is the situation where he was encouraged to
22   solicit.  What we are most concerned about are the clients.
23         THE COURT:  How many thousands of stations does
24   ClearChannel have?  11,000 or 12,000.
25         MS. SARNO:  12,000.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

35

83oncapa
                        Page 16

83oncapa.txt

```
 1          THE COURT: Do you think you could identify more than
 2  about 11 markets in the United States that you are not in?
 3          MS. SARNO: Your Honor, I am talking about the station
 4  that they went to and the station from which they came.  For
 5  example, all four of these went to WABC.  WABC and WKTU and
 6  Lite FM are within the same market.  That certainly is
 7  different from all the different markets that ClearChannel as a
 8  whole belongs to.  What we are comparing is what station they
 9  come from and where they went.
10          THE COURT: OK.
11          MS. SARNO: Certainly, your Honor, we believe that
12  information that they gained and the goodwill that they
13  developed with these particular client contacts are proper
14  protectable interests of the company.
15          Thank you.
16          THE COURT: OK.  I have the same question to you on
17  the 65(a)(2) consolidation that I asked Mr. Feigelson.
18          MS. SARNO: Your Honor, I as well would have to
19  consult with my client.  But it certainly seems like an
20  expedited way to address the issue.
21          THE COURT: Let's talk about scheduling.
22          What do you have in mind?  I could try this case in
23  April sometime.
24          MS. SARNO: Your Honor, I understand that, if I may
25  from here, I have not even had a chance to take a look at
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```

36

83oncapa
```
 1  defendant's proposed schedule.
 2          THE COURT: I frankly wasn't focused on that either.
 3  What about setting this down for April 23.  Then if it takes
 4  more than a day, I think I can continue past that.  This is
 5  unlikely to take more than two, two and a half days, right?
 6          MS. SARNO: I don't think so, your Honor.
 7          THE COURT: OK.  Let's say 9:30 on April 23, at least
 8  the preliminary injunction hearing and, unless you can persuade
 9  me otherwise, trial on the merits.
10          There is no jury demand, right?
11          MS. SARNO: No, your Honor.
12          THE COURT: Mr. Feigelson, there's not going to be a
13  jury demand, right?
14          MR. FEIGELSON: Not from our side, your Honor.
15          THE COURT: So 9:30 on the 23rd.
16          Expedited discovery you have agreed on.  It is
17  perfectly OK with me.  I am not going to grant a temporary
18  restraining order.
19          First of all, I'm by no means persuaded that there is
20  a substantial threat of irreparable injury.  There's been a lot
21  of talk of generalities, but I don't see any hard facts.
22          That goes also to the issue of likelihood of success
23  on the merits.  With respect to that point, there's the
24  additional problem that it appears, at least on the present
25  state of the matter that diversity is incomplete, at least as
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```

37

83oncapa
```
 1  it respects Citadel, and maybe more broadly there will be no
 2  jurisdiction.  We will see what the future holds on that.  But
 3  I just don't see any reason for a temporary restraining order
 4  here.
 5          Now, if the plaintiff wants to press for a preliminary
                          Page 17
```

83oncapa.txt
```
 6   injunction, you can file more papers and I'll see whether I get
 7   to it before April 23, but no temporary restraining order.
 8               Let's get to the rest of the schedule.
 9               MR. FEIGELSON:  Your Honor, if it is acceptable to the
10   Court, Exhibit 2 to my declaration is a proposed scheduling and
11   confidentiality order which lays out some dates.  We did not
12   have a chance to consult with plaintiff's counsel on this ahead
13   of today's hearing, but it is there for everyone to look at
14   now.
15               THE COURT:  Ms. Sarno, what is your comment on that.
16               MS. SARNO:  Your Honor, we could certainly expedite
17   our service of document requests.  However, we would ask that
18   it be until Wednesday as opposed to tomorrow, 10:00 a.m. on
19   3/26.
20               THE COURT:  Fine.
21               Document requests to be served by March 26.
22               Document production to be finished by -- what do you
23   want to do on that.  A week from today?
24               MS. SARNO:  A week from today.
25               THE COURT:  OK.
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

38

83oncapa
```
 1               March 31, completion of document requests.
 2               Given that we have the hearing on the 23rd, do you
 3   want to go beyond April 7 on depositions?
 4               MS. SARNO:  Yes, please.
 5               THE COURT:  How much further?
 6               MS. SARNO:  A week thereafter.
 7               THE COURT:  OK.  Depositions and all other discovery
 8   to be completed by April 14.
 9               Exchange premarked exhibits, exhibit lists, and
10   witness lists by April 21.  We will be ready to go on the 23rd.
11               Anything else that we need to do?
12               MR. FEIGELSON:  Your Honor, our proposed order
13   included some confidentiality provisions.  I don't want to
14   impose on my adversary to try to agree on those on the spot.
15   Perhaps we should submit an order that embodies --
16               THE COURT:  Submit a pretty standard confidentiality
17   order and I will sign it.
18               MR. FEIGELSON:  Thank you, your Honor.
19               THE COURT:  Is there something else?
20               Let's go off the record for a minute.
21               (Discussion off the record)
22               THE COURT:  OK.  If you have problems on discovery,
23   you will let me know.  Thank you, folks.
24               (Adjourned)
25
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Page 18

**TAB B**

**Feigelson, Jeremy**

| | |
|---|---|
| **From:** | Feigelson, Jeremy |
| **Sent:** | Tuesday, March 25, 2008 5:53 PM |
| **To:** | 'Sarno, Lynnette' |
| **Cc:** | Sherno, Tricia B. |
| **Subject:** | RE: Capstar Radio v. Citadel, et al. |

**Attachments:**    dpny-22699079-v2-Scheduling and Confidentiality Order.DOC



dpny-22699079-v2-
Scheduling an...

        ear Lynnette:

As discussed, we have converted our proposed scheduling order into a stipulation and
order.  The calendar dates have been changed per the discussion at the hearing yesterday.
We have added a statement that the April 23 hearing will be a trial on the merits.  The
confidentiality provisions are the same.

We look forward to your comments or signoff.

Thank you -

Jeremy

Jeremy Feigelson
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022
Direct dial: 212-909-6230
Direct fax:  212-521-7230
jfeigelson@debevoise.com

        *          *          *          *          *          *          *          *
*

PRIVILEGED AND CONFIDENTIAL

This e-mail message is intended only for the use of the individual or entity to which it
is addressed and may contain information that is privileged, confidential and exempt from
disclosure.   If you are not the intended recipient, please do not disseminate, distribute
or copy this communication, by e-mail or otherwise.  Instead, please notify us immediately
by return e-mail (including the original message in your reply) and by telephone (you may
call us collect in New York at 1-212-909-6000) and then delete and discard all copies of
the e-mail.  Thank you.

_____

From: Yu, James [mailto:JYu@seyfarth.com]
Sent: Friday, March 21, 2008 6:51 PM
To: Feigelson, Jeremy
Cc: Galant , Gloria; Sarno, Lynnette
Subject: Capstar Radio v. Citadel, et al.


Dear Mr. Feigelson:

Per the attached letters, copies of the documents filed with the Court today have been
sent by Federal Express to each of the individual named defendants in the above-referenced

action.


James S. Yu
Seyfarth Shaw LLP
620 Eighth Avenue
New York, New York 10018-1405
Direct:  (212) 218-5524
Main Fax:  (212) 218-5526
Direct Fax: (917) 344-1262
jyu@seyfarth.com

---

Any tax information or written tax advice contained herein (including any attachments) is not intended to be and cannot be used by any taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer. (The foregoing legend has been affixed pursuant to U.S. Treasury Regulations governing tax practice.)

This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). If you are not the intended recipient, any disclosure, copying, distribution, or use of the contents of this information is prohibited and may be unlawful. If you have received this electronic transmission in error, please reply immediately to the sender that you have received the message in error, and delete it. Thank you.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Capstar Radio Operating Company, a Delaware       :
Corporation,                                       :
                                                   :
              Plaintiff,                            :
                                                   :
       v.                                           :    No. 08 CV 2976 (LAK)
                                                   :
Anthony Campbell; Louis Carpino; Adam Gross;       :    **STIPULATION AND ORDER**
Jose Luis Torres; Citadel Broadcasting Corporation,:    **REGARDING SCHEDULING**
a Nevada Corporation; and John Does 1-10,          :    <u>**AND CONFIDENTIALITY**</u>
                                                   :
              Defendants.                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

The parties, by their undersigned counsel, stipulate and agree as follows:

1.    Discovery will take place on an expedited basis, as follows:

| Service of document requests | So as to be received by 10 a.m. on March 26, 2008 |
|---|---|
| Production of documents pursuant to document requests | So as to be received by 4 p.m. on March 31, 2008 |
| Service of deposition notices | So as to be received by 10 a.m. on April 7, 2008 |
| Depositions complete | By 5 p.m. on April 14, 2008 |
| Exchange pre-marked exhibits and witness lists | So as to be received by 10 a.m. on April 21, 2008 |

2.    The court will hold an evidentiary hearing on April 23, 2008. Pursuant to Fed. R. Civ. P. 65(a)(2), this hearing also shall function as trial on the merits.

3.    With respect to confidentiality, the following rules will govern:

    a.    Any party producing documents, answers to interrogatories, responses to requests for admissions, testimony or other information in this litigation may designate such documents or information, or any part thereof, as "Confidential Material." Confidential Material includes those files, documents,

computerized information, testimony or other information furnished by a party in the course of pretrial discovery in this action which the designating party believes in good faith is subject to protection under Rule 26(c) of the Federal Rules of Civil Procedure.

b.    Confidential Material may not be disclosed by the receiving party to any person other than the following ("Authorized Persons"):

    i.    outside counsel of record in this litigation, and their partners, counsel, associates or employees

    ii.    any party to this litigation (or its officers, directors, in-house counsel and employees)

    iii.    independent experts and consultants retained by or associated with any party or its counsel to assist in the conduct of this litigation

    iv.    a party or non-party witness and counsel for such witness in the course of his or her examination at deposition in this action

    v.    persons who have prepared or assisted in the preparation of the Confidential Material or to whom the Confidential Material or copies thereof were addressed, delivered, or relate

    vi.    the Court in this action, and Court personnel, including stenographic reporters and/or certified videotape operators engaged in pretrial discovery;

    vii.    third-party vendors retained by or associated with any party or its counsel in order to assist in the conduct of this litigation; and

    viii.    any other person to whom the parties agree in writing, or as directed by Order of Court.

c.    In all cases, Confidential Material shall only be shared with Authorized Persons if reasonably necessary in connection with this litigation, and then shall be used or retained by such persons only to the extent and for the duration reasonably necessary under the circumstances, and in no event longer than the duration of the litigation.

d.    Before disclosing Confidential Material to any persons identified in Paragraph 2 above (other than the producing party and its

2

officers, directors, in-house counsel, employees, experts, and the Court and Court personnel), counsel contemplating disclosure shall require such persons to read a copy of this Stipulation and Order and sign a copy of the Confidentiality Agreement, in the form attached hereto as Exhibit A, affirming that the recipient:

    i.    has read this Stipulation and Order and understands all of its terms;

    ii.    agrees to abide by and to be bound by the terms of this Stipulation; and

    iii.    agrees to submit to the Court's jurisdiction for purposes of enforcement of this Stipulation and Order by proceedings for contempt and/or proceedings for legal and/or equitable relief, including damages, for a breach thereof.

e.    Counsel shall retain each such Confidentiality Agreement until such time as the litigation, including all appeals, is concluded and counsel has retrieved all Confidential Material, or received certification of its destruction, from the recipient pursuant to Paragraph 10 below.

f.    The producing party shall mark any documents and/or information designated in good faith as Confidential Material by means of the legend "CONFIDENTIAL" on each page or section of a page so designated, or shall otherwise so designate sections of deposition transcripts or answers to interrogatories that contain such Confidential Material by means of a statement on the record at the time of deposition testimony or by written notice to the other party within thirty (30) days of receipt of the transcript of the testimony. For information produced in its native file format, the designation of material as "CONFIDENTIAL" shall appear in a database field entitled "TREATMENT" that shall be related to each document. Additionally, each hard drive, disk or other physical item containing native files shall be marked to indicate that it contains Confidential Material.

g.    If any Confidential Material is provided inadvertently to a discovering party without being marked "CONFIDENTIAL" in accordance with the terms of this Order, the failure to so mark the document and/or information shall not be deemed a waiver of the right to assert its confidentiality. A party may designate the documents and/or information as Confidential Material at a later date, at which time the provisions of this Stipulation and Order shall apply to such documents and/or information. If a document is designated Confidential Material and one or more copies of the

documents or the original is also produced but not so designated, the copies or original shall also be treated as Confidential Material if the recipient is actually aware of such fact.

h.   If any party objects to the designation of any documents and/or information as Confidential Material, and if the parties are unable to resolve such dispute informally, the party objecting to the designation may submit the dispute to the Court for resolution. Pending resolution of such dispute by the Court, the documents and/or information shall retain their designation as Confidential Material. A party shall be obligated to challenge the appropriateness of the designation of documents or materials as "CONFIDENTIAL" within thirty (30) days of the time of said party's receipt of such documents as so designated, or in the case of a deposition, within thirty (30) days of the date that the party receives notification that some portion of the transcript or the exhibits are to remain confidential, and in all cases, not more than sixty (60) days from the date of the deposition during which the documents were first used as exhibits, and failure to do so shall preclude any subsequent challenge to such designations.

i.   All documents and information received in pre-trial discovery in this action, including Confidential Material, and all other material, whether or not ultimately made part of the public record, shall be used by the receiving party solely for purposes of the above-captioned litigation, including any appeals, and for no other business, litigation or other purpose whatsoever.

j.   The production of Confidential Material pursuant to this Stipulation and Order is not a waiver of any privilege or right to claim the trade secret or confidential status of the documents, materials, or information produced.

k.   Any party may introduce relevant and admissible Confidential Material in court filings, at trial or at a hearing before the Court in this action provided that the party that produced the Confidential Material is given reasonable notice and an opportunity to seek relief from the Court. Upon a finding that the parties have commercially sensitive information at issue, or other good cause for filing under seal any Confidential Material included in any papers filed with the Court or otherwise disclosed to the Court, shall be labeled, "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" and shall be filed in a sealed envelope, together with a copy of the motion requesting that the material be sealed and not disclosed unless ordered by the Court. Where possible, only confidential portions of filings with the Court shall be filed under seal.

4

l.     Except as may be otherwise agreed by the parties, not later than sixty (60) days after the conclusion of this litigation, including all appeals, the receiving party shall either destroy the Confidential Material or return the Confidential Material to the producing party, except for Confidential Material that has been incorporated into work product, and shall so certify in writing to the producing party.

4.     This Stipulation shall be without prejudice to the right of any party to object to any discovery request on the grounds that the information requested is not relevant or otherwise discoverable.

5.     In the event that a party inadvertently produces material that is protected by the attorney-client privilege, work product doctrine, or any other privilege, within ten (10) business days after the producing party actually discovers that such production was made, the producing party may make a written request that the other parties return the inadvertently produced privilege document along with any copies made thereof. The parties who received the inadvertently produced document will either return the document to the producing party or destroy the document immediately upon receipt of the written request, as directed by the producing party. By returning or destroying the document, the receiving party is not conceding that the document is privileged and is not waiving its right to later challenge the substantive privilege claim, provided that it may not challenge the privilege claim by arguing that the inadvertent production waived the privilege.

6.     The restrictions set forth in the preceding paragraphs shall not apply to Confidential Material which:

a.     is or becomes disclosed to the public other than through violation of this Stipulation and Order, provided, however, that Confidential Material shall not lose that status by reason of its use or disclosure in any proceeding in this litigation;

5

      b.    is acquired by the non-producing party from a third party lawfully possessing such Confidential Material; and

      c.    was lawfully possessed by the non-producing party before discovery in this action.

7.     Any third party producing its own documents pursuant to requests by a party in this litigation may invoke the protections of this Stipulation and Order in connection with such production. Further, within fifteen (15) days of any third party production of documents in connection with this action, each of the parties to this action shall be able to designate any of those documents as "Confidential Material" pursuant hereto, based on its own (and not the third party's) interest in preserving the confidentiality of the documents so designated. During the fifteen (15) day period after any third party production of documents in connection with this action, all such documents shall be treated as "Confidential Material" pursuant to this Order, pending the parties' designation of such documents consistent with this paragraph

8.     Nothing in this Stipulation and Order shall:

      a.    prevent or restrict any person from using or disclosing in any way documents it has produced or disclosed in the course of discovery proceedings herein;

      b.    prevent or restrict any person from seeking additional protection with respect to the disclosure of particular documents;

      c.    prevent or restrict any person from seeking relief from this Stipulation and Order for good cause shown;

6

d.   prohibit a party from producing Confidential Material in its possession pursuant to a subpoena issued by any court, administrative or legislative body, or any other person purporting to have authority to subpoena such Confidential Material; provided, however, that if such party receives a subpoena or other compulsory process seeking production or other disclosure of Confidential Material, that party shall give prompt written notice to counsel for the producing party, identifying the Confidential Material at issue, and, unless prohibited by applicable law, enclosing a copy of the subpoena or other compulsory process in order that the producing party may protect its interest in said Confidential Material. When possible, at least ten (10) days written notice before production or other disclosure shall be given and, in all circumstances, reasonable efforts shall be made to provide written notice prior to production or disclosure.

Dated:   New York, New York
         March 25, 2008

SEYFARTH SHAW LLP

By: _____
        L. Lynnette Sarno (LS-2421)

620 Eighth Avenue
New York, New York 10011
(212) 218-5500

*Attorneys for Plaintiff*

DEBEVOISE & PLIMPTON LLP

By: _____
        Jeremy Feigelson (JF-4963)

919 Third Avenue
New York, New York 10022
(212) 909-6000

*Attorneys for Defendants*

SO ORDERED:

_____
U.S.D.J.

7

## CONFIDENTIALITY AGREEMENT

I, _____, hereby acknowledge and agree that:

1.     I have read the Scheduling and Confidentiality Stipulation ("Stipulation"), entered in the civil action captioned *Capstar Radio Operating Co. v. Campbell et al.*, No. 08 CV 2976, in the United States District Court for the Southern District of New York.

2.     I understand the terms of the Stipulation.

3.     I hereby agree to be bound by the terms of the Stipulation and understand that a violation thereof may subject me to contempt proceedings and to legal and equitable remedies, including damages.

4.     I understand and agree that money damages would not be a sufficient remedy for breach of this Undertaking and that a party which asserts the confidential interest shall be entitled to specific performance and injunctive or other equitable relief as a remedy for any such breach.  I agree to waive any requirement for the securing or posting of any bond in connection with such remedy.  Such remedy shall not be deemed to be the exclusive remedy for breach of this Undertaking but shall be in addition to all remedies available at law or equity.

5.      I hereby irrevocably submit to the jurisdiction of the United States District Court for the Southern District of New York, or any other court of competent jurisdiction, for purposes of ensuring compliance with the terms and conditions of the Stipulation and for civil remedies in the form of legal and equitable relief, including damages, for any breach thereof.

Dated:      _____

_____

Print Name

_____

Signature

_____

Title

_____

Company

9

**TAB C**

```
-- JFE47E96683253A
----------------------------------------------------------------------------
8:52 PM 3/25/2008 Transmission Record
        Received from remote ID ""
        Unique ID: "JFE47E96683253A"
        Elapsed time: 1 minutes, 10 seconds.
        Used channel 1 on server "NYFAX01".
        ANI: "2122185500"
        AOC: 0, 0, 0
        Resulting status code (0/352; 0/0): Success
        Pages sent: 1 - 4
8:54 PM 3/25/2008 Print Record
        Printed on printer 32WHS in 0 minutes, 0 seconds.
        Successfully printed 4 pages (1 copy) for user JFEIGELS
```



# SEYFARTH
## ATTORNEYS SHAW LLP

620 Eighth Avenue

New York, New York 10018-1405

(212) 218-5500

Fax (212) 218-5526

www.seyfarth.com

## Facsimile Transmission

Date:   March 25, 2008

| RECIPIENT | COMPANY | PHONE NO. | FAX NO. |
|---|---|---|---|
| **Jeremy Feigelson** | **Debevoise & Plimpton LLP** | 212-909-6595 | **212-521-7230** |

FROM:        L. Lynnette Sarno

PHONE:       (212) 218-5528

RE:                                                                          REPLY FAX NO.: (212) 218-5526

| File No: | Number of Pages, Including Cover: |
|---|---|

☒ Hard copy to follow          ☐ Hard copy will not follow
☐ Per your request               ☐ Please review and revise if necessary
☐ Please telephone me

MESSAGE:

Please see attached.

THE INFORMATION CONTAINED IN THIS FACSIMILE IS CONFIDENTIAL AND MAY ALSO CONTAIN PRIVILEGED ATTORNEY-CLIENT INFORMATION OR WORK PRODUCT. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED. IF YOU ARE NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY USE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THE FACSIMILE IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ADDRESS ABOVE VIA THE U.S. POSTAL SERVICE. THANK YOU.

ANY TAX INFORMATION OR WRITTEN TAX ADVICE CONTAINED HEREIN (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED TO BE AND CANNOT BE USED BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON THE TAXPAYER. (THE FOREGOING LEGEND HAS BEEN AFFIXED PURSUANT TO U.S. TREASURY REGULATIONS GOVERNING TAX PRACTICE.)

IF YOU DO NOT RECEIVE ALL THE PAGES, PLEASE PHONE (212) 218-5500 AS SOON AS POSSIBLE.

# SEYFARTH
**ATTORNEYS** SHAW LLP

620 Eighth Avenue

New York, New York 10018-1405

(212) 218-5500

fax (212) 218-5526

www.seyfarth.com

Writer's direct phone

(212) 218-5528

Writer's e-mail
lsarno@seyfarth.com

Writer's direct fax

March 25, 2008

<u>**VIA FACSIMILE (212) 521-7230**</u>
<u>**AND U.S. MAIL**</u>

Jeremy Feigelson, Esq.
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022

      Re:    Capstar Radio Operating Company v. Citadel Broadcasting Corporation, et al.
               Docket No. 08 CV 2976
               (LAK)

Dear Mr. Feigelson:

        Enclosed is a Notice of Voluntary Dismissal Without Prejudice, pursuant to Rule 41(a)(1)(i) of the Federal Rules of Civil Procedure, in the above referenced matter. We have electronically filed the foregoing Notice of Voluntary Dismissal Without Prejudice with the Clerk of the District Court using the CM/ECF system. However, we learned that your firm has yet to file a Notice of Appearance and has not filed any papers in this action. Accordingly, we are forwarding a copy to you.

               Very truly yours,

               SEYFARTH SHAW LLP

               L. Lynnette Sarno

cc:    Gloria Galant

BRUSSELS

WASHINGTON, D.C.

SAN FRANCISCO

SACRAMENTO

NEW YORK

LOS ANGELES

HOUSTON

CHICAGO

BOSTON

ATLANTA

NY1 26507613.1

L. Lynnette Sarno (LS-2421)
Gloria Galant (GG-2818)
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
(212) 218-5500

Attorneys for Plaintiff Capstar Radio Operating Company

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

Capstar Radio Operating Company, a Delaware
Corporation,

                                       **ECF CASE**

         Plaintiff,                    08 Civ. 2976

        v.                           **NOTICE OF**
                                 **VOLUNTARY DISMISSAL**
Anthony Campbell; Louis Carpino; Adam Gross;    **WITHOUT PREJUDICE**
Jose Luis Torres; Citadel Broadcasting Corporation,
a Nevada Corporation; and John Does 1-10,

         Defendants.

-------------------------------------------------------------x

      PLEASE TAKE NOTICE THAT, plaintiff Capstar Radio Operating Company

("Capstar"), by its undersigned counsel, hereby dismisses *without prejudice*, all claims and

causes of action against defendants Anthony Campbell; Louis Carpino; Adam Gross; Jose Luis

Torres; Citadel Broadcasting Corporation, a Nevada Corporation; and John Does 1-10

(collectively, "Defendants") in the above-captioned action, without costs or attorneys' fees to

any party, pursuant to Rule 41(a)(1)(i) of the Federal Rules of Civil Procedure.  No defendants

have served an answer or motion for summary judgment herein.

Dated: New York, New York
      March 25, 2008

                                  SEYFARTH SHAW LLP

                                  By:

                                  L. Lynnette Sarno, Esq.
                                  Gloria Galant,  Esq.
                                  620 Eighth Avenue
                                  New York, New York  10018
                                  (212) 218-5500

                                  Attorneys for Plaintiff
                                  Capstar Radio Operating Company

2

**TAB D**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

Capstar Radio Operating Company, a Delaware  :
Corporation,                                 :
                                             :
             Plaintiff,                      :
                                             :
        v.                                   :     No. 08 CV 2976 (LAK)
                                             :
Anthony Campbell; Louis Carpino; Adam Gross; :     **ANSWER OF INDIVIDUAL**
Jose Luis Torres; Citadel Broadcasting Corporation, : **DEFENDANTS**
a Nevada Corporation; and John Does 1-10,    :
                                             :
             Defendants.                     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

Defendants Anthony Campbell, Louis Carpino, Adam Gross and Jose Luis Torres

(the "Individual Defendants"), by their undersigned attorneys, Debevoise & Plimpton LLP,

hereby answer the Complaint in this matter as follows:

      1.    States legal conclusions as to which no responsive pleading is required.

To the extent a responsive pleading is required, deny.

      2.    States legal conclusions as to which no responsive pleading is required.

To the extent a responsive pleading is required, deny.

      3.    Deny knowledge or information sufficient to form a belief as to the truth

of the allegations.

      4.    Deny, except admit that in certain cases Individual Defendants have

contacted and/or solicited clients of Clear Channel as they are lawfully entitled to do.

      5.    Deny knowledge or information sufficient to form a belief as to the truth

of the allegations.

6.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations.

7.    Admit.

8.    This allegation is directed to defendant Campbell.  He admits.

9.    This allegation is directed to defendant Campbell.  He admits.

10.    This allegation is directed to defendant Gross.  He admits.

11.    This allegation is directed to defendant Gross.  He admits.

12.    This allegation is directed to defendant Carpino.  He admits.

13.    This allegation is directed to defendant Carpino.  He admits, except avers that the proper spelling of the station's name is WLTW and not WLTU.

14.    This allegation is directed to defendant Torres.  He admits.

15.    This allegation is directed to defendant Torres.  He admits.

16.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations, except admit that Citadel is a radio company.

17.    Deny, except admit that Citadel and Clear Channel each are radio station companies, with certain stations operating in the same markets.

2

18.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations.

19.     This paragraph states legal conclusions to which no responsive pleading is required.  To the extent that a responsive pleading is required, deny.

20.     This paragraph states legal conclusions to which no responsive pleading is required.  To the extent that a responsive pleading is required, admit on behalf of the Individual Defendants.

21.     Deny, except admit that Clear Channel is in the radio business.

22.     Admit.

23.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations.

24.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations.

25.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations.

26.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations.

27.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations.

28.     Deny.

29-32.  Deny, except admit that Radio Fusion is a third-party software program used by Clear Channel and other radio companies for certain purposes.

3

33-37. Deny, except admit that Best Rate is a third-party software program used by Clear Channel and other radio companies for certain purposes.

38-39. Deny, except admit that Radio Fusion is a third-party software program used by Clear Channel and other radio companies for certain purposes.

40-50. Deny knowledge or information sufficient to form a belief as to the truth of the allegations.

51.    Admit.

52-53. Deny, except admit that account executives are responsible for selling advertising, in part through certain of the techniques enumerated.

54-55. Deny knowledge or information sufficient to form a belief as to the truth of the allegations, except admit that each Individual Defendant received and acknowledged certain employment materials, possibly including the enumerated materials, and signed a document containing the quoted language.

56.    Deny.

57-76. Each Individual Defendant denies the allegations relevant to him, except admits that he was hired on or about the date stated as to him in the Complaint, signed a document entitled Confidentiality, Trade Secrets and Non-Compete Agreement, received and acknowledged certain employee information materials and attended certain training.

77.    Deny, except admit that each of the Individual Defendants advised Clear Channel on or about March 5, 2008 that they were resigning and would be working at WABC-AM.

78.    Admit.

4

79.    Admit.

80.    Deny, except admit that WABC-AM, WLTW and WKTU are all radio stations in the New York market.

81-84. Deny knowledge or information sufficient to form a belief as to the truth of the allegations, except admit that Clear Channel is aware of the Individual Defendants' new employment.

85.    Deny.

86.    Deny, except admit that Carpino attended an event upon request from a person who in another capacity is a Clear Channel client.

87.    Deny.

88.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations, except admit that Clear Channel claims to be aware of an effort by a Citadel station to market a version of a non-proprietary advertising program that is widely used in the radio industry.

89.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations.

90-92. Deny knowledge or information sufficient to state a belief as to the truth of the allegations.

93-94. Deny, except admit that Citadel has hired account executives in the Chicago market.

95-143. These paragraphs state legal conclusions as to which no responsive pleading is required.  To the extent that a responsive pleading is required, deny.

5

WHEREFORE, the Individual Defendants deny that plaintiff is entitled to any of the relief requested or to any other relief, and request that the Complaint be dismissed with prejudice and with an award of costs, fees and such other relief as the Court deems just and proper.

Dated: New York, New York
      March 25, 2008

DEBEVOISE & PLIMPTON LLP

By: _____
    Jeremy Feigelson (JF-4963)

919 Third Avenue
New York, New York 10022
(212) 909-6000

*Attorneys for Defendants*

6

# EXHIBIT G

D E B E V O I S E  &  P L I M P T O N  LLP

919 Third Avenue
New York, NY 10022
Tel  212 909 6000
www.debevoise.com

Jeremy Feigelson
Partner
Tel  212 909 6230
Fax  212 521 7230
jfeigelson@debevoise.com

April 22, 2008

**BY HAND**

Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-2012

**Capstar v. Campbell et al.**
**No. 08 CV 2976 (LAK)**

Dear Judge Kaplan:

On behalf of defendants, we write to advise the court that this case has neither settled nor progressed through discovery. Having received plaintiff's motion in support of its attempt at voluntary withdrawal, which defendants will oppose, we ask that the Court schedule a status conference to be attended by principals with settlement authority.

On March 24, Your Honor denied a TRO and expressed the view that this case should settle promptly and without further substantial expenditures. Defendants agree, but have been unsuccessful in accomplishing that.

Instead, Clear Channel has increased its litigation activity. In addition to the motion it filed yesterday in this case, Clear Channel opted to pursue a similar case before Judge Zagel in the Northern District of Illinois to an evidentiary hearing. On the basis of that hearing, Judge Zagel recently declined to extend the TRO that he originally had granted ex parte. Clear Channel has responded to that decision by filing a jury demand and serving five deposition notices. Clear Channel also has filed still another case involving a different employee, this one in Illinois state court.

Tentative settlement discussions began after the March 24 hearing before Your Honor, and on that basis the parties did not pursue discovery in this case. The expedited discovery and hearing schedule discussed at the March 24 hearing was never reduced to a written order; accordingly, what plaintiff's counsel refers to in their letter as a "stay" of discovery was actually an informal agreement. Settlement discussions were brought to a halt approximately two weeks ago by Clear Channel's decision to take the Chicago case

Honorable Lewis A. Kaplan                 2                      April 22, 2008

to hearing. The only "settlement offer" we received from Clear Channel included a demand that defendants consent to a permanent injunction as if Clear Channel had prevailed on the merits in both New York and Chicago.

Defense counsel and principals are available for a conference at the Court's convenience, including immediately. Alternatively, it may be constructive for the Court to set the conference for approximately 30 days out in order to give the parties an opportunity to discuss the matter, particularly in light of the ruling in Chicago. If the Court agrees that a conference is appropriate, then it also might be appropriate to stay further briefing on Clear Channel's latest motion. Defendants agree with plaintiff that there should be no hearing on April 23.

Respectfully yours,

Jeremy Feigelson

cc (by hand):  L. Lynette Sarno, Esq.

22717473

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 9, 2008, I electronically filed the foregoing Plaintiff's Reply Memorandum of Law in Further Support of Its Motion for an Order Deeming Its Notice of Voluntary Dismissal Without Prejudice Effective Pursuant to Rule 41(a)(1)(A), and the Declaration of L. Lynnette Sarno, Esq., together with Exhibits F and G with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following:

Jeremy Feigelson, Esq.
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022

*Attorneys for Defendants*

s/ L. Lynnette Sarno
L. Lynnette Sarno